UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUMMI NATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>vs.<br><br>WHIDBEY TELEPHONE COMPANY d/b/a WHIDBEY TELECOM; WHATCOM COUNTY; UNITED STATES DEPARTMENT OF AGRICULTURE; and UNITED STATES DEPARTMENT OF COMMERCE,<br><br>Defendants. | Case No.<br><br>COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF AND DAMAGES; DEMAND FOR JURY TRIAL |

## INTRODUCTION

1. This action arises from a cascading series of preventable and unlawful failures that resulted in the disturbance, exposure, degradation, loss, and continued mishandling of Lummi Nation ("Lummi" or the "Nation") ancestral human remains and associated cultural materials at Point Roberts, Washington. Whidbey Telephone Company d/b/a Whidbey Telecom, Whatcom County, the United States Department of Agriculture, and the United States Department of Commerce (collectively, "Defendants") (a) authorized and undertook

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
1

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

construction in known Lummi burial grounds; (b) failed to consult the Nation; (c) failed to conduct required environmental review before beginning construction; (d) trenched through the burial grounds repeatedly; (e) failed to stop work upon encountering unmistakable archaeological materials indicating the presence of burials; (f) failed to stop work upon encountering extensive human remains; (g) failed to notify the Nation of the disturbance to human remains; (h) failed to secure exposed human remains and funerary objects against the weather, leaving them vulnerable to degradation for extended periods, including through the present; (i) "lost" human remains; (j) resumed ground disturbing activities after receiving stop-work orders; (k) failed to conduct damage evaluations necessary to understand and remediate the harm and rebury Lummi ancestors; (l) withheld information from the Nation about the extent of damage to ancestral and archaeological remains; (m) issued and continue to rely upon permits that violate federal, state, and local law, including mandatory consultation and environmental review requirements; and (n) repeated these failures across multiple projects despite demonstrable knowledge of their prior failures.

2.      For well over 5,000 years, Point Roberts served as a fully integrated cultural landscape for Lummi Nation and its ancestors—supporting fishing, villages, hunting, gathering, trade, ceremony, and burial. The remains of countless ancestors were carefully laid to rest in its soil.

3.      Defendants' actions and inaction have resulted in the permanent harm to and loss of ancestral remains and important archaeological and cultural resources.

4.      These failures occurred during construction and project activities for federally funded broadband projects undertaken by Defendant Whidbey Telecom. Two of these projects proceeded with the funding and oversight of Defendant United States Department of

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
2

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Agriculture, Rural Utilities Service and with the permitting of Defendant Whatcom County, and the third project proceeded with the funding and oversight of Defendant United States Department of Commerce, National Telecommunications and Information Administration.

5. Plaintiff Lummi Nation brings this action under the National Historic Preservation Act ("NHPA"), the National Environmental Policy Act ("NEPA"), the Administrative Procedure Act ("APA"), and Washington statutory and common law. Plaintiff Lummi Nation seeks declaratory and injunctive relief, including a mandatory preliminary injunction, compensatory and punitive damages, attorney fees, and costs.

**PARTIES**

6. Plaintiff **Lummi Nation** is a federally recognized Indian Tribe headquartered in Washington State. Lummi Nation is the successor nation to the 1855 Treaty of Point Elliot, and most of the Nation's approximately 6,000 enrolled citizens reside on or near the Lummi Reservation located within the exterior boundaries of Whatcom County, Washington. Lummi Nation is considered a "Self-Governing Nation" and is known as the "Salmon People." The Nation has stewarded its cultural resources, burial grounds, and historic sites at Point Roberts since time immemorial.

7. Defendant **Whidbey Telecom** is a Washington State corporation with its principal place of business in Langley, Washington. Whidbey Telecom is a regional provider of broadband and telecommunications services that has operated in Washington State for approximately 100 years and at Point Roberts for approximately forty years. Whidbey Telecom employs a Tribal Affairs official charged with liaising with Indian Tribes in its service area, including Lummi Nation. Whidbey Telecom's long history at Point Roberts and its Tribal Affairs function establish that Whidbey Telecom knew or should have known of Lummi

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
3

Nation's cultural resources and burial grounds at Point Roberts. Three of Whidbey Telecom's current projects at various stages of development at Point Roberts provide the basis for this lawsuit.

8. Defendant **Whatcom County (the "County")** is a political subdivision of the State of Washington. It issued encroachment permits for projects in this suit. The County's code mandates consultation with Lummi Nation on projects on or affecting Point Roberts.

9. Defendant **United States Department of Agriculture ("USDA")** is a federal agency with principal offices in Washington, D.C. Its Rural Development ("RD") Rural Utilities Service ("RUS") funded two Whidbey Telecom projects constructed at Point Roberts: Community Connect and ReConnect. References to RUS in this Complaint include USDA acting through RUS.

10. Defendant **United States Department of Commerce**, acting through the National Telecommunications and Information Administration ("NTIA"), is a federal agency with principal offices in Washington, D.C. NTIA funded Middle Mile constructed by Whidbey Telecom at Point Roberts. References to NTIA in this Complaint include the Department of Commerce acting through NTIA.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction under 28 U.S.C. § 1331, because this action presents federal questions arising under NHPA, NEPA, and the APA.

12. This Court has additional bases for subject matter jurisdiction under 28 U.S.C. § 1362, because this action is brought by an Indian Tribe with a governing body duly recognized by the Secretary of the Interior, and under 28 U.S.C. § 1367, because the Court has supplemental jurisdiction over the related state law claims.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
4

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

13. An actual, justiciable controversy now exists between Plaintiff and Defendants. Relief may be granted under 28 U.S.C. §§ 2201–2202; the APA, 5 U.S.C. §§ 705–706; and the Court's equitable powers.

14. The United States has waived its sovereign immunity for the equitable, declaratory, and injunctive relief sought against Defendants RUS and NTIA pursuant to the APA, 5 U.S.C. § 702. Plaintiff acknowledges that the APA waiver does not extend to claims for money damages against Defendants RUS or NTIA. Plaintiff seeks money damages only against Defendants Whidbey Telecom and Whatcom County.

15. Venue is proper in this district pursuant to 28 U.S.C. § 1391(e) as to Defendants RUS and NTIA, both federal agencies, because a substantial part of the events and omissions giving rise to the claims occurred in Whatcom County, Washington, and Plaintiff's citizens reside in this district. Venue is independently proper as to Defendants Whatcom County and Whidbey Telecom pursuant to 28 U.S.C. § 1391(b), as both Defendants reside in this district, and a substantial part of the events and omissions giving rise to the claims described herein occurred within this district.

## EXHAUSTION AND PRE-SUIT NOTICE

16. Plaintiff has satisfied all applicable conditions precedent to suit. As to the claims against Whatcom County, Plaintiff has complied with the pre-suit notice requirements of RCW 4.96.020 by filing a tort claim with Whatcom County and permitting more than sixty days to elapse before commencing this action.

17. Plaintiff has engaged in extensive efforts over multiple years to resolve the matters at issue after gaining knowledge of Defendants' actions, including extensive communications with RUS, NTIA, Whatcom County, and Whidbey Telecom. Those efforts

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
5

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

have not produced resolution, and Defendants remain in continuing violation of their legal obligations. Further administrative exhaustion would be futile and is not required.

## STANDING

18.     Plaintiff has Article III standing. Plaintiff has suffered concrete and particularized injuries in fact, including (a) the disturbance, exposure, weathering, destruction, and loss of ancestral human remains and funerary objects; (b) loss of access to and use of culturally significant sites; (c) procedural injury from denial of consultation rights; (d) economic injuries, including the cost of monitoring, damage assessment, expert and consultant fees, and the cost of reinterment; and (e) ongoing injury from continuing trespass to and disturbance of burial grounds.

19.     These injuries are fairly traceable to each Defendant's conduct as alleged in this Complaint. The relief Plaintiff seeks would redress these injuries by halting further disturbance, requiring damage assessment, ensuring access for reinterment, compensating Plaintiff for losses sustained, and deterring future violations.

20.     Plaintiff also satisfies any applicable prudential standing requirements, including the zone of interests test under NHPA, NEPA, and the other statutes invoked. The interests Plaintiff asserts are precisely those each statute was enacted to protect.

## THE CULTURAL SIGNIFICANCE OF THE BURIAL GROUNDS

21.     Lummi Nation's spiritual and cultural traditions impose sacred obligations on the Nation to protect, care for, and reinter ancestral human remains and associated funerary objects. The disturbance, exposure, weathering, scattering, mishandling, destruction, and loss of ancestral remains constitute profound cultural and spiritual harms that no monetary compensation can fully redress.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
6

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

22.     From time immemorial, the Lummi people have lived, fished, hunted, gathered, and buried their dead on the lands and waters of Point Roberts and the surrounding Salish Sea. The Coast Salish name for Point Roberts is Chelhtenem, meaning "hang salmon for drying," reflecting the peninsula's centrality to the seasonal salmon harvest that sustained the Lummi people for thousands of years. Point Roberts has held ceremonial, subsistence, and burial significance to Lummi Nation across generations, and Chelhtenem served as a final resting place for Lummi ancestors and elders.

23.     Lummi Nation's relationship to the land at Point Roberts, including its burial grounds, is integral to the Nation's identity, spiritual continuity, and intergenerational obligations.

24.     Lummi burial traditions reflect a sustained reciprocal relationship between the living and their ancestors. The Nation maintains specific protocols, carried forward through hereditary knowledge and the work of the Lummi Nation Tribal Historic Preservation Office ("THPO") and the Lummi Cultural Department, governing the identification, treatment, and reinterment of ancestral remains. These protocols are not discretionary practices. They are sacred duties that bind the Nation across generations and that cannot be performed by any other party on the Nation's behalf.

25.     Once ancestral remains are exposed, fragmented, displaced, or commingled with construction spoils, the harm to the Nation is never fully reversible. Even where remains can be recovered and reinterred, the disturbance itself imposes spiritual injury on the ancestors and on the living members of the Nation, and it requires the Nation to undertake additional ceremonial work to address what has been done. That ceremonial work imposes its own emotional and cultural costs on tribal members, elders, and ceremonial practitioners.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
7

26. The harms described in this section are felt not only by Lummi Nation as a sovereign government, but by individual Tribal members whose ancestors lie at Point Roberts and whose cultural and spiritual obligations to those ancestors are ongoing.

27. The disturbance of Lummi ancestral remains at Point Roberts is not without precedent in the region, and Lummi Nation has previously borne the harm of construction-related desecration of its burial grounds. In 1999, construction of a wastewater treatment plant at Semiahmoo Spit, only miles from Point Roberts, disturbed the remains of approximately forty-four Lummi ancestors before work was halted and the City of Blaine formally apologized and ultimately transferred land to the Nation. That experience informs the Nation's heightened concern when federally funded ground-disturbing activity proceeds in known areas of Lummi cultural significance without meaningful consultation or compliance with federal environmental review and cultural resource laws.

## THE 1855 TREATY OF POINT ELLIOTT

28. On January 22, 1855, at Muckl-te-oh, also known as Point Elliott (present-day Mukilteo, Washington), leaders of the Lummi and other Coast Salish peoples negotiated the Treaty of Point Elliott with Territorial Governor Isaac I. Stevens. The Lummi people were represented by Chow-its-hoot, identified in the Treaty text as "Chief of the Lummi and other tribes," who signed as one of the four principal chiefs recognized at the council. The Treaty was ratified by the Senate on March 8, 1859, and proclaimed on April 11, 1859. Treaty with the Dwamish, Suquamish, Etc., Jan 22, 1855, 12 Stat. 927 [hereinafter "1855 Treaty of Point Elliott" or "Treaty"].

29. Lummi Nation is a successor in interest to the 1855 Treaty of Point Elliott. *Id.* Through that Treaty, the Nation reserved its rights to ancestral lands, waters, and cultural

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
8

resources at and around Point Roberts. The federal government bears a trust responsibility to protect those reserved rights, including the Nation's rights with respect to its ancestral burial grounds and cultural sites.

30.    Article 5 of the Treaty of Point Elliott reserved to Lummi Nation and other signatory Tribes "the right of taking fish at usual and accustomed grounds and stations . . . in common with all citizens of the Territory, and of erecting temporary houses for the purpose of curing, together with the privilege of hunting and gathering roots and berries on open and unclaimed lands." *Id.* at 928, art. V. These reserved rights extend across Lummi Nation's traditional territory, which includes Point Roberts and its adjacent waters.

31.    Point Roberts lies within Lummi Nation's usual and accustomed fishing places as judicially determined under the Treaty. In *United States v. Washington*, 384 F. Supp. 312, 360 (W.D. Wash. 1974), *aff'd*, 520 F.2d 676 (9th Cir. 1975), the court found that "[t]he Lummis had reef net sites on Orcas Island, San Juan Island, Lummi Island and Fidalgo Island, and near Point Roberts and Sandy Point," and that Lummi Nation's usual and accustomed fishing places "included the marine areas of Northern Puget Sound from the Fraser River south to the present environs of Seattle[.]" *Id*. The federal government has long recognized Lummi Nation's continuous use of Point Roberts. In 1897, the United States Indian Agent for the Tulalip Agency reported that non-Native commercial canneries had "practically appropriated all the best fishing grounds at Point Roberts and Village Point, where the Lummi Indians have been in the habit of fishing from time immemorial." Annual Reports of the Department of the Interior, Report of the Commissioner of Indian Affairs 297 (1897); *United States v. Washington*, 853 F.3d 946 (9th Cir. 2016).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
9

# FACTUAL BACKGROUND

## Harm from at Least Three Projects

32.     Whidbey Telecom received funding and permits from federal and local authorities for at least three projects, Community Connect, ReConnect, and Middle Mile, that have violated the rights of Lummi Nation and irreparably harmed and threaten continuing irreparable harm to the Nation's ancestral remains and cultural heritage.

33.     RUS funded Community Connect in 2022 and ReConnect in 2021. NTIA funded Middle Mile in 2023.

34.     Whatcom County issued permits for Community Connect and ReConnect.

35.     Whidbey Telecom received a permit for Community Connect from RUS on June 29, 2020, and encroachment permits for the project from Whatcom County on February 27, 2023, July 26, 2024, and September 9, 2024. Whidbey Telecom had begun construction for Community Connect by March 2023.

36.     Soon after beginning construction for Community Connect within the boundaries of known archaeological site 45WH560 ("45WH560"), Whidbey Telecom damaged Lummi burial grounds. Upon discovery of the archaeological deposits, Whidbey Telecom did not halt construction; instead, it willfully continued work, digging a trench at least 1,000 feet long, carrying out at least 300 feet of directional boring, and creating at least five exploratory "hand hole" or "pot hole" trenches.[1] Whidbey Telcom disturbed human remains in four of the

---

[1] Hand hole trenches in telecommunications projects are manually excavated pits used to locate below grade access boxes (handholes) which later allow technicians to splice, terminate, or pull cable from the conduit. Pot hole trenches are the result of construction crews manually digging exploratory trenches to locate buried utility lines prior to mechanically excavating a new utility line trench.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
10

exploratory trenches and disbursed additional human remains in all removed soil piles. The project has remained stalled, with no progress toward reinterment of Lummi ancestral remains, which, upon information and belief, remain scattered at the site.

37.     Whidbey Telecom received a completed environmental review for ReConnect from RUS on January 15, 2021, and encroachment permits for the project from Whatcom County on March 9, 2021, March 17, 2021, March 17, 2021, March 19, 2021, March 19, 2021, and August 24, 2021. Whidbey Telecom began construction for ReConnect in March 2021. ReConnect is now fully constructed and operational.

38.     Whidbey Telecom constructed and now operates ReConnect within the boundaries of archaeological site 45WH525 ("45WH525"), another location known to contain Lummi burial grounds. For ReConnect, Whidbey Telecom dug at least 2,100 feet of trenches, potentially creating vast amounts of damage to Lummi ancestral remains.

39.     Between April and July of 2023, Lummi Nation discovered the basic information related to this destruction and began repeatedly warning Whidbey Telecom that its projects were damaging Lummi burial grounds. On November 6, 2025, the company then willfully chose to commence project activities in close proximity to 45WH525, this time for Middle Mile and with only three days' notice to Lummi Nation. Once again, the company disturbed human remains, including some that are now permanently lost and cannot be reinterred.

40.     Middle Mile had an effective start date of July 1, 2023, and includes project activities occurring outside of Point Roberts. Based on Whidbey Telecom's May 29, 2025 report to NTIA stating, "We have received the NEPA Decision Memo clearing construction on terrestrial portion (2/18/2025) and associated release of funds," NTIA provided the project with

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
11

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

NEPA approval on February 18, 2025, and construction of terrestrial portions of the project have begun.

41.     Whidbey Telecom's Project Director, Martha Ford, has stated that "as of 2023…we have put in the ground there at Point Roberts over 18 miles of fiber," raising Plaintiff's concern that damage to culturally significant sites may far exceed the damage already done by these three projects, as described below.

**Defendants Authorized and Undertook Construction in Known Lummi Burial Grounds**

42.     Point Roberts, Washington, contains numerous archaeological sites known to include Lummi burial grounds. Best estimates by archaeologists and historians indicate that Lummi ancestors occupied and buried their loved ones at Point Roberts for over 5,000 years, up through the late nineteenth century, when colonial settlers systematically drove members of the Nation off Point Roberts, to settle on the Lummi Reservation.

43.     Sites 45WH560 and 45WH525 are eligible for listing on the National Register of Historic Places ("NRHP") and widely recognized as containing ancestral human remains and associated cultural materials of Lummi Nation.

44.     Defendants knew or should have known that Point Roberts, including sites 45WH560 and 45WH525, is a highly sensitive cultural landscape with a high likelihood of containing Lummi burial sites.

45.     Whidbey Telecom has operated at Point Roberts since 1987, and it employs a Tribal Affairs official, charged with liaising with Tribal Nations in the area.

46.     Whidbey Telecom initiated, and Defendants the County and RUS illegally permitted, two different fiberoptic projects, Community Connect and ReConnect, both funded by federal grants from RUS, at Point Roberts.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
12

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

47.     Whidbey Telecom conducted trenching for Community Connect within the boundaries of 45WH560 and for ReConnect within the boundaries of 45WH525.

48.     Whidbey Telecom initiated Middle Mile, a third major broadband project within or near the boundaries of 45WH525, funded and permitted by NTIA.

49.     Each of the three projects' activities have disturbed and damaged Lummi ancestral remains and related archaeological resources in these sensitive areas known to contain burial grounds significant to the Nation.

**Defendants Failed to Consult the Nation**

50.     Whatcom County Code requires government-to-government consultation with Lummi Nation before issuing permits for projects at Point Roberts.

51.     Whatcom County Code requires government-to-government consultation with Lummi Nation before issuing permits for projects at Point Roberts.

52.     Whatcom County failed to provide Lummi Nation with notice of either Community Connect or ReConnect prior to issuing permits or prior to construction.

53.     Whatcom County failed to conduct consultation with Lummi Nation before issuing encroachment permits for Community Connect and ReConnect.

54.     Section 106 of NHPA requires federal agencies to conduct government-to-government consultation with federally recognized Tribes—and complete the entire Section 106 review process to avoid, minimize, or mitigate impacts to historic properties such as Tribal burial grounds—before funding projects, issuing permits, or construction begins.

55.     RUS failed to complete project review or consultation before funding ReConnect and Community Connect.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
13

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

56. NTIA failed to complete project review or consultation before funding Middle Mile.

57. RUS's Programmatic Agreement ("PA") with the National Conference of State Historic Preservation Officers ("SHPOs") and the Advisory Council on Historic Preservation ("ACHP") requires RUS's grantees, including Whidbey Telecom, to comply with the Section 106 process and delegates certain authorities for carrying out that process to its project applicants.

58. The PA also prohibits RUS from releasing federal funds for construction before Section 106 review is complete.

59. RUS failed to provide Lummi Nation with notice of Community Connect or ReConnect prior to the projects' funding, permitting, or construction.

60. Whidbey Telecom failed to provide Lummi Nation with notice of Community Connect or ReConnect prior to the projects' funding, permitting, or construction.

61. NHPA also requires consultation with the SHPO as a consulting party before issuing permits, funding federal projects, or approving construction.

62. RUS failed to consult with the SHPO prior to funding ReConnect and Community Connect, issuing the projects' permits, and approving construction at sites the SHPO had previously recognized as eligible for the NRHP.

63. RUS failed to provide the SHPO with notice of Community Connect or ReConnect prior to the projects' funding, permitting, or construction.

64. Whidbey Telecom failed to provide the SHPO with notice of Community Connect or ReConnect prior to the projects' funding, permitting, or construction.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
14

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**Defendants Failed to Conduct Required Environmental Review before Beginning Construction**

65.     NEPA requires federal agencies to complete environmental review for major federal actions—which includes federal funding—that significantly affect the quality of the human environment. Further, for actions that do not normally significantly affect the environment, federal agencies must continue to assess whether environmental review is nonetheless warranted, depending on the circumstances.

66.     RUS failed to complete project review or consultation before issuing environmental permits for ReConnect.

67.     NTIA failed to complete project review or consultation before issuing environmental approvals for Middle Mile.

**Defendants Trenched through the Burial Grounds**

68.     Whidbey Telecom conducted trenching and other ground-disturbing activities within the boundaries of 45WH560 to advance Community Connect.

69.     Whidbey Telecom conducted trenching and other ground-disturbing activities within the boundaries of 45WH525 to advance ReConnect.

70.     Whidbey Telecom conducted ground-disturbing activities within close proximity to 45WH525 to advance Middle Mile.

**Defendants Failed to Stop Work Upon Initially Encountering Unmistakable Archaeological Materials Indicating the Presence of Burials**

71.     Whatcom County's Inadvertent Discovery Plan, governing local protocols for construction projects that encounter archaeological deposits, including those containing human remains, provided detailed descriptions and pictures of shell midden deposits so that Whidbey Telecom crews would know what they looked like.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
15

72. Shell midden deposits are widely recognized indicators of archaeological sites that contain human remains.

73. Whidbey Telecom's construction crews encountered shell midden deposits and other archaeological indicators during Community Connect's trenching activities at 45WH560.

74. Upon information and belief, Whidbey Telecom's construction crews encountered shell midden deposits and other archaeological indicators during ReConnect's trenching activities at 45WH525.

75. State law and the terms of the federal permit, as well as Whatcom County's encroachment permit, required that work cease immediately upon encountering archaeological materials. Whidbey Telecom did not cease work immediately upon encountering archaeological materials at site 45WH560 and, upon information and belief, Whidbey Telecom's crews for Community Connect did not cease work immediately upon encountering archaeological materials at 45WH525.

**Defendants Failed to Stop Work upon Encountering Extensive Human Remains**

76. Whidbey Telecom's construction for Community Connect disturbed human remains in multiple trenches, turning up bones, burial goods, and thousands of cultural artifacts.

77. Whidbey Telecom did not stop trenching when it repeatedly encountered these human remains—and indicators that more human remains were present at the site. Whidbey Telecom instead dug a central trench approximately 1,000 feet long and at least 36 inches deep through 45WH560.

78. Whidbey Telecom damaged another approximately 300 feet of the site with directional boring and at least five exploratory trenches at 45WH560.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
16

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

79.    Ultimately, Whidbey Telecom did not stop trenching at 45WH560 until the SHPO intervened after receiving word of the potential damage from a member of the public who observed Whidbey Telecom's activities and who was aware of the significance of the site from their own archaeological training.

80.    Whidbey Telecom's trenching activities for ReConnect within 45WH525 disturbed additional areas known to contain human remains and, upon information and belief, created additional damage to those human remains, as well as cultural artifacts and burial goods.

81.    Whidbey Telecom's ground disturbance for Middle Mile encountered and disturbed human remains in close proximity to 45WH525, after Whidbey Telecom had received repeated warnings about the potential for damage to human remains from operating within or near 45WH525.

82.    State law criminalizes knowing removal, mutilation, defacement, injury, or destruction of any Tribal burial site.

83.    Whidbey Telecom failed to stop work or avoid further damage at 45WH560 and 45WH525, knowing it had already damaged Lummi burial grounds at those same sites.

**Defendants Failed to Notify the Nation of the Disturbance to Ancestral Remains**

84.    State law requires any person who has disturbed human remains to notify the coroner and local law enforcement immediately, and those officials, in turn, have a responsibility to notify all affected Tribes.

85.    Whatcom County's encroachment permits for Community Connect and ReConnect required Whidbey Telecom to notify to the County's Washington State Environmental Policy Act ("SEPA") Administrator immediately if construction disturbed human remains, triggering the SEPA Administrator's responsibility to notify affected Tribes.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
17

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

86.    RUS's permits for Community Connect and ReConnect required Whidbey Telecom to notify RUS immediately if construction disturbed human remains, and the ACHP's guidance to federal agencies, in turn, requires RUS to conduct consultation with impacted Tribes related to treatment of human remains.

87.    Whidbey Telecom did not provide notice of the disturbance at 45WH560 to any of the required federal and local authorities.

88.    Rather, once notified by the third-party archaeologist who saw Whidbey Telecom's construction at a known significant site, the SHPO alerted necessary authorities, including Lummi Nation, to the disturbance at 45WH560.

89.    Whatcom County did not notify Lummi Nation of the disturbance to ancestral remains at 45WH560.

90.    RUS did not notify the Nation about the damage from Community Connect until two months after the SHPO had already provided notice to all parties about the damage.

91.    Whidbey Telecom did not provide notice of the disturbance at 45WH525 to any of the required federal and local authorities.

92.    Whatcom County did not notify Lummi Nation of the disturbance to ancestral remains at 45WH525.

93.    RUS did not notify Lummi Nation of the disturbance to ancestral remains at 45WH525.

94.    Rather, once Lummi Nation learned of the disturbance at 45WH560, the Nation learned through its own investigation about ReConnect's project activities—and likely disturbance—at 45WH525.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
18

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**Defendants Failed to Secure Human Remains**

95.     State law requires reasonable effort to protect disturbed human remains from further disturbance.

96.     Defendants left open trenches and piles of excavated soil containing human remains and funerary artifacts and other sensitive archaeological materials exposed to the elements at 45WH560 for nearly two years.

97.     During this period, Defendants covered exposed human remains at 45WH560, if at all, with inadequate, temporary materials such as plywood or tarps.

98.     Human remains and associated cultural materials may still be exposed to weather and environmental conditions at 45WH560.

99.     Upon information and belief, Defendants have left human remains and associated cultural materials exposed to weather and environmental conditions at 45WH525 since construction for ReConnect began in March of 2021.

**Defendants "Lost" Human Remains**

100.     Defendants have forever lost a cranial fragment displaced by Middle Mile.

101.     State law requires those who have disturbed human remains, including through construction activity, to reinter those remains under the supervision of the appropriate Tribe.

102.     The cranial fragment lost after displacement from Middle Mile can never be recovered or reinterred.

103.     Upon information and belief, due to failure to secure disturbed ancestral remains at 45WH560 and 45WH525, other Lummi ancestral remains can never be recovered or reinterred.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
19

**Defendants Resumed Trenching after Receiving Stop-Work Orders**

104.    State law, as well as the County's and RUS's permits for Community Connect and ReConnect, require work to stop upon encountering human remains.

105.    Once the SHPO determined that the disturbance was within 45WH560, they issued a stop-work order for Community Connect.

106.    Upon information and belief, Defendants resumed construction-related activities for Community Connect after the imposition of the stop-work order.

107.    This work further damaged Lummi ancestral remains.

**Defendants Have Failed to Assess the Damage They Have Done**

108.    State law requires any person who disturbs Tribal graves, including through construction, to reinter those remains under the supervision of the appropriate Tribe. This process cannot proceed unless and until the Tribe, through a comprehensive damage assessment, understands the scope of the disturbance and the effort, including cost, required to recover and reinter the remains.

109.    Section 106 of NHPA requires resolution of adverse effects to historic properties, including burial grounds, from federally-funded projects. Section 106, however, first requires an assessment of those adverse effects before resolution can occur. A comprehensive damage assessment provides the only avenue for this analysis of the adverse effects from Community Connect and ReConnect.

110.    Nine months after discovery of the damage from Community Connect, Defendants evaluated only a small fraction of the total trenched and disturbed area at 45WH560.

111.    Defendants have failed to conduct any damage assessment for ReConnect.

112.    Defendants have failed to conduct any damage assessment for Middle Mile.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
20

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**Defendants Have Withheld Information from the Lummi Nation About the Extent of Damage to Ancestral and Archaeological Remains**

113. Defendants have not provided Lummi Nation with complete information regarding the scope and impacts of the projects sufficient to allow Lummi Nation to evaluate the full extent of damage to its ancestral burial sites.

114. Government-to-government consultation with Tribes required by the Section 106 process typically allows Tribes to access information about each stage of a project's development, including project plans, so that Tribes have the opportunity to provide input before irreversible construction begins.

115. Defendants delayed for a year before responding to Lummi Nation's multiple requests for maps showing the project's impacts. Defendants did not provide maps for the proposed aerial installation route as an alternative to continued trenching until nearly two years after discovery of the initial damage from Community Connect.

116. During meetings about the damage from Community Connect, Lummi Nation consistently asked Whidbey Telecom and RUS about potential damage from ReConnect and for basic information about the scope of the project. Defendants have refused to answer these questions with substantive information.

117. During meetings about the damage from Community Connect, Lummi Nation also asked Whidbey Telecom questions about Middle Mile. Defendants have refused to answer these questions with substantive information.

**Defendants Issued and Relied Upon Permits that Violated Federal and County Law**

118. More than one year after the Nation began inquiring about the County's encroachment permits for Community Connect and ReConnect, the County admitted that it had

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
21

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

issued both permits without fully reviewing the projects, blaming a failure of its software used to indicate the presence of cultural resources in project areas.

119.    This failure occurred on at least two separate occasions more than one year apart in time.

120.    Despite Whatcom County's admission, to Plaintiff's knowledge, Defendants RUS and NTIA have not reassessed the need for higher levels of environmental review.

121.    While Community Connect has stalled and will require a new encroachment permit from the County to resume, ReConnect continues to operate without a proper encroachment permit or required consultation between the County and the Nation.

122.    RUS permitted both Community Connect and ReConnect without conducting the proper project review required by NEPA or NHPA.

123.    RUS still has not conducted proper review of ReConnect, and the project remains out of compliance with both NEPA and NHPA.

124.    After discovery of the damage from Community Connect, Whidbey Telecom proposed to continue the project with aerial instead of ground installation plans.

125.    RUS still has not completed required review of those plans under Section 106 of NHPA, nor has it completed required environmental review of those plans under NEPA.

126.    NTIA permitted Middle Mile without conducting the proper project review required by NEPA or NHPA.

127.    NTIA remains out of compliance with NEPA and NHPA.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
22

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**Defendants Repeated These Failures across Multiple Projects Despite Demonstrable Knowledge of Their Prior Failures**

128.    Over the course of years' worth of discussions and correspondence about Community Connect, the SHPO repeatedly confirmed the eligibility of 45WH560 and 45WH525 for the NRHP.

129.    The SHPO and the Nation repeatedly requested consultation for Community Connect and ReConnect, and the SHPO repeatedly confirmed that Section 106 review should have been done for both projects.

130.    The Nation repeatedly asked Defendants to bring both Community Connect and ReConnect into compliance with the law. Defendants have failed to do so and have refused to provide any substantive information about ReConnect in spite of the Nation's and the SHPO's repeated warnings.

131.    Over the course of these discussions, the Nation also asked Whidbey Telecom about Middle Mile, only to be stonewalled and provided with little information about the project even though its project plans proposed various routes through sensitive archaeological sites at Point Roberts.

132.    RUS abruptly halted all formal communication about Community Connect in September 2025, providing the nail in the coffin to the attempt at resolution in which Lummi Nation engaged in good faith for nearly three years.

133.    Defendants never initiated discussion or consultation over the damage done by ReConnect.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
23

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

134. Defendants have not communicated with Lummi Nation about mitigation or alternative project plans for Middle Mile to avoid additional damage at 45WH525 or other sensitive sites at Point Roberts.

135. To this day, Defendants have failed to reinter or enable Lummi Nation to reinter any of the Lummi ancestral remains disturbed by the projects.

136. The violations alleged in this Complaint are continuing violations. Defendants' ongoing failures to comply with applicable law, complete required reviews, permit damage assessment, and allow reinterment continue to cause irreparable harm to Lummi Nation as of the date of this filing.

## STATUTORY AND REGULATORY BACKGROUND

### The National Historic Preservation Act

137. Judicial review under NHPA is governed by the APA. 5 U.S.C. §§ 701–706.

138. Section 106 of NHPA, codified at 54 U.S.C. § 306108, requires federal agencies, including RUS and NTIA, to take into account the effects of "undertakings" on historic properties and to afford ACHP a "reasonable opportunity to comment." NHPA's implementing regulations, 36 C.F.R. part 800, require federal agencies to identify historic properties; evaluate the potential effects of the proposed undertaking; consult with the SHPO and, critically, with federally recognized Tribes that attach religious and cultural significance to historic properties; consider alternatives to avoid, minimize, or mitigate adverse effects; and involve the public. *See id.* §§ 800.1(a), 800.2(c), 800.2(d).

139. The statute and regulations define "undertaking" to mean "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
24

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

financial assistance; and those requiring a Federal permit, license or approval." *Id.* § 800.16(y); *see* 54 U.S.C. § 300320. This definition includes projects carried out with federal financial assistance, such as the RUS-funded Community Connect and ReConnect projects, as well as the NTIA-funded Middle Mile project.

140.    The statute and regulations define "historic property" to mean "any prehistoric or historic district, site, building, structure, or object included in, or eligible for inclusion in, the National Register of Historic Places maintained by the Secretary of the Interior." 36 C.F.R. § 800.16(l)(1); *see* 54 U.S.C. § 300308. The Lummi burial grounds at sites 45WH560 and 45WH525 fall squarely within this definition, as they have long been determined eligible for the NRHP due to their profound historical and cultural significance. NHPA also specifies that "[p]roperty of traditional religious and cultural importance to an Indian tribe … may be determined to be eligible for inclusion on the National Register[,]" and "a Federal agency shall consult with any Indian tribe … that attaches religious and cultural significance to property described in" the statute. 54 U.S.C. § 302706(a)–(b).

141.    NHPA's regulations detail consultation protocols with federally recognized Tribes, affirming the consultation "requirement applies regardless of the location of the historic property[,]" 36 C.F.R. § 800.2(c)(2)(ii), and "that frequently historic properties of religious and cultural significance are located on ancestral, aboriginal, or ceded lands of Indian tribes[,]" 36 C.F.R. § 800.2(c)(2)(ii)(D).

142.    In addition, "[t]he agency official shall ensure that consultation in the section 106 process provides the Indian tribe … a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
25

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

effects on such properties, and participate in the resolution of adverse effects." *Id.* § 800.2(c)(2)(ii)(A). In short, Tribes have a right to consultation throughout the entirety of the Section 106 process for projects that pose impacts to any historic properties to which a Tribe attaches religious and cultural importance. *See id.* § 800.3–800.7 (specifying the role of Tribal consultation at each step of the Section 106 process).

143.    The regulations place on the federal agency "the responsibility … to make a reasonable and good faith effort to identify Indian tribes … that shall be consulted in the section 106 process[,]" and they specify that "[c]onsultation should commence early in the planning process[.]" *Id.* § 800.2(c)(2)(ii)(A).

144.    The regulations define "effect" to mean "alteration to the characteristics of a historic property qualifying it for inclusion in or eligibility for the National Register." *Id.* § 800.16(i). Adverse effects specifically include the "[p]hysical destruction of or damage to all or part of the property[.]" *Id.* § 800.5(a)(2)(i). The unauthorized trenching through known burial grounds constitutes the most severe form of adverse effect—the literal destruction of a historic site.

145.    Judicial review of agency compliance with programmatic agreements ("PA") made between federal agencies stipulating the terms and process for executing Section 106 review under NHPA are also governed by the APA. 5 U.S.C. §§ 701–706. *See also* 36 C.F.R. § 800.14(b).

146.    Failure of an agency to comply with these agreements constitutes an agency action that a court can hold arbitrary and capricious, an abuse of its discretion, or otherwise not in accordance with law. *See* 5 U.S.C. § 706(2)(A). *See also Tohono O'Odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189, 1202 (9th Cir. 2025).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
26

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

147.    A Nationwide PA, executed in 2018 between RUS, the National Conference of SHPOs, and the ACHP, governs the sequencing of project review under Section 106 for RUS's grantees.[2] The 2018 Nationwide PA stipulates:

> [RUS, as a division of USDA's Rural Development,] has delegated authority to their applicants pursuant to 36 CFR § 800.2(c)(4) and 7 CFR § 1970.5(b)(2) of the regulations, 'Environmental Policies and Procedures' (7 CFR Part 1970), to comply with the 4 step Section 106 process and advocates for the direct interaction between its borrowers and the State Historic Preservation Officer (SHPO) and Tribal Historic Preservation Officer (THPO), and Indian tribes, including federally recognized Indian tribes, Native Hawaiian organizations, and Alaska Native Corporations (Indian tribe) to support and encourage the consideration of impacts to historic properties early in project planning[.]

*Id.* at 3–4.

148.    The 2018 Nationwide PA further requires that "no federal funds for construction [should be] released prior to completion of Section 106 review." *Id.* at Section I(A).

149.    The 2018 Nationwide PA also only allows RUS to obligate federal funds "for undertakings as defined in 36 CFR 800.16(y) . . . prior to completion of Section 106 review" under the following conditions: 1) RUS must "[r]etain the ability to … withdraw" its funding for a project until Section 106 review is complete; 2) RUS can impose on its grantees a 90-day timeline and notice requirements for initiating Section 106 review after obligating funds to a project; 3) RUS can require its grantees to submit Section 106 consultation documentation to SHPOs, THPOs, and Indian Tribes based on their preferences; 4) and RUS can "[e]ncourage

---

[2] *See generally* NATIONWIDE PROGRAMMATIC AGREEMENT AMONG THE U.S. DEPARTMENT OF AGRICULTURE RURAL DEVELOPMENT PROGRAMS, NATIONAL CONFERENCE OF STATE HISTORIC PRESERVATION OFFICERS, AND THE ADVISORY COUNCIL ON HISTORIC PRESERVATION FOR SEQUENCING SECTION 106 (2018) [hereinafter "2018 Nationwide PA"].

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
27

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

[its] applicants to initiate consultation early in the planning process when the greatest number of options are available to avoid historic properties." *Id.* at Sections I(B)–(E).

150.    Finally, the 2018 Nationwide PA affirms that "Indian tribes … have special expertise in identifying historic properties that may possess religious and cultural significance to them (36 CFR § 800.4(c)(1)), and the … [NRHP] … considers the information obtained from a tribe['s] … recognized expert to be a valid line of evidence in considering determinations of significance and eligibility." *Id.* at Section IV(B).

## The National Environmental Policy Act ("NEPA")

151.    Judicial review under NEPA is governed by the APA. 5 U.S.C. §§ 701–706.

152.    NEPA seeks to "promote efforts which will prevent or eliminate damage to the environment and biosphere and stimulate the health and welfare of man." 42 U.S.C. § 4321. Federal agencies are required to "fulfill the responsibilities of each generation as trustee of the environment for succeeding generations" and "preserve important historic, cultural, and natural aspects of our national heritage." *Id.* §§ 4331(b)(1), (4).

153.    To achieve these purposes, federal agencies must produce a "detailed statement" called an Environmental Impact Statement ("EIS") for any "major Federal action[] significantly affecting the quality of the human environment." *Id.* § 4332(C).

154.    If an agency does not know what the significance of an effect a project might have on the quality of the human environment, or if the project does not have a reasonably foreseeable significant effect, it may produce an environmental assessment ("EA") rather than an EIS. 42 U.S.C.§ 4336(b)(2). An EA is "a concise public document" that sets forth the basis of an agency's "finding of no significant impact or determination that an environmental impact statement is necessary." *Id.*

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
28

155. Federal agencies must take a hard look at the effects of a proposed action, including environmental and cultural impacts, before issuing a decision that will allow the action to occur. *See id.* §§ 4332(C), 4336(b)(1)–(2).

156. In limited circumstances, agencies may apply a categorical exclusion ("CE") and avoid developing an EIS or EA. CEs are "actions that a Federal agency has determined normally does not significantly affect the quality of the human environment." *Id.* § 4336e(1).

157. However, agencies may not apply CEs where extraordinary circumstances exist.

158. NEPA also requires federal agencies to disclose those effects with other agencies and the public before proceeding with that action. Public participation and disclosure are key aspects of NEPA, meant to: (1) ensure that agencies have carefully and fully contemplated the environmental effects of their actions before they make decisions and (2) ensure that the public has sufficient information to review, comment on, and—if necessary—challenge these agency actions. *See id.* §§ 4321, 4332.

159. NEPA "ensures that the agency will not act on incomplete information, only to regret its decision after it is too late to correct." *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 371 (1989). As the Supreme Court has explained, "the broad dissemination of information mandated by NEPA permits the public and other government agencies to react to the effects of a proposed action at a meaningful time." *Id.*

160. Prior to April 11, 2025, the Council on Environmental Quality ("CEQ") had regulations implementing NEPA in place that federal agencies were required to follow. 40 C.F.R. Parts 1500–1508 (Sept. 14, 2020). On February 25, 2025, CEQ issued an Interim Rule rescinding its regulations, which took effect on April 11, 2025. Removal of National Environmental Policy Act Regulations, 90 Fed. Reg. 10610, 10610 (Feb. 25, 2025).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
29

161.    Prior to July 3, 2025, USDA and RUS each had regulations implementing NEPA based on the CEQ regulations. 7 C.F.R. pt. 1b (2019); 7 C.F.R. pt. 1970 (2019). In response to the recission of the CEQ regulations, USDA amended its regulations and removed subagency-specific regulations on July 3, 2025. National Environmental Policy Act, 90 Fed. Reg. 29632, 29632 (July 3, 2025) (to be codified at 36 C.F.R. pt. 220).

162.    For actions subject to NEPA taken before July 3, 2025, USDA and RUS still apply CEQ and their own internal NEPA implementing regulations. *Id.* at 29634 ("But revised agency procedures will have no effect on ongoing NEPA reviews, where USDA, following CEQ guidance, has held it will continue to apply existing applications.").

163.    RUS's NEPA regulations allow for the application of CEs in only limited circumstances. *See* 7 C.F.R. §§ 1970.53–1970.55 (2019). To determine that a proposal, project, or other action is categorically excluded, the agency must first determine three things: (1) that the action fits within a defined class of actions already determined not to have a significant effect on the environment, (2) that there are no extraordinary circumstances, and (3) that the action is not connected to other actions with "potentially significant impacts," nor is the action considered a "cumulative action." *Id.* § 1970.51(b).

164.    If, "at any time during the environmental review process," the agency determines the action does not meet the criteria of the categories of USDA-approved CEs, "an EA or EIS, as appropriate, will be required." *Id.* § 1970.51(d); *see also id.* § 1970.10 ("Environmental conditions, scientific controversy, or other characteristics unique to a specific proposal can trigger the need for a higher level of environmental review...")

165.    The RUS NEPA regulations define extraordinary circumstances as: "unique situations presented by specific proposals, such as characteristics of the geographic area affected

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
30

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

by the proposal, scientific controversy about the environmental effects of the proposal, uncertain effects or effects involving unique or unknown risks, and unresolved conflicts concerning alternate uses of available resources[.]" *Id.* § 1970.52(a). If extraordinary circumstances are present, an action that normally would require only the application of a CE may require an EA or EIS, and thus "will be the subject of an additional environmental review by the Agency to determine the potential of the Agency action to cause any significant adverse environmental effect[.]" *Id.*

166.    "Significant adverse environmental effects" include "[a]ny violation of applicable Federal, state, or local statutory, regulatory, or permit requirements for environment, safety, and health[,]" an "adverse effect" on "[h]istoric properties," and "[t]he existence of controversy based on effects to the human environment brought to the Agency's attention by a Federal, tribal, state, or local government agency." *Id.* §§ 1970.52(b)(1), (4)(i), (5).

167.    NTIA's NEPA guidance define "extraordinary circumstances" to include:

1. Reasonable likelihood that the proposed action occurs within an environmentally sensitive or unique geographical area of notable recreational, ecological, scientific, cultural, or aesthetic importance…

4. Reasonable likelihood that the proposed action adversely affects historic, archeological, or cultural sites, including Native American Traditional Cultural Properties, properties listed or eligible for listing on the National Register of Historic Places, or land identified by archeologists as having high potential to obtain archeological resources.

5. Reasonable likelihood that the proposed action restricts access to and ceremonial use of Indian sacred sites by Indian practitioners or adversely affect the physical integrity of such religious sacred sites…

11. Reasonable likelihood that the proposed action violates a Federal, Tribal, state, or local law, regulation, policy, or requirement imposed for the protection of the environment.

National Environmental Policy Act Procedures and Categorical Exclusions, 88 Fed. Reg. 19089, 19094 (2023).

## The Administrative Procedure Act ("APA")

168. The APA, 5 U.S.C. §§ 701–706, governs judicial review of federal agency action and inaction. It authorizes "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute," to seek relief in federal court. *Id.* § 702.

169. Courts may review "final agency action for which there is no other adequate remedy in a court," *id.* § 704, and may also "compel agency action unlawfully withheld or unreasonably delayed[.]" *Id.* § 706(1). Courts must "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or taken "without observance of procedure required by law." *Id.* §§ 706(2)(A), (C), (D).

170. The APA defines "agency action" to include "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." *Id.* § 551(13).

## Washington State's Indian Graves and Records Act

171. The Indian Graves and Records Act ("IGRA"), codified under RCW 27.44.030, establishes protections for Native Indian burial grounds, cairns, glyptic markings, and historic graves, recognizing them as finite, irreplaceable cultural resources integral to the heritage of Washington State. The legislature has declared its intent to safeguard these sites from deliberate desecration and careless indifference, encouraging voluntary reporting and respectful handling

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
32

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

in cases of accidental disturbance. RCW 27.44.030; *Swinomish Tribal v. Island Cnty.*, 87 Wn. App. 552, 557 (Wash. Ct. App. 1997).

172.    Under RCW 27.44.040, it is a class C felony to knowingly remove, mutilate, deface, injure, or destroy any Native Indian grave or cairn. Additionally, individuals who inadvertently disturb such sites through activities like construction or agriculture must reinter the remains under the supervision of the appropriate Tribe, with reinterment expenses covered by the Office of Archaeology and Historic Preservation.

173.    In addition to potential for criminal prosecution for violations of IGRA, a Tribe or any enrolled member of the Tribe may seek civil penalties. The court may award actual damages including special and general damages, which encompass damages for emotional distress as well as punitive damages upon proof that the violation was willful. Notably, punitive damages can be awarded even without proof of actual damages. Reasonable attorneys' fees may also be awarded to the prevailing party. RCW 27.44.050.

174.    The statute also permits a court to grant injunctive relief or other equitable remedies, including the reinterment of human remains. *Id.*

175.    Moreover, IGRA requires a mandatory duty to notify the coroner and local law enforcement upon discovery of skeletal human remains. RCW 27.44.055. The statute requires that:

> Any person engaged in ground disturbing activity and who encounters or discovers skeletal human remains in or on the ground shall: (a) Immediately cease any activity which may cause further disturbance; (b) Make a reasonable effort to protect the area from further disturbance; [and] (c) Report the presence and location of the remains to the coroner and local law enforcement in the most expeditious manner possible.

*Id.* 27.44.055(2)(a)–(c).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
33

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

176.    The statute provides exemptions if the disturbance was accidental, reasonable efforts were made to preserve the remains, and the incident was properly reported. *Id.* 27.44.040. None of these exemptions apply in this case given the repeated, knowing violations and egregious behavior by Whidbey Telecom.

## Gross Negligence

177.    Under Washington common law, the "elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog v. City of Seattle*, 138 Wn.2d 265, 275 (Wash. 1999) (citing *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48 (Wash. 1996)).

178.    Gross negligence "requires a greater breach[,]" and the Plaintiff must show that the Defendant "'substantially' breached its duty by failing to act with even slight care." *Harper v. Dep't of Corr.*, 192 Wash. 2d 328, 340–41 (Wash. 2018) (citing *Nist v. Tudor*, 67 Wn.2d 322, 331 (Wash. 1965)).

179.    Gross negligence does not imply a total absence of care but rather a significant deviation from the standard of care expected under the circumstances. *Kelley v. Dep't of Corrs.*, 104 Wn. App. 328, 333 (Wash. Ct. App. 2000); *Swank v. Valley Christian Sch.*, 188 Wn.2d 663, 684 (Wash. 2017); *Peterhans v. Univ. of Wash.*, 34 Wn. App. 2d 745, 752–54 (Wash. Ct. App. 2025).  In *Harper*, the Court held that a "person acts with simple negligence when he or she exercises less than 'that degree of care which the reasonably prudent person would exercise in the same or similar circumstances.' Thus, a person acts with gross negligence when he or she exercises '*substantially or appreciably*' less than that degree of care which the reasonably prudent person would exercise in the same or similar circumstances." 192 Wash. 2d at 342–43.

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

180.    To establish gross negligence, a plaintiff must present substantial evidence of serious negligence, demonstrating that the defendant failed to exercise even slight care in their actions. *Peterhans*, 34 Wn. App. 2d at 753–54 (Wash. Ct. App. 2025); *Dalen v. St. John Med. Ctr.*, 8 Wn. App. 2d 49, 61–62 (Wash. Ct. App. 2019).

**Whatcom County Codes and Permits**

181.    Under its own code, "[u]pon receipt of application for a development permit on properties within 500 feet of a site known to contain archaeological resources, [Whatcom County] shall require an archaeological resources site assessment." Whatcom County Code § 20.72.652(2)(a).

182.    Additionally, "[i]f the archaeological resources site assessment identifies the presence of significant archaeological resources," then an Archaeological Resource Management Plan ("ARMP") must be prepared by a professional archaeologist, and the professional archaeologist "shall solicit comments from the … Lummi Nation Historic Preservation Office[.]" *Id.* § 20.72.652(2)(b). The ARMP must include identification of potentially impacted archaeological resources, assessment of adverse effects, and proposals for avoidance, mitigation, or minimization of adverse effects. *Id.* § 20.72.652(2)(b)(i).

183.    Before the County can approve the ARMP, the County's technical administrator must consult with Lummi Nation's THPO and, when "granting development permits, the county may attach reasonable conditions to provide sufficient time and/or conditions for consultation with the … Lummi Nation Historic Preservation Office." *Id*. § 20.72.652(2)(c), (d). "Provision for the protection and preservation of archaeological sites shall be incorporated to the maximum extent possible." *Id*. § 20.72.652(2)(d).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
35

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

184.    In the event of an inadvertent discovery at the archaeological site, "work on that portion of the development site shall be stopped immediately and the find reported as soon as possible to the county" and to Lummi Nation. *Id*. § 20.72.652(3)(a)–(b).

185.    Whatcom County Encroachment Permit No. ENC2022-00059 states: "If archaeological materials (bone, shell midden, cobble tools, etc.) are observed during site work, work in the area of discovery shall cease and the Whatcom County SEPA Administrator…shall be contacted immediately to determine the significance of the discovery."

186.    Whatcom County Code also specifies that the SEPA Administrator should notify the Nation and the SHPO and conduct an immediate site assessment to evaluate the significance of the discovery. Whatcom County Code § 20.72.652(3)(b).

### Joint and Several Liability

187.    Washington State generally follows a rule of several liability in tort actions involving multiple parties, meaning each defendant is liable only for their proportionate share of damages. However, RCW 4.22.070 establishes specific exceptions to this rule. Under RCW 4.22.070(1)(a), joint and several liability is retained where parties are acting in concert or where one party is acting as an agent or servant of another.

188.    Therefore, if an agency relationship is established, and the agent's conduct falls within the scope of that relationship, both the principal and agent may be held jointly and severally liable for the resulting damages.

### CLAIMS FOR RELIEF

**Count I – Failure to Complete Section 106 Review in Violation of NHPA, 54 U.S.C. §§ 302706 and 306108, 36 C.F.R. Part 800, and the APA, 5 U.S.C. §§ 701 to 706**
**(Against Defendants RUS and NTIA)**

189.    Plaintiff incorporates by reference the allegations in paragraphs 1 to 188.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
36

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

190.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

191.    NHPA's procedural obligations are triggered once there is a federal undertaking. 54 U.S.C. § 300320; 36 C.F.R. § 800.16(y).

192.    The Community Connect, ReConnect, and Middle Mile projects constitute separate federal undertakings. NHPA and its regulations define "undertaking" to mean "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including those carried out by or on behalf of a Federal agency; those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval." 36 C.F.R. § 800.16(y); *see* 54 U.S.C. § 300320. Because Community Connect and ReConnect are RUS-funded, they meet the definition of undertaking. Because Middle Mile is funded by NTIA, it meets the definition of undertaking.

193.    Section 106 consultation must occur early in the planning process, before a project begins. 36 C.F.R. § 800.1(c). *See also Nat'l Tr. for Hist. Pres. v. Blanck*, 938 F.Supp. 908, 919–24 (D.D.C. 1996). Prior to approving federal undertakings, agencies must: (a) determine and document the area of potential effects; (b) identify and evaluate historic properties that may be affected; (c) assess whether the undertaking will have adverse effects on those properties; (d) consult with required parties to develop and evaluate alternatives or modifications to the undertaking that could avoid, minimize, or mitigate adverse effects; and (e)

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
37

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

afford the ACHP a reasonable opportunity to comment. *See* 54 U.S.C. § 306108; 36 C.F.R. §§ 800.4–800.6.

194. NHPA also requires federal agencies to conduct government-to-government consultation with "any Indian tribe…that attaches religious and cultural significance to a [historic] property[.]" 54 U.S.C. § 302706(a)–(b), and NHPA's regulations specify that this consultation must occur "regardless of the location of the historic property[,]" providing the Tribe "a reasonable opportunity to identify its concerns about historic properties, advise on the identification and evaluation of historic properties, including those of traditional religious and cultural importance, articulate its views on the undertaking's effects on such properties, and participate in the resolution of adverse effects." 36 C.F.R. §§ 800.2(c)(2)(ii), (A).

195. An "adverse effect" occurs when an undertaking may alter, directly or indirectly, any of the characteristics of a historic property that qualify it for inclusion in the NRHP in a manner that would "diminish the integrity of [] location, design, setting, materials, workmanship, feeling, or association." *Id*. § 800.5(a)(1). Examples of adverse effects include physical destruction of or damage to all or part of the property. *Id*. § 800.5(a)(2)(i).

196. Community Connect, ReConnect, and Middle Mile have the potential to affect— and have affected—historic properties, including Lummi burial grounds and cultural resources. NHPA and its regulations define "historic property" to mean "any prehistoric or historic district, site, building, structure, or object included in, or eligible for inclusion in, the National Register of Historic Places maintained by the Secretary of the Interior." *Id*. § 800.16(l)(1); *see* 54 U.S.C. § 300308.

197. Lummi Nation attaches religious and cultural importance to its burial ground sites at Point Roberts, and NHPA also specifies that "[p]roperty of traditional religious and

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
38

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

cultural importance to an Indian tribe…may be determined to be eligible for inclusion on the National Register." 54 U.S.C. § 302706(a).

198.    Defendant RUS approved the expenditure of federal funds and obligated funds to Community Connect and ReConnect at Point Roberts, and continued to authorize the disbursement of federal funds, without conducting required Section 106 review, conducting government-to-government consultation with Lummi Nation, or seeking to resolve adverse effects.

199.    Defendant NTIA approved the expenditure of federal funds and obligated funds to Middle Mile, and continued to authorize the disbursement of federal funds, without conducting required Section 106 review, conducting government-to-government consultation with the Nation, or seeking to resolve adverse effects before project activities began at Point Roberts.

200.    As a result of Defendant RUS's failure to complete Section 106 review for Community Connect, Lummi burial grounds at site 45WH560 were disturbed during trenching, ancestral remains were damaged or destroyed, and Lummi Nation has been unable to reinter those remains. As a result of Defendant RUS's failure to complete Section 106 review for ReConnect, Lummi burial grounds at site 45WH525 were further disturbed during trenching, additional ancestral remains were damaged, and Lummi Nation has been unable to reinter those remains. As a result of Defendant NTIA's failure to complete Section 106 review for Middle Mile, additional Lummi ancestral remains were disturbed in close proximity to ReConnect's operations and are now permanently lost. Lummi Nation has suffered ongoing harm from each undertaking, including the inability to reinter remains, the loss of cultural resources, and impairment of ceremonial and religious use of the affected sites.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
39

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

201.    Defendants RUS and NTIA have a nondiscretionary obligation to initiate and complete the Section 106 review process "prior to" any federal undertaking, and to refrain from issuing any permits, approvals, or other authorizations that would facilitate such undertaking prior to completing that process.

202.    By allowing activities for federal undertakings that adversely affected historic properties without first completing Section 106 review, Defendants RUS and NTIA have unlawfully withheld and unreasonably delayed agency action in violation of 5 U.S.C. § 706(1) and have acted "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D).

203.    To the extent Defendants RUS or NTIA contend that they have conducted any form of Section 106 review, any such review is inadequate and fails to meet the requirements of NHPA, rendering any decision to proceed under these circumstances arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A).

204.    Plaintiff suffered legal wrong and was adversely affected by the failure to comply with NHPA.

### Count II – Failure to Ensure Completion of Section 106 Review Before Funding Construction in Violation of the 2018 Nationwide PA, the NHPA, 54 U.S.C. § 306108, 36 C.F.R. Part 800, and the APA, 5 U.S.C. §§ 701 to 706
**(Against Defendant RUS)**

205.    Plaintiff incorporates by reference the allegations in paragraphs 1 to 204.

206.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
40

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

207. The 2018 Nationwide PA between USDA's RD, ACHP, and the National Conference of SHPOs, to which RUS is a signatory, is effective until 2028, and governs the sequencing of Section 106 review for projects funded by RUS. *See generally* 2018 Nationwide PA.

208. Failure of RUS to comply with the 2018 Nationwide PA constitutes an agency action or agency action unlawfully withheld subject to judicial review under the APA. *See* 5 U.S.C. §§ 702, 706.

209. The 2018 Nationwide PA requires RUS to withhold all federal funds for construction until Section 106 review is complete, and grantees ensure compliance with NHPA. 2018 Nationwide PA at Section I(A).

210. The 2018 Nationwide PA only allows RUS to obligate federal funds to a federal undertaking before completion of Section 106 review under certain conditions, including RUS "retain[ing] the ability to … withdraw" that funding until Section 106 review is completed. *Id.* at Section I(B).

211. RUS funded and approved construction for Community Connect and ReConnect without ensuring that required Section 106 review—including notice to the Nation about the projects, consultation with the Nation, identification of historic properties, or the resolution of adverse effects—was completed before construction began.

212. RUS has a nondiscretionary obligation to enforce the terms of the 2018 Nationwide PA, including completion of the Section 106 process prior to construction, for federal undertakings that it funds. RUS failed to enforce the terms of the PA with respect to Community Connect and ReConnect.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
41

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

213.    As a result, Lummi burial grounds were disturbed, and ancestral remains were damaged or destroyed. Lummi Nation suffered ongoing harm, including inability to reinter remains and loss of cultural resources.

214.    By allowing construction to begin on Community Connect and ReConnect without first ensuring completion of Section 106 review, RUS has unlawfully withheld and unreasonably delayed agency action in violation of 5 U.S.C. § 706(1) and has acted "without observance of procedure required by law," in violation of 5 U.S.C. § 706(2)(D).

215.    RUS's funding of the projects violates the terms of the 2018 Nationwide PA, rendering any decision to proceed under these circumstances arbitrary, capricious, and not in accordance with law under 5 U.S.C. § 706(2)(A).

216.    Plaintiff suffered legal wrong and was adversely affected by the failure to comply with the PA.

**Count III – Failure to Conduct Required Environmental Review in Violation of the NEPA, 42 U.S.C. §§ 4321 *et seq.*, and the Administrative Procedure Act, 5 U.S.C. §§ 701 to 706**
**(Against Defendants RUS and NTIA)**

217.    Plaintiff incorporates by reference the allegations in paragraphs 1 to 216.

218.    The APA provides a remedy to "compel agency action unlawfully withheld or unreasonably delayed" and "hold unlawful and set aside agency action, findings, and conclusions found to be…arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," "in excess of statutory jurisdiction, authority, or limitations," or "without observance of procedure required by law." 5 U.S.C. §§ 706(1), (2)(A), (C), (D).

219.    NEPA's procedural obligations are triggered once there is a major federal action. *See* 42 U.S.C. § 4332(C).

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
42

220. ReConnect, Community Connect, and Middle Mile constitute major federal actions, because they are funded by USDA and NTIA. *See id.* § 4336e(10) ("The term 'major Federal action' means an action that the agency carrying out determines is subject to substantial Federal control and responsibility."). The projects are therefore subject to judicial review under the APA. 5 U.S.C. §§ 702, 704, 706.

221. NEPA requires federal agencies to take a hard look at the environmental consequences of major federal actions *before* making decisions that will affect the environment. *See id.* §§ 4332(C), 4336(b)(1)–(2).

222. CEs can only be applied to federal actions in limited circumstances that will not significantly affect the quality of the human environment. *See id.* § 4336e(1); 7 C.F.R. § 1970.51(b) (2019) (applicable to ReConnect and Community Connect); 40 C.F.R. § 1501.4(b) (2023) (applicable to Middle Mile).

223. At *any time* in the environmental review process, a CE may no longer be enough, and an EA or EIS may be required. 7 C.F.R. §§ 1970.51(d), 1970.10; 40 C.F.R. § 1501.4(b)(2).

224. CEs are not appropriate where "extraordinary circumstances" exist. If an agency determines there are extraordinary circumstances, even after the initial application of a CE, a higher level of environmental review may be triggered, and the agency may need to prepare an EA or EIS. 7 C.F.R. § 1970.10; 88 Fed. Reg. at 19094 (applicable to Middle Mile).

225. Extraordinary circumstances include adverse effects to historic properties, 7 C.F.R. § 1970.52(b)(4)(i); the existence of controversy based on effects to the environment raised by Tribal governments, *id.* § 1970.52(b)(5); a reasonable likelihood that the proposed action will adversely affect historic, archaeological, or cultural sites, including Native American Traditional Cultural Properties, properties listed or eligible for listing on the NRHP, or land

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
43

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

identified by archeologists as having high potential to obtain archeological resources, 88 Fed. Reg. at 19094; and a reasonable likelihood that the proposed action restricts access to and ceremonial use of Indian sacred sites by Indian practitioners or adversely affect the physical integrity of such religious sacred sites, *id*.

226. The SHPO has repeatedly confirmed the eligibility of 45WH560 and 45WH525 for the NRHP, and Defendants knew or should have known that Point Roberts and 45WH560 and 45WH525 specifically are highly sensitive cultural landscapes with a high likelihood of containing Lummi burial sites.

227. Therefore, extraordinary circumstances have always existed under 7 C.F.R. § 1970.52(b)(4)(i), 7 C.F.R. § 1970.52(b)(5), and 88 Fed. Reg. at 19094 have always existed that should have precluded the use of any CE for any of the three projects, and that should have triggered the preparation of an EA or EIS at the latest upon Defendants' notice of the discovery of human remains and associated archeological resources at sites 45WH560 and 45WH525.

228. Defendants have not prepared an EA or EIS for any of the projects; have not documented reliance on a CE; have not taken a hard look at the projects' direct, indirect, or cumulative effects on the human environment, including effects on historic properties and archaeological sites eligible for the NRHP; have not evaluated the effects of the actual discovery of and damage to human remains and associated archaeological resources; and have not provided the Nation an opportunity to engage in Tribal consultation or other opportunity for public comment or review.

229. By proceeding with the projects beyond the point of commitment, including after the discovery of human remains and associated archaeological resources, Defendants have unlawfully withheld and unreasonably delayed required agency action in violation of 5 U.S.C. §

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
44

706(1), and they have acted without observing procedures required by NEPA, in violation of 5 U.S.C. § 706(2)(D).

230.    To the extent that Defendants contend that any NEPA review has been conducted, such review is inadequate and fails to satisfy NEPA's requirements, rendering any decisions to proceed with the projects arbitrary and capricious. *Id.* § 706(2)(A).

231.    As a direct result of these violations, Plaintiff's concrete interests have been and continue to be harmed absent relief.

### Count IV – Negligence
### (Against Defendant Whatcom County)

232.    Plaintiff incorporates by reference the allegations in paragraphs 1 to 231.

233.    Under Washington common law, the "elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog*, 138 Wn.2d at 275 (citing *Degel*, 129 Wn.2d at 48).

234.    Whatcom County had a duty to review Community Connect and ReConnect project permits for impacts on Lummi cultural resources and to consult with the Nation before issuing permits for all projects at Point Roberts. *See generally* Whatcom County Code § 20.72.652.

235.    Whatcom County breached these duties to properly permit and oversee construction at Point Roberts. The County issued the encroachment permits unlawfully and failed to monitor or enforce protocols for handling of inadvertent discoveries.

236.    The County's failures allowed Whidbey Telecom to disturb and destroy Lummi burial grounds and ancestral remains, and the Nation is suffering ongoing and permanent harm as a result of the County's breaches.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
45

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

### Count V – Gross Negligence
**(Against Defendant Whidbey Telecom)**

237.    Plaintiff incorporates by reference the allegations in paragraphs 1 to 236.

238.    Under Washington common law, the "elements of a negligence cause of action are the existence of a duty to the plaintiff, breach of the duty, and injury to plaintiff proximately caused by the breach." *Hertog*, 138 Wn.2d at 275 (citing *Degel,* 129 Wn.2d at 48).

239.    Whidbey Telecom had a duty, on account of its permits and its delegated authority under RUS's PA governing the execution of the Section 106 process, to ensure compliance with Section 106 for each of its projects. Whidbey Telecom also had a duty to comply with the project permits as well as legal protocols for inadvertent discoveries, protection of burial grounds, and notification of the proper authorities. Whidbey Telecom breached all of its duties. It failed to ensure Community Connect and ReConnect complied with Section 106, it failed to mitigate harm to the sites known to be sacred to Lummi Nation, it failed to stop work upon discovery of burial remains, it failed to notify authorities, and it left remains and artifacts exposed for extended periods.

240.    Whidbey Telecom chose to commence project activities in very close proximity to known Lummi burial grounds for Middle Mile, even after Lummi Nation raised concerns about impacts to those same burial grounds from ReConnect.

241.    As an additional ongoing breach, Whidbey Telecom continued work on Community Connect after discovery of the human remains, and it has failed to complete damage assessments required to resolve adverse effects from Community Connect, ReConnect, and Middle Mile and ensure reinterment of Lummi ancestral remains disturbed at 45WH560 and 45WH525.

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

242.    As a result, Lummi burial grounds were disturbed, and ancestral remains were damaged and destroyed. Lummi Nation suffered ongoing harm, including inability to reinter remains and loss of cultural resources.

243.    Furthermore, Whidbey Telecom's conduct rises to the level of gross negligence. Whidbey "'substantially' breached its duty by failing to act with even slight care." *Harper*, 192 Wash. 2d at 340–41 (citing *Nist,* 67 Wn.2d at 331).

244.    The facts of this case show that Whidbey Telecom's behavior significantly deviated from the standard of care expected under the circumstances by exercising appreciably less care than a reasonably prudent person would exercise in the same or similar circumstances. *See* 192 Wash. 2d at 342–43.

245.    Whidbey Telecom, its employees, and contractors all failed to exercise even slight care by failing to protect known Lummi burial sites, in failing to appropriately respond to inadvertent discoveries, and in continuing work and failing to conduct a damage assessment.

246.    These actions and omissions constitute gross negligence and caused ongoing harm to Lummi Nation.

**Count VI – Violation of the Washington Indian Graves and Records Act, RCW 27.44.040, 27.44.050, and 27.44.055**
**(Against Defendant Whidbey Telecom)**

247.    Plaintiff incorporates by reference the allegations in paragraphs 1 to 246.

248.    IGRA protects Native Indian burial grounds and historic graves, recognizing them as finite, irreplaceable cultural resources integral to the heritage of Washington State. RCW 27.44.030. The legislature has declared its intent to safeguard these sites from deliberate desecration and careless indifference, encouraging voluntary reporting and respectful handling in cases of accidental disturbance. RCW 27.44.030; *Swinomish,* 87 Wn. App. at 557.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
47

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

249. RCW 27.44.040 stipulates that "Any person who knowingly removes, mutilates, defaces, injures, or destroys any cairn or grave of any native Indian, or any glyptic or painted record of any tribe or peoples is guilty of a class C felony punishable under" state law, and "[p]ersons disturbing native Indian graves through inadvertence, including disturbance through construction…or any other activity, shall reinter the human remains under the supervision of the appropriate Indian tribe."

250. IGRA also allows civil actions by Tribes against anyone who has violated RCW 27.44.040 "to secure an injunction, damages, or other appropriate relief." RCW 27.44.050. The Lummi Nation is a federally recognized Tribe and brings this action timely under RCW 27.44.050.

251. Whidbey Telecom knowingly disturbed and destroyed Lummi burial grounds and graves during activities for all three projects at Point Roberts. RCW 27.44.040. In defiance of the Inadvertent Discovery Plan provided to Whidbey Telecom construction crews for training as to how to identify archaeological materials likely to contain human remains, upon first encountering shell midden deposits on Community Connect, Whidbey Telecom did not stop construction. Instead, they willfully continued work and disturbing human remains, digging a 1,000-foot-long trench and created five exploratory trenches for a total of 300 additional feet of damage. Human remains were found in four of the five trenches assessed and in all soil piles removed.

252. Whidbey Telecom similarly dug 2,100 feet of trench for ReConnect at a known Lummi burial ground site, again, upon information and belief, equipped with an Inadvertent Discovery Plan that should have stopped Whidbey Telecom from continuing to dig as soon as

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
48

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

they first encountered archaeological materials. Instead, they continued digging, knowingly leaving untold damage to Lummi ancestral remains.

253.    Whidbey Telecom then knowingly chose to commence project activities in close proximity to ReConnect's operations and site 45WH525, where Lummi Nation had already warned Whidbey Telecom that its project had likely damaged Lummi burial grounds. Whidbey Telecom began these activities with only three days' notice to Lummi Nation and indeed once again disturbed human remains for Middle Mile that are now permanently lost and cannot be reinterred.

254.    Whidbey Telecom further failed to comply with statutory protocols for notification to local authorities and Lummi Nation on all three projects. RCW 27.44.055.

255.    To date, Whidbey Telecom has failed to allow Lummi Nation to respectfully reinter their ancestral remains disturbed by Community Connect and ReConnect.  Whidbey Telecom has also willfully withheld information related to the damage from both projects and has not permitted a comprehensive damage assessment from both projects necessary for reinterring Lummi ancestral remains. IGRA requires: "[p]ersons disturbing native Indian graves through inadvertence, including disturbance through construction, mining, logging, agricultural activity, or any other activity, shall reinter the human remains under the supervision of the appropriate Indian tribe." RCW 27.44.040. Whidbey Telecom's violations of IGRA, therefore, constitute an ongoing violation under RCW 27.44.050.

256.    The Nation seeks damages, including those for emotional distress and punitive damages as provided under RCW 27.44.050, and injunctive relief for the harm caused.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court grant the following relief:

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
49

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**With Respect to all Defendants:**

A.  Enter injunctive relief requiring Defendants to (a) cease all further disturbance of the affected sites; (b) secure the affected sites at Point Roberts from further looting, trespass, or environmental damage; (c) allow Plaintiff access to complete a comprehensive damage assessment of the impacts to historic properties, archaeological sites, and Lummi ancestral remains at sites 45WH560 and 45WH525; and (d) cooperate fully with the Lummi Nation in the protection, recovery, and reinterment of Lummi ancestral remains and in compliance with all applicable law.

**With Respect to Counts I, II, and III (Against Defendants RUS and NTIA):**

B.  Declare that Defendants RUS And NTIA violated Section 106 NHPA, 54 U.S.C. § 306108, and its implementing regulations, 36 C.F.R. Part 800, by funding and approving Community Connect, ReConnect, and Middle Mile without first completing the required Section 106 process, including government-to-government consultation with the Lummi Nation;

C.  Declare the Defendant RUS violated the 2018 Nationwide PA by funding construction of Community Connect and ReConnect without first ensuring completion of Section 106 review;

D.  Declare that Defendants RUS and NTIA violated NEPA, 42 U.S.C. §§ 4321 *et seq.*, and applicable implementing regulations and guidance by failing to take a hard look at the environmental consequences of Community Connect, ReConnect, and Middle Mile, by improperly relying on CEs notwithstanding the existence of extraordinary circumstances, and by failing to complete an EA or EIS;

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
50

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

E. Vacate Defendants RUS's and NTIA's funding decisions, approvals, and permits for the Community Connect, ReConnect, and Middle Mile projects, and remand to Defendants RUS and NTIA with instructions to complete Section 106 and EAs or EISs consistent with NHPA, NEPA, the 2018 Nationwide PA, and 36 C.F.R. Part 800 before any further project activities proceed;

F. Enjoin Defendants RUS and NTIA from further obligating, disbursing, or authorizing the use of federal funds for any of the three projects until Section 106 and higher level NEPA review is complete; and

G. Award Plaintiff its reasonable attorneys' fees, expenses, and costs under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable provision of law.

**With respect to Counts IV, V, and VI (against Defendants Whatcom County and Whidbey Telecom):**

H. Award compensatory damages on Counts IV, V, and VI against Defendants Whatcom County and Whidbey Telecom for harm to burial grounds and cultural resources, costs of damage assessment, archaeological consultation, restoration, and reinterment of Lummi ancestral remains, emotional distress, and other losses, in amounts to be proven at trial;

I. Award punitive damages against Defendant Whidbey Telecom on Count VI for its willful and grossly negligent violations of RCW 27.44.040, as authorized by RCW 27.44.050; and

J. Award Plaintiff its reasonable attorneys' fees, expenses, and costs against Defendant Whidbey Telecom under RCW 27.44.050, and any other applicable provision of law.

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
51

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**General Relief:**

K.  Such other and further relief as this Court deems just and proper.

Respectfully submitted,

Dated: April 27, 2026

/s/ Gabriel D. Cantu, Bar No. 52733
OFFICE OF THE RESERVATION ATTORNEY,
LUMMI NATION
2665 Kwina Road
Bellingham, WA 98226
Tel: (360) 384-7110
Email: GabrielC@lummi-nsn.gov

/s/ Gregory Alan Werkheiser, Virginia Bar No. 45986
Marion Forsyth Werkheiser, Virginia Bar No. 65454
Katherine Lee Sorrell, Texas Bar No. 24129460
Lydia Dexter, Oregon Bar No. 233151
CULTURAL HERITAGE PARTNERS, PLLC
1811 East Grace Street, Suite A
Richmond, Virginia 23223
Tel: (202) 567-7594
Emails: greg@culturalheritagepartners.com
        marion@culturalheritgepartners.com
        katherine@culturalheritagepartners.com
        lydia@culturalheritagepartners.com

*Pro Hac Vice forthcoming*

*Counsel for Plaintiff*

COMPL. FOR DECL. AND INJ. RELIEF
AND DAMAGES; REQ. FOR JURY TRIAL –
52

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110