UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON AT SEATTLE

| | |
|---|---|
| LUMMI NATION, a federally recognized Indian Tribe,<br><br>Plaintiff,<br><br>v.<br><br>WHIDBEY TELEPHONE COMPANY d/b/a WHIDBEY TELECOM; WHATCOM COUNTY; UNITED STATES DEPARTMENT OF AGRICULTURE; and UNITED STATES DEPARTMENT OF COMMERCE<br><br>Defendants. | Case No.: 2:26-cv-01435-KKE<br><br>DEFENDANT WHIDBEY TELEPHONE COMPANY'S RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION<br><br>HEARING DATE: JUNE 18, 2026<br>HEARING TIME: 10:00 AM |

## I. INTRODUCTION AND RELIEF REQUESTED

Defendant Whidbey Telecom ("Whidbey") respectfully opposes Plaintiff's Motion for Preliminary Injunction and Motion to Seal Court Records.[1] Lummi Nation seeks a preliminary injunction to halt all ground-disturbing activities at Point Roberts, Washington. Dkt 12, p. 34. While Whidbey respects the Lummi Nation's profound cultural and spiritual interests in protecting ancestral burial grounds, Lummi Nation has failed to satisfy the stringent requirements for this extraordinary remedy under controlling Ninth Circuit precedent.

[1] Whidbey submits this opposition and responds to Plaintiff's request for preliminary injunctive relief even though Whidbey has not been properly served with process, and without waiving, and expressly reserving, all defenses and objections, including but not limited to objections relating to insufficient service of process and lack of personal jurisdiction. Whidbey's participation herein shall not be construed as a general appearance or waiver of any such defenses.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

The factual record demonstrates complete compliance with federal and state archaeological protection laws. When inadvertent discoveries occurred, Whidbey immediately ceased work, engaged qualified archaeologists, and implemented comprehensive mitigation measures authorized by federal agencies and the Washington State Department of Archaeology and Historic Preservation ("DAHP"). The State Historic Preservation Office ("SHPO") concurred in the Finding of No Adverse Effect for the Middle Mile Project. Most significantly, the archaeological sites at issue have been open and exposed for extended periods with minimal protection, yet there is no documented evidence of looting or depredation. Site 45WH560 has been exposed since April 2023-approximately three years as of this filing. Site 45WH525 has been disturbed since March 2021-more than five years. Despite this prolonged exposure and accessibility, Plaintiff identifies no looting incidents. This absence of harm during years of optimal conditions for such harm directly contradicts Plaintiff's central claim that disclosure of site location information will foreseeably attract artifact hunters and looters and cause irreparable injury.

Plaintiff cannot satisfy any of the four requirements for preliminary injunctive relief, including likelihood of success on the merits, irreparable harm, balance of equities, or public interest. The federally funded projects at issue were awarded to Whidbey to expand high-speed broadband access to over 300 households in remote and underserved communities. Although implementation has been delayed, the Community Connect Project alone is designed to serve 218 households in Point Roberts, a geographically isolated area with limited connectivity options. Similarly, the Middle Mile project was specifically funded to deploy fiber optic infrastructure serving as critical backbone connectivity, linking Whidbey Island with Decatur Island and Point Roberts and enabling future last-mile service expansion.

Enjoining or further delaying Whidbey's Middle Mile project would frustrate core federal broadband policy objectives, impede deployment of essential communications infrastructure, and directly harm the very communities the federal funding was intended to



**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

benefit. Accordingly, the public interest and balance of equities weigh decisively against granting injunctive relief.

For these reasons, the Court should deny Plaintiff's motion in its entirety.

## II. FACTUAL BACKGROUND

### A. The Three Federally-Funded Broadband Projects

This matter arises from three federally funded broadband infrastructure projects undertaken by Whidbey in Point Roberts, Washington.[2] Each project is supported by federal grant programs established to expand essential broadband access to underserved rural communities: (1) the Community Connect Broadband Grant Project ("Community Connect"), (2) the ReConnect II Grant Project, and (3) the Middle Mile Infrastructure Project ("Middle Mile").[3] These projects provide critical public infrastructure and are designed to serve long-neglected communities lacking reliable high-speed internet access.[4]

### B. Community Connect Project

#### a. Project Overview and Public Benefit

The Community Connect Project is funded through the United States Department of Agriculture ("USDA") Rural Utilities Service grant program and delivers fiber-to-the-home broadband service to Point Roberts, Washington.[5] The project provides symmetrical speeds of 100 Mbps or greater to 218 households in this remote and geographically isolated community, directly advancing federal broadband deployment priorities.[6]

#### b. Environmental Review and Inadvertent Discovery

Whidbey received Environmental Review approval for the Community Connect Project on June 29, 2022. On April 27, 2023, an inadvertent discovery of a shell midden occurred during

---

[2] Declaration of Donna Hilty in Support of Defendant Whidbey Telecom's Response in Opposition to Plaintiff's Motion for Preliminary Injunction, ¶ 2.

[3] *Id.*

[4] *Id.*

[5] *Id.* ¶ 3

[6] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

ground-disturbing activity for this project.[7] Assistant State Archaeologist James McCrae was present on site at the time of the discovery.[8] All excavation and construction activities in the immediate vicinity ceased that same day.[9] The area was secured with temporary fencing and other protective measures to prevent unauthorized access and further disturbance, and the matter was referred to the USDA for further evaluation.[10] On May 1, 2023, John Holman, the General Field Representative at the USDA sent Whidbey and email issuing a stop work order. The federal stop work order is still in effect.[11]

**c. Damage Assessment and Mitigation**

At USDA's direction, ASM Affiliates conducted a damage assessment for site 45WH560. Dkt. 12-4. USDA and DAHP authorized the assessment on November 29, 2023.[12]

Critically, the assessment did not find human remains. Dkt. 12-4, pp.56, 59. Although the assessment referenced seven "suspected ancestral human remains," that statement remains speculative and has not been confirmed by Plaintiff or any expert. Following completion of the assessment, the affected areas were backfilled using hand tools, including a shovel and rake, and a wheelbarrow.[13] Filter fabric was placed at the base of the excavations and again over the backfilled material.[14] Archaeologists then used rakes to level both cultural and sterile fill.[15] The process was documented daily through photographs capturing each stage of backfilling.[16] No additional cultural resources, including cultural artifacts or potential human remains, were encountered or identified in the backfill or within the existing excavations during the mitigation

---

[7] *Id.* ¶ 4.
[8] *Id.*
[9] *Id.*
[10] *Id.*, Ex. A.
[11] *Id.* ¶ 5, Ex. B.
[12] *Id.* ¶ 6
[13] *Id.* Ex. C.
[14] *Id.*
[15] *Id.*
[16] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

work.[17]

**d. Consultation**

Following the damages assessment, representatives from the State, the Lummi Nation, USDA, and Whidbey Telecom participated in consultation calls.[18] The Lummi Nation had an opportunity to review and comment on the assessment and any related recommendations during these consultations.[19] However, these discussions did not extend beyond the scope of the damage assessment.[20]

**e. Over Three-Year Period Without Looting**

Since the completion of mitigation activities, the site has remained either backfilled or undisturbed for over three years, with no reported looting, disturbance, or further damage.[21]

**f. Plaintiff's Delay in Seeking Injunctive Relief**

Further, Plaintiff became aware of the shell midden no later than April 2023, yet Plaintiff delayed seeking injunctive relief.

**C. <u>ReConnect II Grant Project</u>**

**a. Project Overview and Public Benefit**

The ReConnect Project also received funding through the USDA Rural Utilities Service grant program and was undertaken to complete a 100% fiber-to-the-home broadband network in Point Roberts, Washington.[22] The project involved approximately 300 feet of boring, 7,000 feet of open trenching, and the use of approximately 19,000 feet of existing conduit infrastructure.[23]

The project was designed to enable the delivery of high-speed broadband services with

---

[17] *Id*

[18] *Id.* ¶ 7.

[19] *Id.*

[20] *Id.*

[21] *Id.* ¶ 8.

[22] *Id.* ¶ 9.

[23] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

transmission rates of 100 Mbps symmetrical or greater, providing broadband access to all residents within the project area.[24] The network serves an estimated 286 individuals across 144 households in this underserved and geographically isolated community.[25]

Defendant Whatcom County issued the relevant encroachment permits in March and August 2021.[26]

**b. No Discovery of Archaeological Resources**

Notwithstanding substantial ground-disturbing construction activity, no inadvertent discovery of archaeological resources occurred during any phase of the ReConnect Project.[27] No shell midden, human remains, or other cultural resources were encountered.[28] The project therefore proceeded without archaeological incident, interruption, or agency intervention.[29]

**e. Four-Year Period Without Looting**

The ReConnect Project network is now fully constructed and operational.[30] However, on May 1, 2023, John Holman, General Field Representative for the USDA, sent Whidbey an email issuing a stop work order.[31] Due to the federal stop work order, Whidbey was not permitted to connect homes to the newly constructed network.[32] As a result, the ReConnect Project remains incomplete, and the federal stop work order remains in effect.[33]

The ReConnect Project corridor has remained exposed and accessible since March 2021—more than four years—without any documented looting, depredation, or additional disturbance. These undisputed facts directly undermine Plaintiff's assertions of imminent or

---

[24] *Id.*
[25] *Id.*
[26] *Id.* ¶ 10.
[27] *Id.* ¶ 11.
[28] *Id.*
[29] *Id.*
[30] *Id.* ¶ 12.
[31] *Id.* ¶ 13, Ex. B.
[32] *Id.* ¶ 14.
[33] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

irreparable harm.

**d. Plaintiff's Delay in Seeking Injunctive Relief**

On information and belief, Plaintiff became aware of the ReConnect Project no later than April 2023, yet Plaintiff delayed seeking injunctive relief despite the project's continued operation and the absence of any ongoing harm to cultural resources.

**D. <u>Middle Mile Infrastructure Project</u>**

**a. Project Overview and Public Benefit**

The Middle Mile is a third broadband infrastructure project undertaken by Whidbey Telecom in Point Roberts, Washington.[34] The project is funded by the U.S. Department of Commerce's National Telecommunications and Information Administration ("NTIA").[35] On February 18, 2025, NTIA issued its National Environmental Policy Act ("NEPA") Decision Memorandum for the terrestrial portion of the project, thereby authorizing the release of federal funding.[36]

The project is intended to provide direct fiber access, broadband services, and critical communications infrastructure to underserved communities throughout northwest Washington.[37] Upon completion of Phase I and the broader Point Roberts Middle Mile Infrastructure Project, the project is expected to provide affordable and reliable broadband access to approximately 1,200 unserved residents in Point Roberts, 80,000 residents of Whidbey Island, 5,000 residents of the Lummi Nation, 17,000 residents of San Juan County, and thousands of additional households in northwest Whatcom County.[38] The project was also intended to provide critical network redundancy to Naval Air Station Whidbey Island.[39]

**b. Environmental Review and Section 106 Compliance**

---

[34] *Id.* ¶ 15.
[35] *Id.*
[36] *Id.*
[37] *Id.* ¶ 16.
[38] *Id.*
[39] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Middle Mile has been subject to ongoing federal and state environmental review, including review under Section 106 of the National Historic Preservation Act.[40] On November 6, 2025, Whidbey Telecom's subcontractor, WestLand Resources, conducted a pedestrian cultural resources survey in proximity to site 45WH525 as part of the project review process.[41]

During the survey, a suspected cranial fragment was identified on the surface of an existing pedestrian trail within the Area of Potential Effects near the proposed Point Roberts landing site.[42] Appropriate notification procedures were followed, and the relevant agencies and authorities were informed.[43] Due to delays associated with recovery efforts by Defendant Whatcom County Sheriff's Department, the fragment was subsequently lost and could not be recovered.[44] Plaintiff has not provided, and cannot provide, evidence linking the fragment to a "Lummi cranial fragment." Dkt. 12 at p. 37.

On March 11, 2026, Josh Fitzpatrick of NTIA submitted a Phase II Section 106 Finding of No Adverse Effect to Historic Properties to the Washington State Historic Preservation Office ("SHPO").[45] That same day, Rob Whitlam, State Archaeologist and SHPO with the Washington Department of Archaeology and Historic Preservation ("DAHP"), concurred in the Finding of No Adverse Effect.[46] The Phase II Environmental Assessment remains under review at the state and federal levels.[47]

**c. Immediate Response to Inadvertent Discovery**

Upon identification of the suspected cranial fragment on November 6, 2025, WestLand Resources immediately implemented the appropriate inadvertent discovery procedures and

---

[40] *Id.* ¶ 17.
[41] *Id.* ¶ 18.
[42] *Id.*
[43] *Id.*
[44] *Id.* ¶ 19.
[45] *Id.* ¶ 20.
[46] *Id.*
[47] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

notified the relevant governmental and tribal entities.[48] The discovery occurred on the surface of an existing pedestrian trail and was not the result of trenching or other construction excavation activities[49].

**d. No Ground-Disturbing Construction in the Discovery Area**

Importantly, no construction activities or other ground-disturbing work have occurred in the portion of the project area where the cranial fragment was identified.[50] No trenches have been excavated in that location as part of Phase II construction activities.[51]

The only subsurface investigation conducted in the area consisted of limited archaeological shovel test probes performed by qualified archaeologists to evaluate the Area of Potential Effects associated with the proposed submarine landing site.[52] Following evaluation, the small test pits were backfilled using the original excavated material.[53] Accordingly, there is no evidence of ongoing disturbance, active construction impacts, or imminent harm in the area identified by Plaintiff.

## III. ARGUMENT AND AUTHORITY

### A. A Preliminary Injunction Is a Temporary, Status-Quo-Preserving Device; Where Work Has Ceased and No Ongoing Disturbance Exists, the Tribe's Requested Relief Does Not Serve That Function

A preliminary injunction is designed to preserve the status quo and prevent irreparable harm while the case is pending, so that the court can still render meaningful relief after adjudicating the merits. *Doe v. Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020). Injunctive relief must be narrowly tailored to address the specific harm alleged; an overly broad injunction constitutes an abuse of discretion. *Park Vill. Apartment Tenants Ass'n v. Mortimer Howard Tr.*,

[48] *Id.* ¶ 21.
[49] *Id.*
[50] *Id.* ¶ 22.
[51] *Id.*
[52] *Id.* ¶ 23.
[53] *Id.*



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

636 F.3d 1150, 1160 (9th Cir. 2011). Proceedings, where, as here, all work has ceased and there is no ongoing disturbance by Whidbey, there is no threatened conduct to restrain in order to preserve the last uncontested state of affairs. Plaintiff's motion instead seeks to use preliminary relief to obtain affirmative measures that go beyond maintaining existing conditions.

Preliminary injunctions are ordinarily intended to maintain the status quo. Injunctions that mandate action or alter the parties' positions pending final resolution are "mandatory injunctions," and courts are extremely reluctant to grant them. *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009); *Park*, 636 F.3d at 1160. Plaintiff's requests for cameras, law enforcement patrols, fences, and access for damage assessment and reinterment are affirmative, operational directives requiring new actions and coordination-relief that changes conditions rather than merely restraining ongoing conduct. Such mandatory relief is "disfavored" and warranted only in the most extraordinary circumstances, and where it will effectively provide substantially all the relief sought in a manner that cannot be undone if the defendant later prevails, the moving party must satisfy a higher burden. *Id.* ("In general, mandatory injunctions "are not granted unless extreme or very serious damage will result and are not issued in doubtful cases or where the injury complained of is capable of compensation in damages.")

Here, the Tribe's requested relief would impose new obligations and operational burdens (cameras, patrols, fencing, and compelled access for assessment and reinterment) despite the absence of ongoing work or disturbance, thereby changing-rather than preserving-the parties' positions pending final judgment. Because preliminary injunctions are equitable and discretionary, the court should decline to use this extraordinary, interim mechanism to award affirmative, status-altering relief that is not necessary to prevent likely irreparable harm during the pendency of the case.

### B. Plaintiff Cannot Satisfy the Four Factor Test for Preliminary Injunctive Relief



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Even assuming arguendo that preliminary relief could properly issue under these circumstances, Plaintiff cannot meet its burden under the governing four-factor test.

**a. Legal Standard**

A preliminary injunction is "an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24, 129 S. Ct. 365, 376, 172 L.Ed.2d 249, 263 (2008). To obtain such relief, Plaintiffs must make a clear showing that: (1) they are likely to succeed on the merits; (2) they are likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in their favor; and (4) an injunction is in the public interest. *Winter*; 555 U.S. at 20, *All. for the Wild Rockies v. Cottrell*, 613 F.3d 960, 964 (9th Cir. 2010); *Geo Grp., Inc. v. Newsom*, 50 F.4th 745, 753 (9th Cir. 2022). Plaintiff fails to satisfy all of the required factors.

Plaintiff's motion is premised on speculation rather than evidence of any ongoing or imminent injury. The motion attempts to use alleged past disturbance to justify extraordinary prospective relief, even though the undisputed facts demonstrate that construction activities ceased when discoveries were made, mitigation measures were implemented under agency supervision, consultation occurred with the relevant entities, and no ongoing disturbance or active harm exists at the identified locations.

**C. <u>Plaintiff Cannot Demonstrate Likelihood of Success on the Merits</u>**

**a. IGRA Claim: Plaintiff Cannot Establish the Knowing Disturbance Requirement**

The Indian Graves and Records Act ("IGRA"), RCW 27.44.040, establishes distinct liability frameworks depending on a defendant's state of mind. A person who *knowingly* removes, mutilates, defaces, injures, or destroys any cairn or grave of a Native Indian commits a class C felony. RCW 27.44.040(1); *Swinomish Tribal v. Island Cty.*, 87 Wn. App. 552, 557, 942 P.2d 1034, 1037 (1997). By contrast, where disturbance occurs through inadvertence, the statute requires reinterment of human remains under the supervision of the appropriate Indian



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

tribe. RCW 27.44.040.

This statutory scheme draws a clear distinction between intentional and inadvertent conduct: felony liability attaches only where a defendant has actual knowledge that a protected grave or burial site is being disturbed. RCW 27.44.040(1). Plaintiff's allegations do not plausibly establish that Whidbey had such specific knowledge. Rather, the record reflects that Whidbey proceeded under permits lawfully issued by Defendant Whatcom County. Dkt. 1, ¶ 35, Dkt. 12 at 19. Nothing in the permitting process involved identification of specific graves.

At most, the record shows generalized awareness that archaeological or cultural resources may exist in the broader project area. Such generalized awareness is insufficient to establish knowledge that a particular grave or burial site was present at the precise location of the alleged disturbance. IGRA requires actual, site-specific knowledge—not constructive awareness or the mere possibility of encountering archaeological materials. RCW 27.44.040.

Moreover, the subsequent actions taken after discovery of potential remains further confirm the absence of the required mental state. Upon identification of possible human remains, Whidbey engaged in consultation with the Tribe, retained professional archaeologists, and coordinated with relevant agencies to assess impacts and complete reinterment consistent with IGRA's inadvertent disturbance provisions. This conduct is inconsistent with the knowing violation required for felony liability under RCW 27.44.040(1).

With respect to the Community Connect Project, Plaintiff has not presented any expert or other competent evidence establishing that the shell midden contained human remains; instead, Plaintiff relies on speculation and inference rather than evidence. Likewise, with respect to the Middle Mile Project, Plaintiff has not provided any declaration or other admissible evidence linking any remains to a "Lummi cranial fragment,"[54] as asserted in the motion, or establishing that the fragment is human or associated with the Tribe. These evidentiary gaps are fatal to Plaintiff's claim.

[54] Dkt. 12, p. 20.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Accordingly, Plaintiff is unlikely to succeed on the merits of a knowing-disturbance theory under IGRA.

**b. Gross Negligence Claim: Whidbey's Conduct Exceeds the "Slight Care" Threshold**

Washington law defines gross negligence as conduct that falls substantially or appreciably below the degree of care that a reasonably prudent person would exercise in the same or similar circumstances. *Nist v. Tudor*, 67 Wn.2d 322, 330-31,407 P.2d 798 (1965). To establish gross negligence, a plaintiff must present substantial evidence that the defendant failed to exercise slight care, considering both what the defendant failed to do and what the defendant actually did. *Harper v. Dep't of Corr.*, 192 Wn.2d 328, 346, 429 P.3d 1071, 1078 (2018)

The record demonstrates that Whidbey exercised more than slight care. Whidbey participated in extended consultation meetings with tribal representatives and agencies as required under Washington and Federal law. Whidbey engaged professional archaeologists to assess and manage archaeological sites during the damage assessment at 45WH560. Whidbey coordinated with multiple governmental entities throughout the projects, including RUS, SHPO, and Lummi Nation's THPO. Whidbey and its subcontractor crews possessed and were trained on the Inadvertent Discovery Plan, which provided guidance on recognizing and reporting archaeological materials.

These affirmative steps-not merely passive conduct-reflect a level of care that exceeds the minimal threshold required to defeat a gross negligence claim. The involvement of qualified professionals, the engagement in consultation processes, and the coordination with regulatory agencies all weigh against a finding that Whidbey exercised substantially less than slight care. At the preliminary injunction stage, Plaintiff has not presented sufficient evidence to create a genuine issue of material fact regarding gross negligence.

**c. Plaintiff Cannot Establish Irreparable Harm**

Under the controlling standard set forth in *Winter* a plaintiff seeking preliminary



**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

injunctive relief must demonstrate that irreparable harm is likely in the absence of an injunction. 555 U.S. at 20. The Ninth Circuit has made clear that this is a demanding standard requiring more than a mere possibility of injury. *Id.* at 22; *Caribbean Marine Servs. Co. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988); *See also Alliance*, 632 F.3d at 1131 ("Under *Winter*, plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction.") (emphasis omitted).

Speculative or hypothetical harm, no matter how theoretically possible, is insufficient to warrant extraordinary relief. *Caribbean*, 844 F.2d at 674; *Mayfield v. United States*, 599 F.3d 964, 970 (9th Cir. 2010). Rather, the alleged injury must be concrete, imminent, and non-speculative. *Caribbean*, 844 F.2d at 674 ("A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.")

Here, Plaintiff cannot meet that burden. Plaintiff asserted harm rests on conjecture rather than evidence of ongoing or impending injury, particularly where ground-disturbing activity has ceased in affected areas, where appropriate, mitigation has been completed under agency supervision, and regulatory review processes are ongoing or complete. An injunction may issue only to prevent actual and imminent harm, not to address past events or uncertain future contingencies. *Id.*; *Trump*, 957 F.3d 1050, 1068 (9th Cir. 2020).

**i. The Three-Year Exposure Without Documented Looting Undermines Any Claim of Likely Harm**

Plaintiff's case presents a striking factual paradox that defeats the irreparable-harm requirement. At site 45WH560, the affected areas have been open or backfilled since April 2023 – approximately three years. At site 45WH525, the affected sites have been open or backfilled since March 2021—more than five years. During these extended intervals, the affected sites have remained accessible and subject to the very conditions Plaintiff now claims create a risk of looting or depredation.



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Despite this prolonged exposure, Plaintiff identifies no instance of looting, depredation, or additional disturbance at either site. The absence of any documented harm over multi-year periods of accessibility strongly undermines any contention that such harm is likely to occur in the future. Where the alleged risk has not materialized under conditions that would predictably increase exposure, Plaintiff cannot rely on speculation to establish imminent injury.

The Community Connect Project site further confirms this point. After shell midden was inadvertently discovered on April 27, 2023, work immediately ceased. Currently, a federal stop work order is in place. A damage assessment was subsequently authorized on November 29, 2023, and the site was properly backfilled using hand tools and filter fabric under agency direction, with daily photographic documentation. No additional cultural resources were encountered during mitigation, and in the nearly three years since completion of those measures, there have been no reports of looting, disturbance, or further harm.

The Supreme Court's reasoning in Winter supports this inference. In that case, the Court noted that Navy sonar training had been going on for 40 years with no documented episode of harm to a marine mammal, and this extended history without harm undermined claims that future harm was likely. *Winter*, 555 U.S. at 21-22. Similarly, here, the three-year exposure at 45WH560 and five-year exposure at 45WH525 without any documented looting undermines Plaintiff's claim that looting is a likely consequence of site disturbance or public awareness of site locations.

This temporal reality is fatal to Plaintiff's irreparable harm claim. Where no injury has occurred over years of alleged vulnerability, Plaintiff cannot convert speculation into the "likely" and imminent harm required for extraordinary injunctive relief.

**ii. Plaintiff's Showing Is Backward-Looking, Not Forward-Looking**

Plaintiff's motion improperly relies on past events rather than evidence of imminent future harm, but preliminary injunctive relief is forward-looking in nature. The fact that



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Whidbey's activities previously resulted in inadvertent discovery at certain locations does not, without more, establish that additional ground disturbance is imminent or that irreparable harm is likely to occur absent an injunction. Plaintiff must show a concrete, non-speculative threat of future injury in the near term. *Caribbean*, 844 F.2d at 674.

Here, Plaintiff's argument is grounded in historical events: the April 2023 discovery at 45WH560, the earlier activities at 45WH525 beginning in March 2021, and the November 2025 survey activity associated with the Middle Mile Project (where the unverified cranial fragment was located). These events are undisputed historical facts, but they do not establish any present or impending construction activity that would give rise to irreparable harm.

Plaintiff offers no evidence of a defined or imminent schedule of additional ground-disturbing work, nor any showing that excavation or construction is currently underway in the areas at issue. Nor does Plaintiff demonstrate that the circumstances surrounding past inadvertent discoveries are ongoing or likely to recur in a manner that would create imminent risk. In the absence of evidence of impending disturbance, Plaintiff's theory of harm rests on speculation about future contingencies, which is insufficient to satisfy the irreparable harm requirement for preliminary injunctive relief.

**iii. Project-Specific Analysis Demonstrates Absence of Imminent Harm**

**ReConnect Project (45WH525):** The ReConnect Project presents the clearest case for denial on irreparable harm grounds. No inadvertent discovery occurred during ReConnect activities, and no shell midden was encountered. Without any discovery of cultural resources, Plaintiff cannot establish that ReConnect activities pose any threat to historic properties or cultural resources.

**Community Connect Project (45WH560):** The Community Connect site was immediately protected once the shell midden was discovered. Work ceased in the vicinity, a damage assessment was conducted, and the site was backfilled. Plaintiff's own motion notes



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

that "Community Connect is already stalled due to disturbance at 45WH560." Dkt. 12, p. 32. The three-year absence of any looting or further damage demonstrates at the site is not facing imminent harm from Whidbey's activities or from the general public. The fact that the site was backfilled with hand tools and filter fabric, with daily photo documentation, indicates that Whidbey took reasonable protective measures. The absence of any subsequent incident suggests these measures have been effective.

**Middle Mile Project:** On November 6, 2025, a suspected human cranial bone was discovered on the surface of a pedestrian trail. Proper identification and notification occurred. No construction activities or ground-disturbing work has occurred on that portion of the project. No trenches have been dug at the discovery location. Only shovel test points by archaeologists were conducted in the area, and these were subsequently backfilled.

The absence of ground-disturbing activities at the discovery location is dispositive on the irreparable harm question. If Whidbey is not conducting construction or other ground-disturbing work at the site where the suspected cranial bone was discovered, then Whidbey's activities do not pose an imminent threat to that resource. The discovery of a single suspected cranial bone on the surface of a pedestrian trail, without evidence of ongoing disturbance or looting, does not establish that imminent harm is likely absent an injunction.

#### c. The Comparative Hardship Analysis and Balance of Equities Favor Whidbey

When balancing the equities, the Court must weigh concrete harms against speculative ones. *Winter*, 555 U.S. at 20. Here, the balance strongly favors Whidbey and the communities served by the challenged projects.

The requested injunction would cause immediate and substantial harm to federally funded broadband infrastructure projects subject to strict grant schedules and funding conditions. Delays or work stoppages would disrupt critical broadband deployment and risk loss of federal funding. The Community Connect Project serves 218 households in Point



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Roberts with high-speed broadband service, the Middle Mile Project provides essential regional backbone connectivity, and the ReConnect Project is already constructed and operational.

Plaintiff's requested relief is also overbroad. Only two projects involved inadvertent discoveries, both of which were promptly addressed through applicable mitigation and regulatory procedures. The ReConnect Project involved no discovery at all. Community Connect halted work upon discovery and is currently subject to a federal stop work order. The Middle Mile Project completed environmental review, including SHPO concurrence on a Finding of No Adverse Effect.

By contrast, Plaintiff's asserted harms—further disturbance and looting—are speculative, unsupported by evidence, and contradicted by the multi-year exposure of the site without incident. While Whidbey respects Plaintiff's concerns regarding spiritual and cultural harm, the initial discoveries have already occurred and cannot be prevented through preliminary relief. The relevant inquiry is whether additional imminent harm exists, and the record does not support such a finding. Community Connect remains stalled, ReConnect is operational, and Plaintiff has identified no imminent ground-disturbing activity associated with the Middle Mile Project.

Further, adequate remedies exist under Washington law, including—but only if human remains are actually present—reinterment under tribal supervision as contemplated by RCW 27.44.040, damages for cultural and emotional harm authorized by RCW 27.44.050, and protective measures for any properly identified exposed remains. These remedies can be ordered as part of final judgment without imposing the substantial harms that would result from a preliminary injunction. Under these circumstances, the extraordinary remedy of an injunction is not justified, and the equities weigh decisively against disrupting federally funded infrastructure projects serving underserved communities.

**d. The Public Interest Strongly Favors Denial of the Injunction**

The public interest inquiry primarily addresses impact on non-parties rather than parties.



**WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

*Sammartano v. First Judicial Dist. Court*, 303 F.3d 959, 974 (9th Cir. 2002); *Bernhardt v. L.A. Cty.*, 339 F.3d 920, 931-32 (9th Cir. 2003). Courts must pay particular regard for the public consequences in employing the extraordinary remedy of injunction. *Bernhardt*, 339 F.3d at 932.The requested injunction would have profound consequences for non-parties: residents, communities, and the broader public dependent on broadband access.

The Community Connect Project will provide fiber-to-the-home service delivering symmetrical broadband speeds of 100 Mbps or greater to 218 households in Point Roberts. The ReConnect Project expanded broadband access to underserved rural residents through a 100% fiber-to-the-home network. The Middle Mile Project will establish critical backbone infrastructure connecting Point Roberts, Whidbey Island, Decatur Island, and surrounding communities, enabling broader regional broadband deployment and network redundancy.

These projects address significant infrastructure gaps in geographically isolated and underserved communities. Reliable broadband access is critical for education, healthcare, emergency services, economic development, remote work, and civic participation. Delaying or enjoining these projects would substantially harm the public by postponing access to essential communications infrastructure and disrupting federally funded initiatives intended to expand rural broadband access.

By contrast, Plaintiff identifies no ongoing construction disturbance or imminent threat of irreparable harm. Where inadvertent discoveries occurred, construction activities ceased, the appropriate agencies and tribal entities were notified, and mitigation and review procedures were implemented. Under these circumstances, the public interest weighs decisively against the extraordinary remedy of preliminary injunctive relief.

**D. <u>Mandatory Bond Requirement Under Federal Rule of Civil Procedure 65(c)</u>**

Pursuant to FRCP 65(c), any order granting preliminary injunctive relief must be conditioned upon Plaintiff's posting of security in an amount the Court deems proper to secure



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

Whidbey against damages incurred in the event the injunction is later determined to have been wrongfully issued. Plaintiff has not demonstrated entitlement to preliminary injunctive relief, and any such relief should be conditioned, at a minimum, on the posting of a substantial bond under Rule 65(c), given the risk of significant economic and operational harm to Whidbey. Accordingly, should the Court consider granting Plaintiff's requested relief, a significant bond is warranted.

## V. CONCLUSION

For the foregoing reasons, Whidbey respectfully requests that this Court deny Plaintiff's Motion for Preliminary Injunction in its entirety.

DATED this 28th day of May, 2026.

WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP

By: *<u>/s/ Corinna P. Pilat</u>*
Steven G. Wraith, WSBA #17364
Corinna P. Pilat, WSBA #54431
520 Pike Street, Suite 2350
Seattle, WA 98101
(206) 709-5909 (Steve direct)
(206) 709-5900 (main)
(206) 709-5901 (fax)
Steven.wraith@wilsonelser.com
Corinna.pilat@wilsonelser.com

*Attorneys for Defendant
Whidbey Telephone Company
d/b/a Whidbey Telecom*

# CERTIFICATE OF SERVICE

The undersigned certifies that on May 28, 2026, a true and correct copy of the foregoing was served on the attorneys of record listed below, via the method indicated:

| | |
|---|---|
| ***Counsel for Plaintiff***<br>Gabriel David Cantu<br>Lummi Indian Nation<br>2665 Kwina Rd, Suite 2600<br>Bellingham, WA 98226<br>Phone: (360) 384-7110<br>Email: gabrielc@lummi-nsn.gov<br><br>Gregory Alan Werkheiser<br>Marion Forsyth Werkheiser<br>Lydia Dexter<br>Katherine Lee Sorrell<br>Jessie Barrington<br>Cultural Heritage Partners, PLLC<br>1811 E. Grace Street, Suite A<br>Richmond, VA 23223<br>Phone: (202) 567-7594<br>Email: greg@culturalheritagepartners.com<br>marion@culturalheritagepartners.com<br>lydia@culturalheritagepartners.com<br>katherine@culturalheritagepartners.com<br>jessie@culturalheritagepartners.com<br>hannah@cultrualheritagepartners.com | ☐ U.S. Mail<br>☐ Hand Delivery<br>☐ Facsimile<br>☐ Overnight<br>☑ E-mail<br>☑ E-Service via Court Application<br>☐ Messenger |
| ***Counsel for Whatcom County***<br>Kenneth W. Harper<br>Quinn N. Plant<br>MENKE JACKSON BEYER, LLP<br>807 N. 39th Avenue<br>Yakima, WA 98902<br>Phone: (509) 575-0313<br>E-mail: kharper@mjbe.com<br>qplant@mjbe.com | ☐ U.S. Mail<br>☐ Hand Delivery<br>☐ Facsimile<br>☐ Overnight<br>☑ E-mail<br>☑ E-Service via Court Application<br>☐ Messenger |



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)

| | |
|---|---|
| ***Counsel for Whidbey Telephone Company***<br>Kimberly Larsen Rider, WSBA #42736<br>Rory Leid, WSBA #25075<br>Ashley J. Stephens, WSBA #62939<br>Alexander Walton, WSBA #63150<br>Wathen \| Leid \| Hall \| Rider, PC<br>222 Etruria St<br>Seattle, WA 98109-1659<br>Phone: (206) 622-0494<br>E-mail: krider@wlhr.legal<br>rleid@wlhr.legal<br>astephens@wlhr.legal<br>awalton@wlhr.legal<br>ttomassetti@wlhr.legal<br>sblair@wlhr.legal | ☐ U.S. Mail<br>☐ Hand Delivery<br>☐ Facsimile<br>☐ Overnight<br>☑ E-mail<br>☑ E-Service via Court Application<br>☐ Messenger |

I certify under the penalty of perjury under the laws of the State of Washington that the foregoing is true and correct.

DATED this 28th day of May, 2026, at Seattle, Washington.

/s/ *Freida Mason*
Freida Mason, Legal Assistant
freida.mason@wilsonelser.com



**WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP**
520 PIKE STREET, SUITE 2350
SEATTLE, WA 98101
(206) 709-5900 (MAIN)
(206) 709-5901 (FAX)