UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUMMI NATION, | Case No. 2:26-cv-01435-KKE |
| Plaintiff, | |
| vs. | **PLAINTIFF LUMMI NATION'S REPLY IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION** |
| WHIDBEY TELEPHONE COMPANY d/b/a WHIDBEY TELECOM, et al., | |
| Defendants. | **HEARING DATE: JUNE 18, 2026** **HEARING TIME: 10:00 A.M.** |

Pl.'s Reply Supp. of Prelim. Inj. – i
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

# I. INTRODUCTION

Rather than demonstrate competence to ensure reinterment of disturbed Lummi ancestral remains without the intervention of this Court, Defendants' Responses in Opposition to Plaintiff Lummi Nation's Motion for a Preliminary Injunction create added urgency for an emergency order. Whidbey Telephone Company d/b/a Whidbey Telecom ("Whidbey Telecom")  and Whatcom County's Responses in Opposition to Plaintiff's Motion for Preliminary Injunction confirm that: (1) project activities disturbed ancestral remains and cultural materials; (2) Defendants have not completed a damage assessment for any of the three projects; and (3) Defendants have not allowed Lummi Nation to reinter its ancestors, who have remained exposed to the elements. These are precisely the circumstances Lummi Nation (the "Nation") asks this Court to remedy through a preliminary injunction.

Whidbey Telecom's Opposition demonstrates that it does not understand the fundamental nature of the harm it perpetuates: years of failing to allow the Nation to reinter Lummi ancestors *compounds* the damage to the remains themselves—and to attendant artifacts, including burial goods—and worsens the spiritual harm to Lummi citizens. Whidbey Telecom denies encountering human remains at 45WH560, while simultaneously providing an addendum to the preliminary damage assessment that states, unequivocally, Community Connect disturbed human remains. Strangely, Whidbey Telecom repeatedly minimizes and mischaracterizes the Nation's concerns about the harms from ongoing disinterment, which the Nation painstakingly detailed in its Complaint, Motion for Preliminary Injunction, and nearly three years' worth of discussions with Whidbey Telecom about the projects operating at Point Roberts. Even as it trivializes the Nation's repeated, legitimate requests, Whidbey Telecom does not deny

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 1
CASE NO. 2:26-CV-01435-KKE

disturbing both 45WH560 and 45WH525. The Nation now endeavors to prevent further irreparable harm and permanent loss of Lummi ancestors.

Defendants' Oppositions do not provide any reason to deny the relief the Nation seeks. Federal Defendants take no position on the requested injunction and contest no facts. Whatcom County does not oppose an injunction against Whidbey Telecom. Taken together, Defendants' Oppositions only underscore the need for that immediate relief.

## II. LUMMI NATION IS LIKELY TO SUCCEED ON THE MERITS

The Nation is likely to succeed on the merits, because Whidbey Telecom's knowing and ongoing disturbance of Lummi burial grounds violates Washington's Indian Graves and Records Act ("IGRA"). *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008). Whidbey Telecom's pattern of behavior also constitutes gross negligence under Washington common law, and Whatcom County breached its statutory duty to consult with the Nation before issuing permits.

**A.  Archaeologists identified disturbed human remains at Community Connect.**

Whidbey Telecom falsely claims that archaeologists it hired to conduct the preliminary damage assessment from Community Connect "did not find human remains" in the area excavated by Whidbey Telecom's crews. Dkt. #33 at 4. Whidbey Telecom's own record, however, is unambiguous. Whidbey Telecom's Exhibit C states: "Human remains were recovered from shell midden contexts during the preliminary damage assessment," Dkt. #36-C at 1, confirming archaeologists found disturbed human remains during the "preliminary" assessment, indicating archaeologists may have found *more* damage to *more* human remains if Whidbey Telecom had allowed a comprehensive damage assessment at 45WH560 to proceed.

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 2
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Whidbey Telecom has refused this complete assessment, and the extent of likely disturbance from the entire 2.8-mile construction corridor remains unknown.

State Archaeologist Rob Whitlam confirmed that on January 25, 2024, three days after beginning field work for the preliminary damage assessment from Community Connect, archaeologists informed the State Historic Preservation Office ("SHPO") that they recovered human remains in one of the assessed pothole trenches. Dkt. #12-3 ¶ 9; Dkt. #12-2 ¶ 12. After initial field work, archaeologists recovered seventeen fragments of human remains from a minimum of three individuals, along with 1,194 artifacts including items commonly found in burials. Dkts. ##12-3 ¶¶ 9, 16; 12-2 ¶ 13; 12-7. Further, the preliminary damage assessment report states, "human remains were identified during the assessment...Additionally, portions of the site include burials as evidenced by ancestral remains and funerary objects." Dkt. #12-7 at v; *see also id.* at 15 (SHPO documenting "[c]onfirmed ancestral human remains"), 65 ("During the damage assessment, confirmed ancestral human remains were identified in a disturbed context. The following sections address the damage done to the site during the excavation of the four trenches in the APE and provide recommendations for future management of this portion of 45WH560."). This report includes approximately half dozen other references to identified ancestral human remains disturbed by Community Connect project activities. *See id.*

Whidbey Telecom consistently misrepresents this report, citing only two pages out of 140 when claiming archaeologists found no human remains disturbed by the project; when read in context, those two pages only address what archaeologists found in the assessed spoil piles, not what they found in the pothole trenches or in other assessed construction areas. Dkts. ##33 at 4; 12-7. The extent of the damage that has occurred from the projects is unknown, but the preliminary assessments reveal the disturbance of human remains even within the minimally

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 3
CASE NO. 2:26-CV-01435-KKE

assessed areas. Without a preliminary injunction, including an order to conduct a damage assessment, the Nation cannot move forward and reinter its ancestral remains.

The extent of the damage from ReConnect at 45WH525 has not been assessed at all. While Whidbey Telecom claims that no inadvertent discovery occurred from ReConnect, Defendants confirm that the project involved "substantial ground-disturbing construction activity," "300 feet of boring," and "7,000 feet of open trenching." Dkt. #33 at 5–6. Maps provided by Rural Utilities Service ("RUS") show at least 2,100 feet of trenching for ReConnect runs directly through 45WH525, a dense archaeological site with known burial grounds. Whidbey Telecom also states that "45WH560 has been exposed since April 2023 ... [and that] ... 45WH525 has been disturbed since March 2021," confirming its projects left the sites vulnerable to damage. Dkt. #33 at 2.[1] The Nation now brings its unmet requests to conduct a damage assessment and reinter Lummi ancestral remains before the Court, because discussions with Defendants have failed to achieve resolution.

**B.  Whidbey Telecom continues to violate IGRA.**

Whidbey Telecom's own records establish the knowing disturbance element of IGRA. Whidbey Telecom argues RCW 27.44.040(1) requires "actual, site-specific knowledge" of a grave's precise location and that generalized archaeological awareness is insufficient. Dkt. #33 at 12. That standard finds no support in the statute or in *Swinomish Indian Tribal Community v. Island County*, 87 Wn. App. 552, 557 (1997), both of which require knowing conduct, not advanced knowledge of a burial's exact coordinates.

---

[1] Whidbey Telecom argues the Nation should have moved for a preliminary injunction earlier. Litigation is a last resort for the Nation, and Defendants' repeated withholding of information deprived the Nation of crucial facts detailing the extent of the ongoing damage for several years.

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Even under Whidbey Telecom's definition, the record demonstrates Whidbey Telecom knew or should have known of the specific location of archaeological sites 45WH560 and 45WH525, as well as the burial grounds located within these sites. Whidbey Telecom knew the risks of operating ReConnect at 45WH525, after years of warning from the Nation, but it still chose to initiate project activities in close proximity to 45WH525 for Middle Mile. The near immediate discovery—and then loss—of the cranial fragment due to Middle Mile's project activities confirmed the sensitivity of 45WH525 and adjacent areas.

With respect to Community Connect's activities, State Archaeologist Whitlam verified that human remains from at least eighteen individuals were previously documented at 45WH560 in four separate excavations conducted between 2009 and 2019, before Whidbey Telecom's crews ever began construction. Dkt. #12-3 ¶ 3. Basic due diligence would have revealed this history, and after forty years of operation at Point Roberts, Whidbey Telecom cannot plausibly deny its awareness of the density of archaeological sites on the peninsula. Dkt. #12-3 ¶ 3. For its work on Community Connect, Whidbey Telecom also operated under an Inadvertent Discovery Plan with photographs specifically designed to ensure crews would recognize shell midden deposits—universally recognized indicators of burial sites. Dkt. #12-3 ¶ 5. These photographs mirror what Community Connect's preliminary damage assessment documents Whidbey Telecom's crews dug out of the ground at 45WH560. Most importantly, Whidbey Telecom continues to violate IGRA, because it has not allowed the Nation to reinter disturbed Lummi ancestors from any of the projects. This requirement applies to any disturbance, whether knowing or inadvertent. RCW 27.44.040(1).

Additionally, RCW 27.44.055 imposes three mandatory duties upon any person who encounters human remains, all of which Whidbey Telecom violated. *First*, RCW

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 5
CASE NO. 2:26-CV-01435-KKE

27.44.055(2)(a), as well as federal and County permits for all three projects, required Whidbey Telecom to "immediately cease" all ground-disturbing activity upon encountering human remains. Yet, Whidbey Telecom continued trenching after encountering shell midden deposits and human remains across multiple trenches at 45WH560 and did not stop work until the SHPO intervened after being alerted by a member of the public. Dkt. #1 ¶¶ 75–79. Upon information and belief, Whidbey Telecom continued construction activities for Community Connect, as documented in Whidbey Telecom's as-built records, after both the SHPO and RUS imposed stop-work orders. Dkt. #12-2 ¶ 6; Dkt. #12-4, 12-5.

*Second*, RCW 27.44.055(2)(c) required Whidbey Telecom to report the disturbance to the coroner and local law enforcement in the most expeditious manner possible. Whidbey Telecom made no such report for the disturbances from Community Connect or ReConnect, bypassing the reporting chain required by statute. Dkt. #1 ¶¶ 87–91.

*Third*, RCW 27.44.055(2)(b) required Whidbey Telecom to "[m]ake a reasonable effort to protect the area from further disturbance." At 45WH560, Whidbey Telecom left ancestral remains exposed—covered with tarp and plywood—for nearly two years. Dkt. ##12-2 ¶ 8; 12-3 ¶ 17. At 45WH525, upon information and belief, ancestral remains disturbed by ReConnect have been exposed since March 2021 and remain unsecured today, with no damage assessment or reinterment of Lummi ancestors ever conducted. Dkt. #12-2 ¶ 27. Whidbey Telecom then proceeded with Middle Mile activities in close proximity to 45WH525, which activities resulted in the permanent loss of a disturbed cranial fragment. Dkt. #12-3 ¶ 25. Whidbey Telecom's claim that the lost fragment cannot be confirmed as cranial, or identifiable as Lummi, conflicts with the State Archaeologist's expert testimony, including his imposition of additional stipulations on the project to prevent further damage. Dkt #12-3 ¶¶ 25–26. Indeed, the purpose

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 6
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

of the notice process and the federal, state, and local protocols related to inadvertent discovery of human remains is twofold: 1) to allow Tribes to provide input about project routes to prevent disturbance from happening; and 2) to alert appropriate Tribes when disturbance does occur in their ancestral territories, allowing them to assess disturbed remains, determine Tribal affiliation, and allow the Tribe to reinter those remains. None of this process can occur if disturbed remains become permanently lost, as occurred at Middle Mile, or when developers refuse to follow the legal requirements. This disturbance and permanent loss were significant enough for the State Archaeologist to provide additional stipulations to avoid further damage from Middle Mile. Dkt #12-3 ¶ 26.

Whidbey Telecom met none of IGRA's conditions for accidental, promptly reported, and reasonably preserved disturbances. The disturbances from all three projects were knowing, and Whidbey Telecom repeatedly failed to fulfill its duty to report the disturbances or properly secure the sites to prevent further damage. RCW 27.44.055.

C. **Whidbey Telecom acted with gross negligence, repeatedly violating permit requirements and federal, state, and local orders.**

Whidbey Telecom acted with gross negligence in causing damage to Lummi burial grounds from three different projects. It also failed to remedy the damage, halt construction immediately, secure the sites, alert appropriate officials in a timely manner, or allow the Nation to reinter disturbed ancestral remains. The *Harper* standard asks whether the defendant's conduct "substantially or appreciably" fell below the standard of care. *Harper v. State*, 192 Wash.2d 328, 342–43 (2018). Whidbey Telecom argues it exercised more than "slight care," because it participated in meetings about Community Connect and retained archaeologists to do a preliminary damage assessment of four small potholes and five spoil piles, a small fraction of the approximately 2.8 miles of construction for Community Connect. Dkt. #3 at 13. These

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 7
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

meetings did not, constitute meaningful "consultation;" they consisted of delays, refusal on the part of Defendants to answer questions about the projects, and stonewalling of repeated requests for a comprehensive damage assessment.

Whidbey Telecom's records establish continued trenching at 45WH560 after encountering shell midden deposits and human remains, Dkt. #1 ¶¶ 75–79; violation of the SHPO stop-work order on May 2, 2023, documented in Whidbey Telecom's as-built records, Dkt. #12-2 ¶ 6; Dkts. ##12-4, 12-5; commencement of Middle Mile near 45WH525 with three days' notice despite repeated warnings about that exact site, Dkt. #12-2 ¶ 23; and refusal to authorize a comprehensive damage assessment for any of the three projects, Dkt. #12-2 ¶¶ 14–15; Dkt. #12-3 ¶¶ 15, 19. This pattern, across three sequential projects, is not consistent with even slight care.

**D.  At least one exception to the public duty doctrine applies.**

Whatcom County cannot avoid its duties to Lummi Nation because one or more of the four exceptions to the public duty doctrine apply. "If any one of the exceptions applies, the government is held as a matter of law to owe a duty to the plaintiff." *Munich v. Skagit Emergency Cmmc'ns Ctr.*, 175 Wn.2d 871, 879 (2012).

Governmental entities are liable for damages arising from their tortious conduct to the same extent as private persons or corporations. RCW 4.96.010. But if governmental entities are engaging in mandated governmental duties owed to the general public, the public duty doctrine shields them from negligence liability. *Ehrhart v. King Cnty.*, 195 Wn.2d 388, 398–99 (2020). However, the public duty doctrine has four exceptions: "(1) legislative intent, (2) failure to enforce, (3) the rescue doctrine, and (4) a special relationship." *Norg v. City of Seattle*, 200 Wn.2d 749, 758 (2023) (citing *Munich*, 175 Wn.2d at 879).

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

The failure to enforce exception applies here because the County agents responsible for enforcing the statutory requirements of Whatcom County Code ("WCC") § 20.72.652: (1) possess actual knowledge of a statutory violation; (2) failed to take corrective action despite having a statutory duty to do so; and (3) Lummi Nation is within the class of persons § 20.72.652(b) is intended to protect. *Bailey v. Forks*, 108 Wn.2d 262, 268 (1987).

Contrary to the limited view advanced by the County's Opposition, Dkt. #31 at 6–10, WCC creates mandatory processes and duties to protect archaeological resources. To issue encroachment permits for projects within 500 feet of a known archaeological site, the County has fifteen days to "notify and request a recommendation" from the "Lummi Nation Historic Preservation Office." WCC §§ 20.72.652(2)(b)–(c); *see also Swinomish Indian Tribal Cmty.*, 87 Wn. App. at 554–56 (upholding injunction requiring county to institutionalize consultation procedures before issuing permits that affect Tribal burial grounds). Yet, the County never consulted with Lummi Nation and issued encroachment permits on February 27, 2023, July 26, 2024, and September 9, 2024, for Community Connect, and March 9, 17, and 19, 2021, and August 24, 2021, for ReConnect. At no point did the County try to correct this failure, despite its mandatory duty to do so. WCC §§ 20.72.652(b)–(c). Even after Whidbey Telecom discovered ancestral remains and violated stop work orders, the County continued to issue encroachment permits to the company. Dkt. #1 ¶ 35. *Compare Honcoop v. State*, 111 Wn.2d 182, 190–91 (1988). Lummi Nation is clearly within the class WCC § 20.72.652 is intended to protect; the Nation itself is expressly named within a discrete list. *Id.* Thus, the County's statutory violations are not protected by the public duty doctrine, and its negligence has irreparably harmed Lummi Nation.

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 9
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

The legislative intent exception applies as well. "If a statute evidences an intent to protect a particular class of individuals, a member of that class may bring a tort action against a governmental entity for its violation of the statute." *Honcoop*, 111 Wn.2d at 188. While courts typically "look to the legislature's statement of purpose to discover its intent," *Washburn v. City of Fed. Way*, 178 Wn.2d 732, 754–55 (2013), what is most important is the clear expression of the intent within the provision—not the location of that intent. *See Ravenscroft v. Water Power Co.*, 136 Wn.2d 911, 930–31 (1998). The County incorrectly directs this Court solely to WCC § 20.72.010, which differentiates the character of Point Roberts compared to other areas in Whatcom County as evidence there is no legislative intent to treat the Nation as a particular class of individuals. Dkt. #31 at 9. The County brushes by the obvious language of WCC § 20.72.652, which mandates consultation with "the Lummi Nation Historic Preservation Office," and which clearly recognizes the Nation's interest in these archaeological matters. Lawmakers clearly chose to include a specific list of stakeholders; this is the exact type of "particular" and "circumscribed" class the legislative intent exception recognizes. *Yonker v. State Dep't of Soc. & Health Servs.*, 85 Wn.App. 71, 79–80 (1997) (defining the terms "particular" and "circumscribe").

### III. LUMMI NATION CONTINUES TO SUFFER IRREPARABLE HARM

**A. Disturbance of Native ancestral remains constitutes irreparable harm as a matter of law and equity.**

Whidbey Telecom's conduct continues to directly harm the Nation. *Winter*, 555 U.S. at 20. At 45WH560 and 45WH525, Whidbey Telecom's actions have resulted in the desecration, exposure, and displacement of ancestral remains; loss of archaeological context; and interference with cultural and spiritual practices. Dkt. #12-2 ¶¶ 8, 10, 12–14, 24. The Nation's interests in protecting its ancestral burial grounds and exercising its sacred obligations to its

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

ancestors are concrete, particularized, and ongoing injuries. Dkt. #12-2 ¶¶ 26–28. Courts have recognized spiritual and ceremonial injuries from the disturbance of Tribal burial grounds. *See, e.g.*, *Quechan Tribe of Fort Yuma Indian Rsrv. v. U.S. Dep't of Interior*, 755 F.Supp.2d 1104, 1120–22 (D. Cal. 2010); *Comanche Nation v. United States*, No. CIV-08-849-D, 2008 WL 4426621, at *17, *20 (D. Okla. Sept. 23, 2008).

Whidbey Telecom does not dispute that disturbance of ancestral remains and cultural resources constitutes irreparable injury. Monetary damages cannot replace lost ancestral remains, restore destroyed archaeological context, or reverse the years of continued exposure. As the preliminary damage assessment at Community Connect articulated: "no clear value can be put on the presence of ancestral human remains. These are sacred to the descendants of these ancestors. The only way to estimate the value of this loss is through consultation with the affected tribes." Dkt. #12-7 at 66. The fact that Whidbey Telecom left ancestral remains exposed and has been unwilling to rectify the ongoing harm until the Nation sued underscores its inability to prevent further harm and demonstrates the inadequacy of any alternate remedy. Every day that the Nation cannot reinter ancestral remains constitutes a continuing and irreparable harm.

**B. The irreparable harm extends beyond the threat of looting.**

Whidbey Telecom unreasonably focuses almost entirely on the threat of looting, intentionally missing the point. While looting is a concern, it is irrelevant to the daily, ongoing deterioration of disinterred ancestral remains and the Nation's continued inability to respectfully lay its ancestors to rest.[2] At a minimum, the Nation is suffering three independent harms: 1) the

---

[2] The Nation moved to seal certain exhibits to protect the location of the archaeological sites and prevent public disclosure of sensitive information. This is standard practice for archaeological sites containing confirmed ancestral remains and funerary objects.

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 11
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

loss of ancestral remains, including the cranial fragment permanently lost during Middle Mile project activities, Dkt. #12-3 ¶ 25; 2) the ongoing degradation of exposed remains and burial sites enduring weather and environmental conditions, RCW 27.44.055(2)(b); and 3) the absence of any adequate legal remedy. Lummi spiritual and cultural traditions impose sacred obligations on the Nation to protect, care for, and reinter ancestral remains and funerary objects. Dkt. #12-2 ¶¶ 3, 19, 27. These protocols are not discretionary practices.

### C. Lummi Nation continues to suffer harm from Whidbey Telecom's actions.

Even though the Nation demonstrated ongoing, present-tense harms, Whidbey Telecom incorrectly characterizes the Nation's injuries as "backward-looking." Dkt. #33 at 15. However, the Middle Mile project and construction are active. Dkt. #1 ¶ 40. Second, 45WH525 has remained exposed since March 2021. Dkt. #12-2 ¶ 27; Dkt. #33 at 2. Third, Defendants have not conducted a comprehensive damage assessment for Community Connect, and they have not conducted any damage assessment for either ReConnect or Middle Mile.[3] The Nation, therefore, does not know the full extent of the damage and is unable to reinter its ancestral remains. Absent injunctive relief, Defendants have demonstrated they will not assess the damage, secure the sites, or allow the Nation to reinter its ancestors. Each day Lummi ancestors remain exposed to further damage, the harm increases.

### D. Whidbey Telecom's own conduct forecloses voluntary compliance.

The Court cannot rely on Defendants' assurances they will comply with the law now. Whidbey Telecom suggests that judicial intervention is unnecessary, because it can be trusted to

---

[3] The concluding summary of the initial damage assessment at Commnity Connect states "the limited amount of fieldwork conducted for the current damage assessment of 45WH560, and the resultant small sample generally allow for only incomplete and preliminary interpretations of these issues." Dkt. #12-7 at 63.

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

avoid future harm voluntarily. The record demonstrates otherwise.[4] Whidbey Telecom violated federal and state stop-work orders, Dkt. #12-2 ¶ 6; Dkts. ##12-4, 12-5; ignored warnings from the Nation and the SHPO about project impacts to cultural resources for years, Dkt. #1 ¶¶ 129–30; refused to answer the Nation's requests for information, Dkt. #1 ¶¶ 116–17; and commenced construction activities for Middle Mile with only three days' notice after receiving explicit warnings about potential harm to ancestral remains. Dkt. #12-2 ¶ 23. This history of noncompliance forecloses any reliance the Court should have on Whidbey Telecom's assurances of voluntary compliance. Injunctive relief is imperative precisely because Whidbey Telecom's conduct shows that ongoing harm will continue absent judicial intervention.

## IV. THE BALANCE OF EQUITIES AND PUBLIC INTEREST FAVOR THE INJUNCTION.

The harm to the Nation's ancestors and citizens is permanent and satisfies both the *Winter* and *Cottrell* formulations. *Winter*, 555 U.S. at 20 (holding that the third and fourth elements of a preliminary injunction injury are whether the balance of equities tips in the movant's favor and whether the injunction is in the public interest); *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131–35 (9th Cir. 2011) (creating a sliding-scale formulation when "serious questions going to the merits" combined with a balance of hardships tip "sharply" in the movant's favor, together with a likelihood of irreparable harm and a public interest in relief).

---

[4] The preliminary damage assessment at Community Connect "was determined necessary when the four trenches were dug without archaeological oversight within the recorded boundary of site 45WH560 and into shell midden deposits." Dkt. #12-7 at 19.

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 13
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**A. The balance of equities clearly supports Lummi Nation's requested relief.**

Protection of ancestral graves and remains outweighs a temporary delay to infrastructure deployment. Whidbey Telecom assumed the risk of delay through its own non-compliance with local, state, and federal law. That hardship carries limited equitable weight. *Indep. Living Ctr. of S. Cal. v. Maxwell-Jolly*, 572 F.3d 644, 659 (9th Cir. 2009). The pause is also legally required: IGRA's reinterment and protection duties prohibit ground disturbance until remains have been assessed and reinterred. RCW 27.44.040, .055. Broadband goals do not override the statutory and fiduciary obligations protecting Tribal cultural resources; they operate alongside them, and Whidbey Telecom has failed to reconcile the two.

**B. Enforcing duly enacted statutes is in the public interest.**

Washington Legislature declared Native burial grounds "finite, irreplaceable ... cultural resources" integral to the heritage of Washington State, recognizing that these sites have been subject to "deliberate desecration" and "careless indifference." RCW 27.44.030. Courts consistently hold that enforcing duly enacted statutes is in the public interest, and Whatcom County's own permits incorporated protective conditions that Whidbey Telecom violated. The statutory framework spans every level of government: the National Historic Preservation Act and the National Environmental Policy Act at the federal level; IGRA at the state level; and WCC § 20.72.652 at the local level. This multi-level legislative alignment is decisive on the public interest factor.

## V. REQUESTED RELIEF IS NARROW AND APPROPRIATE

Lummi Nation seeks an order halting further ground disturbance, securing the affected sites, and enabling damage assessments and reinterment, which would redress the Nation's

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 14
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

injuries and prevent additional harm. Injunctive relief would permit the Nation to fulfill its cultural and spiritual obligations to its ancestors, and the requested relief is proportional to the seriousness of the harm. The Nation has met the standard for the requested relief because the current status quo causes ongoing, irreversible harm. *Earth Island Inst. v. U.S. Forest Serv.*, 351 F.3d 1291, 1298 (9th Cir. 2003).

## VI. CONCLUSION

The Court should grant Lummi Nation's request for a preliminary injunction in full. The record before the Court documents ongoing, irreversible harm to Lummi Nation's ancestral burial grounds. No Defendant has offered contrary evidence sufficient to disturb the showing Lummi Nation has made on any of the four *Winter* factors.

#

#

#

#

Respectfully submitted,

Dated: June 4, 2026

/s/ Gabriel David Cantu, Bar No. 52733
OFFICE OF THE RESERVATION ATTORNEY,
LUMMI NATION
2665 Kwina Road
Bellingham, WA 98226
Tel: (360) 384-7110
Email: GabrielC@lummi-nsn.gov

/s/ Gregory Alan Werkheiser, Virginia Bar No. 45986
Marion Forsyth Werkheiser, Virginia Bar No. 65454
Katherine Lee Sorrell, Texas Bar No. 24129460
Lydia Dexter, Oregon Bar No. 233151
Jessie Barrington, Virginia Bar No. 10065

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 15
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

CULTURAL HERITAGE PARTNERS, PLLC
1811 East Grace Street, Suite A
Richmond, Virginia 23223
Tel: (202) 567-7594
Emails: greg@culturalheritagepartners.com
marion@culturalheritgepartners.com
katherine@culturalheritagepartners.com
lydia@culturalheritagepartners.com
jessie@culturalheritagepartners.com
*Pro Hac Vice*

/s/ Charles N. Curlett, Jr., D.C. Bar No. 497920
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C. 20006
Tel: (202) 567-7594
Email: charles@culturalheritagepartners.com
*Pro Hac Vice*

*Counsel for Plaintiff*

We certify that this memorandum contacts 4,178 words, in compliance with the Local Civil Rules.

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 16
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on Defendants via CM/ECF electronic notice.


s/ Gabriel D. Cantu
Counsel for Lummi Nation
GabrielC@lummi-nsn.gov

*Counsel for Plaintiff*

Pl.'s Mem. Of Law in Supp. of Prelim. Inj. – 17
CASE NO. 2:26-CV-01435-KKE

LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110