UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF WASHINGTON

| | | |
|---|---|---|
| LUMMI NATION, | ) | |
| Plaintiff, | ) | |
| v. | ) | Civil Action No. 2:26cv1435 |
| WHIDBEY TELEPHONE COMPANY, et al | ) | |
| Defendant. | ) | |

**DECLARATION OF JORDAN WEINSTOCK**

I, Jordan Weinstock, hereby declare as follows, pursuant to 28 U.S.C. § 1746:

1. I am a Federal Program Officer (FPO) for the Department of Commerce's National Telecommunications and Information Administration (NTIA). I make these statements upon information of which I became aware in the ordinary course of performing my official duties.

2. As a part of my responsibilities, I work in and am knowledgeable of the Enabling Middle Mile Infrastructure Program (Middle Mile).

3. As a part of my NTIA responsibilities, I oversee and monitor the Whidbey Telephone Company, Middle Mile broadband project grant (53-40-MM408) on behalf of NTIA.

4. The Enabling Middle Mile Infrastructure Program was authorized under the Infrastructure Investment and Jobs Act of 2021, Section 60401, Public Law 117-58 (Nov. 15, 2021). The Middle Mile program is a grant program to expand and extend middle mile broadband infrastructure across the U.S and territories.

5. Under the Middle Mile program NTIA has awarded $980 million to 36 organizations across 40 states and territories to deploy, lease, or upgrade networks, which increase our nation's network resilience and lower the cost of connecting homes and small businesses.

6. On May 13, 2022, NTIA released a Notice of Funding Opportunity (NOFO) inviting middle mile grant proposals. Proposals were due on September 30, 2022.

7. On June 15, 2023, NTIA awarded a Middle Mile grant award to Whidbey Telephone Company for its project in Whatcom, San Juan, and Island Counties, Washington, award number 53-40-MM408. Originally, the overall project proposed to include 47.6 miles of new terrestrial underground fiber and 63.1 miles of undersea fiber. Whidbey's project as proposed was intended to connect the communities of Point Roberts, the Tribal people of

the Lummi Nation and the Naval Air Station Whidbey Island. The proposed infrastructure project's proposed routes would address the local demand for high speed and reliable internet for households, businesses and community anchor institutions in this portion of Washington state. This project proposed to provide middle mile or internet backbone access to all of Whidbey Island's 80,000 residents, 5,000 residents of Lummi Nation, 17,000 residents of San Juan County, 1,200 residents of Point Roberts, and residents of mainland northwest Whatcom County. The total award amount was proposed to be $11,782,208.20 with the total project cost to be $16,831,726. The award start date was set for July 1, 2023. Whidbey signed the award on July 31, 2023.

8. Section 11 of General Terms and Conditions of the Whidbey Telephone Company award governs the release of grants funds and National Environmental Policy Act (NEPA) and National Historic Preservation Act (NHPA) reviews. "The Recipient may not expend any federal infrastructure funds other than for engineering, design, permitting and work related to environmental, historical and cultural reviews, and limited, preliminary procurement funds [as set forth in the Terms and Conditions]."

9. Section 11 further describes the limitations on the expenditure of funds that includes construction of the project: "Project implementation (site preparation, demolition, construction, ground disturbance, or any other project implementation activities) may not begin prior to the completion of [environmental and historic preservation responsibilities]." These responsibilities include the completion of an environmental review and issuance of a Decision Memo or other document that meets the requirements of the National Environmental Policy Act of 1969 (NEPA). (42 USC 4321). This also includes the completion of any required consultations including with the State Historic Preservation Office (SHPO), Native American Tribes under Section 106 of the National Historic Preservation Act of 1966 (16 USC 470, et seq.) and/or consultations with the U.S. Fish and Wildlife Service (USFWS) or National Marine Fisheries Service (NMFS) under Section 7 of the Endangered Species Act (16 USC 1531, et seq.) and any other consultations as may be required for the project. Finally, the grantee is required to demonstrate compliance with all other federal, state, and local environmental laws and regulations.

10. Section 11 also sets forth the requirement that the grantee, and as applicable to Whidbey Telephone, must submit a 6-month expenditure plan to include certain allowable costs until the NEPA review is complete, which is limited to costs associated with the environmental review and permits, planning, consultations, studies and administrative costs. Other limited costs may also be authorized including the purchase or lease of equipment, insurance, land and easements.

11. Section 11 also specifically requires the following: "For all ground disturbing activities that occur during project implementation in the vicinity of known archaeological sites or suspected or known burials, the Recipient must ensure that an archeologist who meets the Secretary of the Interior's Professional Qualification Standards monitors ground disturbance, and if any potential archeological resources or buried human remains are discovered, then the Recipient must immediately cease construction in that area and

notify NTIA and the interested SHPO, [Tribal Historic Preservation Officers] (THPO), and tribes. Such construction activities may then only continue with the written approval of NTIA."

12. Section 12 of the General Terms and Conditions applicable to the Whidbey Telephone Company award limits the expenditure of funds until the completion of required consultations with the SHPO, and the appropriate Native American Tribes, under Section 106 of NHPA and/or demonstration of compliance with all other application federal, state and local environmental laws and regulations.

13. As with Section 11, Section 12 also provides for allowable funds in certain circumstances, requires a 6-month spending plan approved prior to the draw down of funds and which limits activities and allowable costs including a prohibition to begin construction. This clause also requires an archaeologist to be on site in certain circumstances and that the grantee must cease all construction and notify NTIA, SHPO and THPO and other consulting parties if there is a discovery of human remains or archeological resources.

14. Section 12 also requires the grantee to submit documentation to the NTIA Environmental Program Officer (EPO) and FPO once all required consultations are completed.

15. On May 16, 2024, Whidbey Telephone proposed separating the project into two parts providing justification to support that each project could exist as independent, stand-alone projects.

16. On May 23, 2024, after the NTIA FPO and EPO conducted an independent utility analysis of Whidbey Telephone's submittal to allow Whidbey Telephone to split this project into two phases, NTIA determined that each project had independent utility and approved splitting the project into two phases.

17. Phase 1 or the southern terrestrial-only portion of the project would include a terrestrial cable system in Whidbey Island County, Washington. This Phase 1 project includes 25.6 miles of underground fiber optic cable, between Central Whidbey Island, north to a beach manhole at Moran Beach County Park, and handholes or underground enclosures to provide easy access to the buried cable. Phase 1 does not include any construction on Point Roberts.

18. The Phase 2 or the northern submarine and minor terrestrial portion of the project would include a submarine cable component with a landing station at Point Roberts and at Decatur Island. Specifically, the Phase 2 or northern portion of the project proposes 53 miles of undersea cable from northern Whidbey Island to Decatur Island in San Juan County and then continuing north to Point Roberts in Whatcom County. At Point Roberts, a beach manhole would be installed, and 110-meter terrestrial fiber line would be either trenched or horizontally directionally drilled to existing Whidbey Telephone Company owned broadband infrastructure.

19. On February 18, 2025, the NTIA EPO assigned to this project completed a Decision Memorandum documenting compliance with NTIA requirements noting that this project has undergone an independent utility analysis review and approval on May 23, 2024, that had divided this project into two phases. The Decision Memorandum also approved the southern project (Phase 1) to proceed with construction subject to certain Special Conditions and based upon an analysis of the application of NTIA NEPA Categorical Exclusions and a finding of no extraordinary circumstances that would warrant further analysis of the proposed action for the southern portion of the project.

20. In the Decision Memorandum for the southern project, the EPO noted that the Washington State Historic Preservation Officer (SHPO) concurred with NTIA's conclusions on December 23, 2024. Additionally, the EPO records in the Decision Memorandum that NTIA had also coordinated with the Stillaguamish, Suquamish, Samish, and Swinomish Tribal Historic Preservation Offices (THPOs) regarding the project and including the avoidance of a specific site of concern.

21. NTIA also coordinated under Section 106 of the National Historic Preservation Act (NHPA) with the Lummi Nation THPO for this Phase 1 or southern portion of the project; however, the THPO did not comment on the proposed project.

22. As a result, on March 14, 2025, NIST on behalf of NTIA issued a partial lifting of the Section 11 and 12 limitations on expenditures to fund the construction of the Phase 1 or southern portion of the project. The restriction on expenditures remains in place for the Phase 2 or northern portion of the project that includes Point Roberts.

23. Construction on the Phase 1 or southern portion is ongoing. This construction includes cooperation with the Tribes with a condition that a Swinomish Tribal representative be on site during construction.

24. The environmental reviews of the Phase 2 or northern portion of the project including the proposed landing at Point Roberts are ongoing. Construction has not begun on this portion of the proposed project as per Section 11 and 12 of the Terms and Conditions and funds remain restricted.

25. NTIA, as the lead federal agency, in cooperation with other federal agencies including NMFS and the U.S. Army Corps of Engineers is currently preparing a draft Environmental Assessment (EA) for the proposed Phase 2 or northern portion of the project, with the expectation that the draft EA will be published for public comment for 30 days.

26. To date no funds relating to the construction of the proposed Phase 2 or northern portion have been released.

I declare under penalty of perjury that the foregoing is true and correct.

JORDAN WEINSTOCK Digitally signed by JORDAN WEINSTOCK Date: 2026.07.06 12:37:05 -04'00'

JORDAN WEINSTOCK

Executed on July 6, 2026