UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| LUMMI NATION,<br><br>　　　　　　Plaintiff(s),<br>　　v.<br><br>WHIDBEY TELEPHONE CO., et al.,<br><br>　　　　　　Defendant(s). | CASE NO. C26-1435-KKE<br><br>ORDER GRANTING IN PART MOTION<br>FOR PRELIMINARY INJUNCTION |

Plaintiff Lummi Nation sues Defendants Whidbey Telephone Co., Whatcom County, and two federal agencies over the disturbance of Lummi burial sites in Point Roberts, Washington. [1] Lummi Nation now seeks a preliminary injunction halting further ground-disturbing work in Point Roberts, mandating that the Nation be granted access to the sites, compelling Whidbey Telephone and the County to implement security measures, and ordering the production of certain records.

The Court finds that Lummi Nation is likely to succeed in its claim that Whidbey Telephone disturbed Lummi burial sites and has not reinterred the displaced ancestral remains under the Nation's supervision, as required by Washington law. However, much of the damage to Lummi cultural resources remains unassessed. And while the Nation has expressed a desire to conduct its own assessment of the damage, it has yet to apply for the necessary permits from the

---

[1] All references in this order to "Lummi" or "the Nation" refer to Lummi Nation. This order also refers, at times, to Whidbey Telephone Co. as simply "Whidbey" and to Whatcom County as "the County."

County.  Since neither the County nor Whidbey Telephone has objected to the Nation conducting such an assessment, some of the relief the Nation seeks is premature.  The Nation's request for an order halting ground work is also premature because no such work is currently ongoing and Whidbey Telephone states it is unlikely to occur before this case goes to trial.

Still, Lummi Nation faces irreparable harm if ground work were to commence without the Nation's knowledge.  And most of the excavation to date has occurred with no notice to the Nation. The Court will therefore grant Lummi Nation's motion in part and enter a preliminary injunction requiring Whidbey Telephone to give the Nation thirty-days' notice before any ground-disturbing work on Point Roberts.  While the Court will not enter additional relief at this time, the Nation may renew its motion if Defendants prevent it from accessing the sites, if the County denies its permit application, if ground work becomes imminent, or if—after conducting its damage assessment—Lummi Nation identifies specific measures needed to preserve particular disturbed burial sites.

## I.    BACKGROUND

Lummi Nation's cultural ties to Point Roberts date back thousands of years.  Dkt. No. 12-2 ¶ 3, Dkt. No. 12-3 ¶ 3, Dkt. No. 20-3 at 18.  Historically, the Lummi people, along with the Semiahmoo and other groups, maintained extensive reef net fishing camps, including permanent houses and fish-drying racks, on the southeastern end of Point Roberts.  Dkt. No. 20-3 at 18. Today, Point Roberts contains a wealth of cultural and historical resources.  In just five square miles, Point Roberts has thirteen recorded archaeological sites and over 3,000 individual archaeological features.  Dkt. No. 12-3 ¶ 3.  Illustrating its dense archaeological landscape, a single study conducted at just one of these sites identified human remains believed to represent at least seven different ancestral burial sites.  Dkt. No. 20-3 at 23.

This case concerns three federally funded broadband infrastructure projects undertaken by

Whidbey Telephone in Point Roberts: (1) the Community Connect Broadband Grant Project ("Community Connect"), (2) the ReConnect II Grant Project ("ReConnect"), and (3) the Middle Mile Infrastructure Project ("Middle Mile"). Dkt. No. 34 ¶ 2. Each project involves trenching or boring tunnels alongside county roads to deploy a network of underground cables aimed at expanding broadband access to communities in Point Roberts and the surrounding areas. *Id.* Some of this excavation work has occurred, or will occur, on or near archaeological sites designated by the Washington Department of Archaeology and Historic Preservation ("DAHP") as eligible for listing on the National Register of Historic Places. Dkt. No. 12-3 ¶¶ 3, 5, 18.

### A.    Community Connect

Lummi Nation first learned of these projects during construction on Community Connect (chronologically, the second of the three projects). In April 2023, a member of the public with knowledge of local archaeology alerted Lummi Nation and DAHP that trenching was underway near a known Lummi burial site. Dkt. No. 12-2 ¶ 4. The next day, an archaeologist from the State, James McCrae, visited Point Roberts and confirmed that the excavation was near a site known as 45WH560 ("'560"), where multiple previous studies had identified native burial grounds. Dkt. No. 12-3 ¶¶ 5; *see also* Dkt. No. 20-3 at 20–23 (discussing previous studies at '560). McCrae observed that the trenching had indeed disturbed native artifacts. Dkt. No. 12-3 ¶ 5, Dkt. No. 34 ¶ 4. In particular, he photographed trenches and piles of backfill (the soil removed during trenching) that contained visible shell midden—an archaeological feature consisting of mollusk shells discarded by native people. Dkt. No. 12-3 ¶ 5; Dkt. No. 34 ¶ 4.

After McCrae's visit, Whidbey Telephone halted excavation in the vicinity, secured the area with temporary fencing, and referred the matter to the U.S. Department of Agriculture

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 3

("USDA")—the project's funder.[2]  Dkt. No. 34 ¶ 4.  Days later, USDA issued a directive to Whidbey Telephone—which remains in effect today—to stop ground-disturbing work on both Community Connect and ReConnect.[3]  *Id.* ¶ 5, Dkt. No. 36 at 11.  Over the following months, USDA formally notified DAHP of the disturbance and, on July 18, 2023, convened the first of several meetings with DAHP and Lummi Nation.  Dkt. No. 12-3 ¶ 7.

In November 2023, USDA and DAHP directed Whidbey Telephone to conduct a cultural resources damage assessment of its trenching operations.  Dkt. No. 20-3 at 14, Dkt. No. 34 ¶ 6. Whidbey Telephone hired ASM Affiliates, an archaeology firm with an office in Stanwood, Washington, which began work on the assessment in January 2024.  *See* Dkt. No. 34 ¶ 6, Dkt. No. 20-3.  Although Lummi Nation asked that the assessment include the entire 2.8 mile stretch of construction that had been completed on Community Connect by that time, ASM ultimately assessed only four trenches and five backfill piles at the area where McCrae had directly observed evidence of disturbed artifacts.[4]  Dkt. No. 12-3 ¶ 11, Dkt. No. 12-3 ¶ 8, Dkt. No. 20-3 at 28.  Unlike the 2.8 miles of completed excavation, these trenches were exploratory, meaning their purpose was to identify existing utilities for the project's next phase, not to bury cable.  Dkt. No. 20-3 at 12.  ASM recommended surveying the portion of the project where trenching was complete, which included about 1,000 feet of trenching within the boundary of the '560 site.  *Id.*  But Whidbey limited ASM's engagement to the exploratory trenches excavated at the project's edge.  *Id.*

---

[2] Community Connect is funded by USDA's Rural Utilities Service.  Dkt. No. 34 ¶ 3.  For simplicity, this order refers to USDA and the Rural Utilities Service interchangeably as simply "USDA."

[3] Lummi Nation contends, upon information and belief, that Whidbey Telephone violated this stop work order, as evidenced by Whidbey's "as-built records," which reflect work completed on May 2, 2023.  Dkt. No. 40 at 7.  At oral argument, Whidbey's counsel stated that the May 2 work was limited to road preparation that did not involve ground disturbance.  Although the Court need not resolve the issue at this stage, the construction report on which Lummi Nation relies is consistent with Whidbey's representation.  Dkt. No. 20-1 at 2.

[4] The fifth backfill pile came from a fifth trench that ASM identified during its fieldwork but did not analyze.  Dkt. No. 20-3 at 28.

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 4

Despite its limited scope, ASM recovered 1,194 artifacts, including bone and lithic artifacts; a ground stone implement; an arrowhead; stone, shell, and bone beads; and over a thousand pieces of fire-modified rock. *Id.* at 12, 69. ASM also recovered confirmed ancestral remains, which—along with the presence of funerary objects—led ASM to conclude that the area contained native burial sites. *See id.* at 12, 28, 47–48, 55–56, 78. Lummi Nation and DAHP received a preliminary report from ASM in August 2024, and a final report in January 2025. Dkt. No. 12-2 ¶ 13; Dkt. No. 12-3 ¶ 16.

Following the damage assessment, ASM backfilled the trenches with material from the piles using hand tools and then covered the sites with filter fabric. Dkt. No. 34 ¶ 6. Since then, Whidbey Telephone reports that the sites have remained backfilled with no known incidents of looting or other damage. *Id.* ¶ 8.

Beginning in February 2024, USDA began convening biweekly meetings with Lummi Nation, DAHP, and Whidbey Telecom regarding the damage assessment. Dkt. No. 12-3 ¶ 11; Dkt. No. 34 ¶ 7. State Archaeologist Robert Whitlam, who attended on behalf of DAHP, and Lena Tso, Lummi Nation's Tribal Historic Preservation Officer, each state that they repeatedly recommended a comprehensive damage assessment of Community Connect's entire construction corridor. Dkt. No. 12-2 ¶ 15, Dkt. No. 12-3 ¶ 14. No such assessment was completed. But Whidbey Telephone proposed completing the remainder of the project via an aerial buildout, rather than using buried cables, to mitigate future impacts to the archaeological site. Dkt. No. 12-2 ¶ 15, Dkt. No. 12-3 ¶ 15. In October 2025, USDA cancelled the bi-weekly consultation meetings. Dkt. No. 12-2 ¶ 9, Dkt. No, 12-3 ¶ 11.

**B.    ReConnect**

Shortly after USDA began holding the biweekly meetings, Lummi Nation and DAHP learned about an earlier USDA-funded Whidbey Telephone project that involved trenching

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 5

through another designated Lummi archaeological site.  Dkt. No. 12-2 ¶ 17, Dkt. No. 12-3 ¶ 18. That project—ReConnect—involved over 7,000 feet of trenching or boring to lay fiber optic cables, including approximately 2,100 feet of excavation extending through the length of an archaeological site known as 45WH525 ("'525").  Dkt. No. 12-3 ¶ 18, Dkt. No. 34 ¶ 9.  This work was already complete by the time Lummi Nation learned of the project.  Dkt. No. 12-2 ¶ 17.

Whidbey Telephone had applied for and received encroachment permits from Defendant Whatcom County for both the Community Connect and ReConnect projects.  *See* Dkt. No. 32-1. It is undisputed that these applications should have required notification to Lummi Nation and an archaeological site assessment under a provision of the Whatcom County Code governing permit applications for properties in Point Roberts within 500 feet of a known archaeological site. WHATCOM CNTY., WASH., CODE § 20.72.652(2)(a), (c).  The Code also requires that an archaeological resource management plan be prepared with input from Lummi Nation and others if the initial assessment locates significant archaeological resources.  *Id.* § 20.72.652(2)(b).  After Lummi Nation learned of the projects, Whatcom County informed it that, due to a "glitch" in newly installed permitting software, the sites were never flagged and, as a result, the notification and assessment requirements were not followed.  Dkt. No. 12-10.  Accordingly, Lummi Nation never learned of ReConnect until USDA disclosed its existence during the meetings about the damage assessment for Community Connect.

By that time, work on ReConnect was substantially complete.  Whidbey Telephone reports that, despite the stop work order issued after McCrae's visit to the Community Connect worksite, ReConnect is now fully constructed and operational.[5]  Dkt. No. 34 ¶¶ 12–13.  Because of the stop work order, however, Whidbey Telephone is unable to connect homes to the project.  *Id.* ¶ 14.

---

[5] Although USDA halted work on ReConnect in May 2023, neither USDA nor Whidbey informed Lummi Nation of the project for nearly another seven months.  Dkt. No. 12-2 ¶ 17, Dkt. No. 12-3 ¶ 18, Dkt. No. 36 at 11.

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 6

Whidbey Telephone claims that despite "substantial ground-disturbing" activity over the course of the project, its crews never discovered archaeological resources and "therefore proceeded without archaeological incident, interruption, or agency intervention." Dkt. No. 34 ¶ 11. But it is undisputed that Whidbey has not performed a damage assessment or survey of ReConnect to determine if its crews overlooked archaeological resources during construction (as was the case in Community Connect). Dkt. No. 12-3 ¶ 19. Accordingly, it remains unknown whether the tunneling and boring through site '525 damaged Lummi burial grounds or other artifacts.

## C.    Middle Mile

Most recently, Lummi Nation learned of the Middle Mile project, which, in February 2025, received the relevant environmental approvals from its funding agency, the U.S. Department of Commerce's National Telecommunications and Information Administration. Dkt. No. 12-2 ¶ 20, Dkt. No. 34 ¶ 15. According to Ms. Tso, she repeatedly reached out to Whidbey Telephone for information about the project but was rebuked or ignored. Dkt. No. 12-2 ¶¶ 20–26. The project is intended to provide broadband access to residents of Point Roberts, Whidbey Island, Lummi Nation, San Juan County, and elsewhere, and to provide network redundancy to Naval Air Station Whidbey Island. Dkt. No. 34 ¶ 16.

Whidbey Telephone hired a cultural resources management firm, WestLand Resources, to conduct a cultural resources survey of parts of the construction corridor for Middle Mile. Dkt. No. 34 ¶ 18, Dkt. No. 12-3 ¶ 25. In November 2025, WestLand gave three-days' notice to Lummi Nation that it intended to survey an area directly east of the '525 site. Dkt. No. 12-2 ¶ 23, Dkt. No. 12-3 ¶ 25. On the first day of the survey, WestLand discovered a suspected human cranial fragment on the ground surface near the proposed location where a submarine portion of Middle Mile would connect to Point Roberts from the sea. Dkt. No. 34 ¶ 18, Dkt. No. 12-2 ¶ 24. According to Lummi Nation and Whidbey Telephone, the fragment was lost "due to delays … by

the Whatcom County Sheriff's Department" in recovering it. Dkt. No. 34 ¶ 19, Dkt. No. 12-3 ¶ 25. Whidbey Telephone states that no ground-disturbing work has occurred "in the portion of the project area where the suspected cranial fragment was identified" except for "archaeological shovel test probes" to "evaluate" the area "associated with the proposed submarine landing site." Dkt. No. 34 ¶¶ 22–23. These "test pits were backfilled using the original excavated material." *Id.* ¶ 23.

Middle Mile is currently undergoing the consultation process mandated by section 106 of the National Historic Preservation Act ("NHPA"). Dkt. No. 34 ¶ 17. As part of that process, Whitlam, the State Archaeologist, was responsible for providing input "reflect[ing] the interests of the State and its citizens in the preservation of their cultural heritage." 36 C.F.R. § 800.2(c)(1)(i). Although Whitlam concurred in Commerce's "Finding of No Significant Impact" (Dkt. No. 34 ¶ 20), following WestLand's discovery of suspected human remains at the project area, he "provided additional stipulations" to his section 106 response "for avoiding further damage from the project." Dkt. No. 12-3 ¶ 26. In particular, Whitlam "recommended measures for site avoidance, professional archaeological monitoring, and [] an unanticipated find plan[.]" *Id.*

Except for the hand-dug test pits, Whidbey's counsel stated at oral argument that no ground-disturbing work has occurred on Middle Mile. Dkt. No. 46 at 43:1–5. Counsel further represented that, while Whidbey intends to proceed with ground-disturbing work after receiving federal approval and the necessary permits, such work is unlikely to occur before a trial in this case. *Id.* at 49:12–16

D.    **Procedural History**

On April 27, 2026, Lummi Nation filed this lawsuit against Whidbey Telephone, Whatcom County, USDA, and U.S. Department of Commerce. Dkt. No. 1. The complaint asserts claims against USDA and Commerce for violations of NHPA, the National Environmental Policy Act,

and the Administrative Procedure Act; against Whatcom County for negligence; and against Whidbey Telephone for gross negligence and violations of Washington's Indian Graves and Records Act ("IGRA"). *Id.* ¶¶ 189–256.

Lummi Nation moved for a preliminary injunction against Whidbey Telephone and Whatcom County. Dkt. No. 12. In particular, Lummi Nation requests an injunction (1) prohibiting further ground-disturbing activities by Whidbey Telephone at Point Roberts, (2) mandating security and preservation measures to protect ancestral remains and artifacts at disturbed sites, (3) requiring Whidbey Telephone and Whatcom County to give Lummi Nation access to the '560 and '525 sites for a comprehensive damage assessment, and (4) ordering Whidbey Telephone and Whatcom County to disclose records related to the projects and their actual or potential impacts to Lummi archaeological materials. *Id.* at 34–35, Dkt. No. 12-1.

USDA and Commerce responded, observing that the motion seeks no relief against them and taking no position on the claims against the other two defendants. Dkt. No. 29. Whidbey Telephone and Whatcom County each responded as well, opposing the motion as to the relief sought against themselves. Dkt. Nos. 31, 33. Lummi Nation filed a reply (Dkt. No. 40), and the Court heard oral argument on June 18, 2026 (Dkt. No. 42). Since briefing on the preliminary injunction motion, Whidbey Telephone and Commerce each filed separate motions to dismiss various aspects of Lummi Nation's complaint. Dkt. Nos. 41, 51.

## II.    DISCUSSION

### A.    Preliminary Injunction Standard

"Preliminary injunctive relief is an extraordinary equitable remedy that is never awarded as of right." *Bennett v. Isagenix Int'l LLC*, 118 F.4th 1120, 1129 (9th Cir. 2024) (citation modified). "The purpose of a preliminary injunction is to preserve the status quo ante litem pending a determination of the action on the merits." *Boardman v. Pac. Seafood Grp.*, 822 F.3d

1011, 1024 (9th Cir. 2016) (citation modified).

To succeed on a motion for preliminary injunction, the moving party must show: (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm to the moving party in the absence of preliminary relief; (3) that the balance of equities tips in the favor of the moving party; and (4) that an injunction is in the public interest. *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). The Ninth Circuit uses a sliding scale approach, such that "a stronger showing of one element may offset a weaker showing of another." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).

In light of the posture of this case and status of the three projects, the Court begins by considering whether the scope of relief sought is appropriately tailored to Lummi Nation's alleged injuries. Because the Court finds that some of the requested relief is premature, the Court will consider the *Winter* factors as they relate to a narrower injunction.

**B.    Scope of Relief**

District courts have "considerable discretion in fashioning suitable relief and defining the terms of an injunction." *Lamb-Weston, Inc. v. McCain Foods, Ltd.*, 941 F.2d 970, 974 (9th Cir. 1991). Nevertheless, a preliminary injunction "must be tailored to remedy the specific harm alleged, and an overbroad preliminary injunction is an abuse of discretion." *Nat. Res. Def. Council, Inc. v. Winter*, 508 F.3d 885, 886 (9th Cir. 2007) (citing *Lamb-Weston, Inc.*, 941 F.2d at 974); *see also Califano v. Yamasaki*, 442 U.S. 682, 702 (1979) ("[I]njunctive relief should be no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs"). In evaluating Lummi Nation's motion for a preliminary injunction, the Court must therefore consider whether the relief requested is appropriate in scope given the nature of the alleged injuries.

Lummi Nation seeks an order (1) mandating that the Nation be given access to the disturbed sites; (2) requiring the installation of security and erosion control measures, (3) enjoining ground-

disturbing work at Point Roberts, and (4) compelling the production of project records. Dkt. No. 12 at 34–35. The Court will consider each category of relief in turn.

First, Lummi Nation seeks "immediate and unrestricted access to sites ['560] and ['525] and to all excavated soil piles and displaced materials from the three projects for the purpose of conducting a comprehensive damage assessment and planning recovery and reinterment." Dkt. No. 12-1 at 2. As discussed above, the unassessed portions of all three projects are located along the shoulders of county roads within Whatcom County rights-of-way. The County, not Whidbey Telephone, controls access to the rights-of-way.

At this time, nothing is preventing Lummi Nation from applying for a permit from the County to conduct a damage assessment as it proposes. At oral argument, Lummi Nation's counsel confirmed that the Nation wishes to perform its own damage assessment using archaeologists selected by the Nation and that the Nation is willing to apply for the necessary permits to do so. Dkt. No. 46 at 56:9–16, 56:21–57:1. Whatcom County and Whidbey Telephone each stated they do not oppose the Nation accessing the sites to complete its assessment. *Id.* at 33:7–13, 49:19–22. And Whatcom County specifically represented it would "expeditiously" review any request by the Nation for an encroachment permit to assess damage or conduct other activities consistent with tribal customs. *Id.* at 34:13–15. The Court appreciates the parties' willingness to work together toward facilitating Lummi Nation's efforts to assess the damage from construction. Because no party opposes the Nation's request for access, and the Nation has not yet applied for encroachment permits, its request for a preliminary injunction requiring Whidbey and the County to provide access is premature.[6]

---

[6] The Court will entertain a motion to revisit the appropriateness of such relief in the event Lummi Nation is ultimately denied a permit or otherwise faces obstruction in accessing sites '560 and '525.

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 11

Second, Lummi Nation seeks an order requiring Whidbey Telephone and the County to "properly cover and protect all exposed areas at ['560] and ['525] containing or likely to contain ancestral human remains or associated cultural materials[.]"  Dkt. No. 12-1 at 2.  The Nation requests that any such measures should involve "methods approved by the Lummi Nation Tribal Historic Preservation Officer" and should include installing fencing and surveillance cameras, conducting weekly patrols by law enforcement, and implementing erosion control measures.  *Id.* When asked at oral argument to identify where specific measures for preserving burial sites should be implemented, Lummi Nation's counsel acknowledged the difficulty of doing so given that no damage assessment has been conducted to locate disturbed sites outside the area covered by the ASM report.  Dkt. No. 46 at 15:10–22.  As discussed below, without specific information about the type and location of security or other necessary protective measures, the Court cannot fashion appropriate injunctive relief.

Under Federal Rule of Civil Procedure 65, the Court is bound to state the terms of any injunction "specifically" and "describe in reasonable detail … the act or acts restrained or required."  FED. R. CIV. P. 65(d)(1)(B)–(C).  Thus, Rule 65 requires that an injunction provide "fair and precisely drawn notice of what the injunction actually" requires.  *Union Pac. R.R. v. Mower*, 219 F.3d 1069, 1077 (9th Cir. 2000) (quoting *Granny Goose Foods, Inc. v. Bhd. of Teamsters*, 415 U.S. 423, 444 (1974)); *see also Schmidt v. Lessard*, 414 U.S. 473, 476 (1974) ("[T]he specificity provisions of Rule 65(d) are no mere technical requirements.  The Rule was designed to prevent uncertainty and confusion on the part of those faced with injunctive orders, and to avoid the possible founding of a contempt citation on a decree too vague to be understood.").  Here, the completed portions of Community Connect and ReConnect include miles of trenching where Lummi burial grounds may (or may not) have been disturbed.  Without a completed damage assessment, there is no way to identify where disturbed cultural resources are located or what

measures are needed to protect them. The Court is therefore unable, at this time, to issue injunctive relief that would comply with Rule 65 mandating the security and protective measures Lummi Nation proposes.[7]

Third, Lummi Nation requests an order enjoining Whidbey Telephone from conducting any "ground activities at Point Roberts" except "maintenance or monitoring work that does not implicate subsurface disturbance in culturally sensitive areas." Dkt. No. 12-1 at 1. As discussed below, the Court finds that Lummi Nation is likely to suffer irreparable harm if further excavation continues at Point Roberts without notice to the Nation. At this time, however, no work is underway on Community Connect or ReConnect due to the federal stop work order. And Whidbey's counsel stated at oral argument that ground work on Middle Mile is unlikely to begin during this litigation. Dkt. No. 46 at 45:16–21, 49:6–16. An injunction prohibiting work unlikely to occur during litigation is therefore insufficiently "tailored to remedy" the "specific harm" the Nation faces. *Nat. Res. Def. Council*, 508 F.3d at 886.

Finally, Lummi Nation seeks production of various project records, including records identifying ground disturbances, records relating to archaeological resources, and communications regarding disturbed cultural materials. Dkt. No. 12-1 at 2. Under the Federal Rules of Civil Procedure, however, Lummi Nation is already entitled to serve requests for production of any nonprivileged records relevant to its claims and proportional to the needs of this case. FED. R. CIV. P. 26(b), 34. In the event the parties reach an impasse over Lummi Nation's efforts to obtain records, the Court will resolve discovery disputes according to the Federal Rules and this Court's

---

[7] The relevant portion of Lummi Nation's proposed order is insufficiently specific to satisfy Rule 65. For instance, it does not specify what "exposed areas" must be "properly" covered, what "methods" of covering would be "approved by" Lummi Nation, what types of fencing would be "sufficient to prevent" human disturbance, where such fencing should be installed, or what "erosion controls" would be "adequate to prevent further environmental degradation[.]" Dkt. No. 12-1 at 2. The Court anticipates that Lummi Nation will be able identify a more concrete proposal on these issues once a damage assessment is complete.

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 13

chambers procedures.  *See* Dkt. No. 11.  At this time, preliminary injunctive relief compelling records that Lummi Nation can obtain via discovery would be premature.

The Court will instead consider an alternative injunction better tailored to Lummi Nation's alleged injury—namely, an injunction requiring Whidbey Telephone to provide thirty-days' notice to the Nation before conducting any ground-disturbing work at Point Roberts.  Lummi Nation's counsel stated at oral argument that, under NHPA, thirty days is a standard length of time for providing notice to an Indian tribe in connection with a federally funded project.  Dkt. No. 46 at 14:12–25; *see also* 36 C.F.R. §§ 800.3(c)(4), 800.4(d)(1) (providing tribal officers 30-day's notice to respond during NHPA section 106 review).  And a notice requirement would allow the parties to consult toward an agreement on mitigating damage and, if necessary, for Lummi Nation to seek injunctive relief in response to concrete construction plans that may arise during litigation.

## C.    The *Winter* Factors

Having determined that a narrower scope of relief is appropriate, the Court will analyze the *Winter* factors to determine if the Nation's motion meets the standard for a preliminary injunction. The Court concludes that all four factors counsel in favor of preliminary relief.[8]

### 1.  Likelihood of Success

To begin, Lummi Nation's IGRA claim against Whidbey Telephone is likely to succeed. Washington's IGRA makes it a class C felony to "knowingly remove[], deface[], injure[], or destroy[] any cairn or grave of any native Indian, or any glyptic or painted record of any tribe or peoples[.]"  WASH. REV. CODE § 27.44.040(1).  It also requires that "[p]ersons disturbing native Indian graves through inadvertence, including disturbance through construction, mining, logging,

---

[8] Lummi Nation seeks preliminary relief against both Whidbey Telephone and Whatcom County.  Because the Court finds the requested relief against the County premature, the Court limits its analysis of the *Winter* factors to Lummi Nation's claims against Whidbey Telephone.

agricultural activity, or any other activity, shall reinter the human remains under the supervision of the appropriate Indian tribe."[9] *Id.* Thus, IGRA prohibits both intentional destruction of native burial sites and inadvertent disturbance if the disturbance is not rectified by reinterring the remains under tribal supervision.

IGRA also creates a civil cause of action for "an Indian tribe or enrolled member thereof" to sue "any person who is alleged to have violated" the provisions just described for "an injunction, damages, or other appropriate relief[.]" WASH. REV. CODE § 27.44.050(1). The statute authorizes, among other forms of relief, "injunctive or such other equitable relief as is appropriate," including "the reinterment of human remains[.]" WASH. REV. CODE § 27.44.050(3)(b).

Whidbey Telephone's opposition largely argues that Whidbey cannot be subject to felony liability because it lacked "specific knowledge" of any "protected grave or burial site" that it disturbed during work on the three projects. Dkt. No. 33 at 11–12. But while Whidbey's lack of knowledge may, if true, protect it from *criminal* liability, it is not a complete defense to a lawsuit under IGRA's *civil* cause of action.

A civil claim under IGRA need not be predicated on a felony violation. Rather, tribes may sue over both knowing (criminal) violations and inadvertent (non-criminal) disturbances where the responsible party has failed to reinter remains under the tribe's supervision. *See Swinomish Indian Tribal Cmty. v. Island Cnty.*, 942 P.2d 1034, 1037–38 (Wash. Ct. App. 1997) (holding that IGRA's cause of action is not limited to criminal violations of the statute). This is apparent, most importantly, from the statute's text, which does not distinguish between criminal and non-criminal violations. *See* WASH. REV. CODE § 27.44.050(1) (authorizing suit "against *any* person who is

---

[9] IGRA provides that "[t]he expenses of reinterment are to be paid by the office of archaeology and historic preservation"—now known as DAHP. Wash Rev. Code § 27.44.040(1); *see also id.* § 43.334.900(1) (transferring office of archaeology and historic preservation functions to DAHP).

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 15

alleged to have violated [WASH. REV. CODE §] 27.44.040" (emphasis added)).  Statutory context reinforces this conclusion: IGRA's tribal-cause-of-action provision permits punitive damages only "upon proof that the violation was willful." *Id.* § 27.44.050(3)(d).  That requirement would be redundant if the cause of action required the tribe, in every case, to prove a "knowing[]" violation. *Id.* § 27.44.040(1); *see also Puget Sound Painters v. State*, 278 P.2d 302, 303 (Wash. 1954) ("Willful means 'knowingly[.]'"); *Progressive Animal Welfare Soc. v. Univ. of Wash.*, 884 P.2d 592, 602 (Wash. 1994) ("We will not interpret statutes in a manner that renders portions of the statute superfluous.").  Because IGRA authorizes tribes to sue over inadvertent disturbances, Lummi Nation need not prove that Whidbey Telephone knowingly disturbed Lummi graves to succeed on its IGRA claim.

Lummi Nation is likely to succeed in showing that Whidbey Telephone violated at least IGRA's inadvertent disturbance provision.  Indeed, within the small portion of Community Connect covered by ASM's damage assessment, archaeologists found numerous ancestral human remains in three of the four trenches surveyed —including six skull fragments, a thoracic vertebra, and eleven other bone fragments.  Dkt. No. 20-3 at 12, 28, 46, 47, 50.  In the same area, ASM recovered over a thousand artifacts, including funerary objects. *Id.* at 12.  All this was disturbed by just four exploratory trenches within about a hundred feet of each other. *Id.* at 29.  Had a member of the public not observed the excavation and alerted DAHP and Lummi Nation, it is unclear if the Nation would ever have learned about it.  Whidbey has not assessed the remaining 1,000 feet of trenching across site '560, much less the remaining 2.8 miles of trenching to the north.  Nor has it assessed any of the construction on ReConnect—including the 2,100 feet of trenching across site '525.

Whidbey briefly argues that Lummi Nation has not presented "expert or other competent evidence establishing that" Community Connect disturbed human remains.  Dkt. No. 33 at 12.  But

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 16

the ASM damage assessment that Whidbey commissioned speaks forcefully to the contrary. And Whidbey does not dispute the report's findings. Dkt. No. 46 at 45:6–8. Given the relatively small survey area in the report, the volume of Lummi artifacts recovered there is striking. The report also discusses dozens of other surveys that have consistently found cultural materials and human remains across site '560. Dkt. No. 20-3 at 20–23. Indeed, the site's boundaries have gradually expanded as surveys have discovered more artifacts along what was previously understood to be its outer edge. *Id.* at 22–23.

As for site '525, while Whidbey never completed a survey or damage assessment for the ReConnect project, the cultural resources survey for Middle Mile—directly east of '525— recovered a suspected human cranial fragment on the very first day of surveying. Dkt. No. 34 ¶ 18, Dkt. No. 12-2 ¶ 24, Dkt. No. 12-3 ¶ 25. Indeed, the suspected remain was not even below the surface. Dkt. No. 34 ¶ 18. There is no dispute this remain was lost—meaning not reinterred under Lummi Nation's supervision. *Id.* ¶ 19. And while Whidbey Telephone asserts that no "declaration or other admissible evidence" establishes the fragment was "human or associated with the Tribe" (Dkt. No. 33 at 22), the declaration of its CEO, Donna Hilty, acknowledges the remain was "a suspected human cranial fragment" and that its discovery triggered "inadvertent discovery procedures" that included notifying "tribal entities." (Dkt. No. 34 ¶¶ 18, 21). That is enough, at this stage, to support Lummi Nation's likelihood of success.

On this preliminary injunction record, it is likely that Lummi Nation will prevail in showing that Whidbey Telephone disturbed Lummi ancestral remains and that it has not reinterred those remains under Lummi Nation's supervision. Before proceeding to the second *Winter* factor, however, the Court must address an additional matter. Following briefing on the preliminary injunction motion, Whidbey Telephone filed a motion to dismiss Lummi Nation's IGRA claims to the extent they are predicated on Community Connect or ReConnect, arguing the claims are

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 17

untimely under IGRA's two-year statute of limitations. Dkt. No. 52; *see also* WASH. REV. CODE § 27.44.050(1) (requiring an IGRA civil suit to be "brought within two years of the discovery of the violation by the plaintiff"). Whidbey did not raise these arguments in its opposition to the preliminary injunction motion. And the Court will address the statute of limitations issue fully in resolving Whidbey's motion to dismiss.

At this stage, it is enough to observe that Lummi Nation has raised a "serious question" with respect to the statute of limitations and that the "balance of hardships tips sharply in" Lummi Nation's favor. *All. for the Wild Rockies*, 632 F.3d at 1134–35 (quoting *Lands Council v. McNair*, 537 F.3d 981, 987 (9th Cir. 2008)). For one thing, Whidbey does not dispute that the Nation's IGRA claim is timely to the extent it is predicated on Middle Mile. As discussed above, Lummi Nation is likely to succeed in showing that Whidbey has already failed to reinter the lost cranial fragment discovered during that project and is likely to disturb additional remains if excavation proceeds. Moreover, Lummi Nation raises a serious question as to whether the statute of limitations has begun to run with respect to remains that have been disturbed but not yet discovered. Indeed, considering only the known remains, Lummi Nation did not receive ASM's preliminary report confirming their human origin until August 2024, at the earliest (less than two years before it filed suit)—although it learned of the excavation in 2023. Dkt. No. 12-2 ¶ 13. Finally, even if Whidbey prevails in its motion to dismiss, it will suffer no hardship from a narrow injunction—potentially in effect only until its motion is resolved—requiring it to notify the Nation of imminent ground-disturbing work.

In sum, the Nation has established a likelihood of success on its IGRA claim against Whidbey. Whidbey's pending motion to dismiss does not tip the scale with respect to the first *Winter* factor.[10]

2.  Irreparable Injury

Next, the Court considers whether Lummi Nation is likely to suffer irreparable injury absent preliminary relief. The Court concludes that it is.

As discussed above, Lummi Nation has shown that Whidbey Telephone's construction activities at Point Roberts likely disturbed a far greater number of ancestral remains than were identified at the small site where ASM conducted the damage assessment. ASM's report recommended assessing the remaining trenches within site '560 and surveying the miles of trenches outside the site, explaining that the "small sample" and "limited amount of fieldwork" involved in its assessment necessarily limited ASM's ability to uncover the extent of the damage. Dkt. No. 20-3 at 12, 76. Nearly all the disturbances occurred without any notice to Lummi Nation, even though much of the ground work cut across archaeological sites known to contain Lummi burial sites.

Absent a preliminary injunction requiring Whidbey Telephone to notify the Nation before excavating in Point Roberts, Lummi Nation faces a significant likelihood of being blindsided again once work proceeds. And while Whidbey has said that no work is underway at the moment because of the stop work order, the record contains no assurance as to when that order will expire or whether any measures will be in place to protect Lummi cultural resources when it does. As vividly described in Ms. Tso's declaration, the cultural and spiritual injury experienced by tribal

---

[10] Because Lummi Nation's likelihood of success on its IGRA claim is sufficient to support injunctive relief, the Court need not consider at this stage whether the Nation is likely to succeed on its separate gross negligence claim against Whidbey Telephone.

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 19

members from the disturbance of Lummi ancestral remains is irreparable.  Dkt. No. 12-2 ¶ 28 (describing "the effects a burial disturbance has on Tribal people and Tribal communities" by analogy to the disappearance of a child).

Accordingly, the second *Winter* factor favors preliminary relief.

### 3.  Balance of the Equities

The balance of the equities also favors Lummi Nation.  As discussed above, considering Point Roberts's dense archaeological landscape, further ground-disturbing work on any of the projects at issue is likely to damage Lummi cultural resources.  And without adequate notice, the Nation will have no opportunity to propose measures for mitigating that damage or to seek judicial intervention to prevent irreparable harm.  Whidbey Telephone, on the other hand, has stated that no trenching is underway on Community Connect or ReConnect due to the stop work order and that it does not anticipate beginning work on Middle Mile until after the trial in this case.  Dkt. No. 46 at 45:16–21, 49:6–16.  A narrow injunction requiring notice to the Nation in the event these projects are cleared for construction will impose a minimal burden on Whidbey Telephone.

The balance of the equities thus tips sharply in favor of Lummi Nation.

### 4.  Public Interest

Finally, the public interest favors preliminary relief.  In enacting IGRA, Washington's legislature declared "Native Indian burial grounds" to be "a finite, irreplaceable, and nonrenewable cultural resource" and "an intrinsic part of the cultural heritage of the people of Washington." WASH. REV. CODE § 27.44.030(1).  The legislature recognized a public interest in protecting these resources from "accidental disturbance" (*id.* § 27.44.030(3)) and made it a crime to "knowingly" damage Indian graves (*id.* § 27.44.040(1)).  While the Court acknowledges that Whidbey Telephone's projects also advance a substantial public interest—expanding broadband internet

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 20

access to rural and underserved communities—an injunction requiring notice to the Nation before conducting ground work does not interfere with that interest.

Accordingly, preliminary relief is in the public interest.

In summary, although some of the relief Lummi Nation seeks is premature, the Nation is likely to succeed in showing that Whidbey Telephone disturbed Lummi ancestral remains and has not reinterred them under Lummi Nation's supervision, as required by IGRA. Lummi Nation is likely to suffer irreparable injury absent a preliminary injunction ordering Whidbey to provide adequate notice before ground-disturbing work in Point Roberts. And the balance of the equities and public interest both support an injunction. Because all the *Winter* factors favor preliminary relief—albeit in more narrow form than Lummi Nation initially requested—the Court will grant Lummi Nation's motion in part

### III.   CONCLUSION

Lummi Nation's motion for a preliminary injunction (Dkt. No. 12) is GRANTED in part. Whidbey Telephone Co. is hereby ENJOINED from conducting ground-disturbing activities—including, but not limited to, trenching, boring, potholing, or grading—in Point Roberts, Washington, without providing Lummi Nation at least thirty (30) days' notice prior to commencing such activities.

Dated this 15th day of July, 2026.

Kymberly K. Evanson
United States District Judge

ORDER GRANTING IN PART MOTION FOR PRELIMINARY INJUNCTION - 21