ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Gabriel Lopez (FL Bar # 1017629)
Kyle Lyons-Burke (D.C. Bar # 1655452)
Trial Attorney
U.S. Department of Justice
Environment and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-3377
Fax: (202) 305-0275
Gabriel.lopez@usdoj.gov
kyle.lyons-burke@usdoj.gov
*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LUMMI NATION,<br><br>Plaintiff,<br><br>v.<br><br>WHIDBEY TELEPHONE COMPANY, et al.,<br><br>Defendants. | No. 2:26-cv-01435-KKE<br><br>**FEDERAL DEFENDANTS' MOTION TO DISMISS CLAIMS AGAINST DEPARTMENT OF COMMERCE IN PLAINTIFF'S FIRST AMENDED COMPLAINT**<br><br>**NOTE ON MOTION CALENDAR: September 21, 2026** |

## TABLE OF CONTENTS

INTRODUCTION ........ 1

STATEMENT OF FACTS ........ 2

STANDARD OF REVIEW ........ 6

ARGUMENT ........ 7

I. There is No Final Agency Action Because NTIA Has Not Released Any Funds for Project Construction and the Middle Mile Project is Currently Under Environmental Review ........ 7

II. NTIA's Independent Utility Determination Does Not Constitute Final Agency Action and Fails to State a Cognizable Claim ........ 11

CONCLUSION ........ 15


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

## TABLE OF AUTHORITIES

**Cases**

*Ashcroft v. Iqbal*,
556 19 U.S. 662 (2009) .......... 7

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) .......... 7

*Bennett v. Spear*,
520 U.S. 154 (1997) .......... 11

*Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*,
141 F.4th 976 (9th Cir. 2025) .......... 11

*Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*,
36 F.4th 850 (9th Cir. 2022) .......... 7, 9

*Friends of Animals v. U.S. Fish and Wildlife Serv.*,
28 F.4th 19 (9th Cir 2022) .......... 13

*FTC v. Standard Oil Co.*,
449 U.S. 232 (1980) .......... 10, 11

*Great Basin Mine Watch v. Hankins*,
456 F.3d 955 (9th Cir. 2006) .......... 12

*Havasupai Tribe v. Provencio*,
906 F.3d 1155 (9th Cir. 2018) .......... 6

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
511 U.S. 375 (1994) .......... 6

*Marsh v. Or. Nat. Res. Council*,
490 U.S. 360 (1989) .......... 10

*McCarthy v. United States*,
850 F.2d 558 (9th Cir. 1988) .......... 6

*Mendiondo v. Centinela Hosp. Med. Ctr.*,
521 F.3d 1097 (9th Cir. 2008) .......... 7

*Rattlesnake Coal. v. EPA*,
509 F.3d 1095 (9th Cir. 2007) .......... 9

*Safe Air for Everyone v. Meyer*,
373 F.3d 1035 (9th Cir. 2004) .......... 6


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

*San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564 (9th Cir. 2019) .......... 6

*San Luis Food Producers v. United States*, 709 F.3d 798 (9th Cir. 2013) .......... 6

*Savage v. Glendale Union High Sch.*, 343 F.3d 1036 (9th Cir. 2003) .......... 6, 7

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) .......... 6

*Thomas v. Peterson*, 753 F.2d 754 (9th. Cir. 1985) .......... 13

*Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189 (9th Cir. 2025) .......... 8

*White v. Lee*, 227 F.3d 1214 (9th Cir. 2000) .......... 6, 7

**Statutes**

5 U.S.C. § 704 .......... 1, 10, 11

**Rules**

Federal Rule of Civil Procedure 12(b)(1) .......... 6


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

**INTRODUCTION**

The Court lacks jurisdiction over the claims in Plaintiff's First Amended Complaint against the Department of Commerce because Plaintiff challenges no final agency action concerning Point Roberts. Under the Administrative Procedure Act ("APA"), 5 U.S.C. § 704, judicial review is available only for final agency action - action that consummates the agency's decision-making process and determines legal rights or obligations. Here, Commerce has not taken any final agency action with respect to construction activities on Point Roberts. Although Commerce awarded the Middle Mile project to Whidbey Telephone Company ("Whidbey Telecom") in June 2023, that award explicitly withheld federal funding until both National Environmental Policy Act ("NEPA") and National Historic Preservation Act ("NHPA") reviews were completed. Commerce has not approved any construction activities on Point Roberts for the Middle Mile Project. Those reviews are ongoing and no funds have been released. Until those reviews are completed and Commerce releases the withheld funds to Whidbey Telecom, there is no final agency action and this Court lacks jurisdiction over Plaintiff's claims against Commerce in Counts I and III.

Count IV must also be dismissed for lack of subject matter jurisdiction and the failure to state a cognizable claim. Plaintiff argues that the National Telecommunications and Information Administration's ("NTIA") May 23, 2024 approval of Whidbey Telecom's proposal to divide the Middle Mile Project into two phases, the Whidbey Island portion and Point Roberts portion, constitutes a final agency action and effected an unlawful segmentation under NEPA. However,


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

Plaintiff's segmentation theory fails on its face: the Whidbey Island and Point Roberts components have independent utility. Importantly, Plaintiff did not (and cannot) point to any portion of the already approved and funded Whidbey Island construction that is co-dependent on Point Roberts. NTIA's administrative approval of project sequencing neither authorizes ground-disturbing activity nor releases federal funds. It is an intermediate procedural step that anticipates further NEPA and NHPA review, not a final agency action. Thus, Plaintiff challenges solely pre-decisional administrative review, not final agency action. The Point Roberts phase remains unfunded, unapproved, and under active environmental review. Segmentation cannot create jurisdiction where no final agency action exists.

Because Plaintiffs challenge only preliminary and ongoing administrative review with respect to Point Roberts, not any consummated federal decision, there is no final agency action, and this Court lacks jurisdiction over Plaintiff's claims against Commerce. Moreover, because Plaintiff fails to demonstrate that the Whidbey Island portion and the Point Roberts portion of the Middle Mile Project are inseparable parts of a connected action, Plaintiff fails to plead a cognizable claim.

**STATEMENT OF FACTS**

In May 2022, NTIA, a bureau of the Department of Commerce, released a Notice of Funding Opportunity ("NOFO") inviting companies to apply for grants to build broadband infrastructure in underserved communities under the Middle Mile Infrastructure Program. *See* Exhibit 1, Weinstock Decl. ("Weinstock Decl."), Dkt. No. 51-1 ¶ 6. On June 15, 2023, NTIA awarded a Middle Mile grant to Whidbey Telecom

for its project in Whatcom, San Juan, and Island Counties, Washington. *See* Weinstock Decl.¶ 7; *see also* Exhibit 2, Award Document to Whidbey Telecom, Dkt. No. 51-2. The overall project includes 47.6 miles of terrestrial underground fiber cable and 63.1 miles of undersea fiber optic cable. Weinstock Decl. ¶ 7. The project is intended to provide high speed internet to the communities of Point Roberts, members of the Lummi Nation, and the Naval Air Station located on Whidbey Island. *Id.*

NTIA's award conditioned funding on the completion of NEPA review and compliance with the NHPA (except for funds necessary to complete the required reviews). Dkt. No. 51-2 at 4. Specifically, Section 11 of the General Terms and Conditions for the NTIA Middle Mile Grant Program limits the expenditure of federal funds to "engineering, design, permitting and work related to environmental, historical and cultural reviews, and limited, preliminary procurement funds" until the NEPA review is completed. Weinstock Decl. ¶ 8; Dkt. No. 51-2 at 16–19. Federal funds will only be released following "the completion of an environmental review and issuance of a Decision Memo or other document that meets the requirements of the [NEPA]." Weinstock Decl. ¶ 9. Further, Section 11 explicitly provides that:

> For all ground disturbing activities that occur during project implementation in the vicinity of known archaeological sites or suspected or known burials, the Recipient must ensure that an archeologist who meets the Secretary of the Interior's Professional Qualification Standards monitors ground disturbance, and if any potential archeological resources or buried human remains are discovered, then the Recipient must immediately cease construction in that area and notify NTIA and the interested [State Historic Preservation Officer ("SHPO")], [Tribal Historic Preservation Officers]


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

> (THPO), and tribes. Such construction activities may then only continue with the written approval of NTIA.

Dkt. No. 51-2 at 19. Similarly, Section 12 of the General Terms and Conditions withholds federal funds "until the completion of required consultations with the SHPO, and the appropriate Native American Tribes, under Section 106 of NHPA." Weinstock Decl. ¶ 12; Dkt. No. 51-2 at 19–21.

On May 16, 2024, Whidbey Telecom proposed separating the project into two phases. Weinstock Decl., Dkt. No. 51-1 ¶ 15; Exhibit 3, Letter from Whidbey Telecom, Dkt. No. 51-3. On May 23, NTIA approved the proposed separation. Weinstock Decl. ¶ 16. Under Whidbey Telecom's proposal, Phase 1 of the project includes "terrestrial only construction on Whidbey Island," including approximately 25.6 miles of underground fiber optic cable. Dkt. No. 51-3 at 2. Phase 1 does not involve any construction on Point Roberts. Phase 2 of the project includes the installation of a submarine fiber optic cable with landing stations on both Point Roberts and Decatur Island. Weinstock Decl. ¶ 18; Dkt. No. 51-3 at 3. On Point Roberts, Phase 2 involves a beach manhole and 110-meter terrestrial fiber line which will be connected to existing Whidbey Telecom-owned broadband infrastructure. Weinstock Decl. ¶ 18.

On February 18, 2025, NTIA issued a categorical exclusion for Phase 1 of the Point Roberts Middle Mile Infrastructure Project. Exhibit 4, NTIA Decision Memo, Dkt. No. 51-4. This categorical exclusion covered construction of a terrestrial cable system on Whidbey Island. *Id.* at 1. As part of the approval, NTIA applied "special conditions" to minimize impacts to the environment and culturally significant areas. *Id.* at 2. For example, "[t]o avoid any potential impacts to the shell midden site-


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

45IS97," Whidbey Telecom would "install this fiber line segment via horizontal directional drilling." *Id.* Further, Whidbey Telecom was required to "work with the Swinomish Tribal Historic Preservation Office ("THPO") to ensure a Tribal cultural resources monitor will be present during construction." *Id.* Construction on Phase 1 of the project is ongoing. Weinstock Decl. ¶ 23. NTIA's categorical exclusion decision memo did not apply to any portion of Phase 2—the Point Roberts Middle Mile Infrastructure Project involving construction on Point Roberts itself.

NTIA is currently preparing a draft Environmental Assessment ("EA") under NEPA for Phase 2. *Id.* ¶ 25. When that draft is complete, NTIA will publish it for a thirty-day public comment period. *Id.* To date, no funds relating to construction on Point Roberts have been released. *Id.* ¶ 26.

Plaintiff Lummi Nation filed its Complaint on April 27, 2026. Plaintiff filed the operative First Amended Complaint on July 27, 2026. Plaintiff's First Amended Complaint alleges that actions by Whidbey Telecom, funded by the United States Departments of Agriculture and Commerce, caused damage to Lummi Nation "ancestral human remains and associated cultural materials at Point Roberts, Washington." Compl. ("Compl.") ¶ 1, Dkt. No. 1. With respect to Commerce, Plaintiff alleges that NTIA improperly segmented the Middle Mile project and failed to complete project review or consultation with the Lummi Nation within six months before funding construction for the project. *Id.* ¶¶ 55-56, 61-62. Plaintiff further alleges that NTIA provided the first part of the project with NEPA approval on February 18, 2025, and, as the two projects were improperly segmented, NTIA was

required to complete a draft EA or equivalent document no later than six months after the award date with respect to the entire Middle Mile project. Compl. ¶¶ 76-80.

## STANDARD OF REVIEW

Jurisdiction must be established as a threshold matter by the party asserting it, and a case may not proceed until the court has determined that it possesses jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94-95 (1998); *see also Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal Rule of Civil Procedure 12(b)(1) authorizes federal courts to dismiss claims over which they lack subject matter jurisdiction. *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988). For suits under the APA, final agency action is a jurisdictional requirement appropriately analyzed under Rule 12(b)(1) when challenged in a motion to dismiss. *San Francisco Herring Ass'n v. Dep't of the Interior*, 946 F.3d 564, 571 (9th Cir. 2019) ("In this circuit, the final agency action requirement has been treated as jurisdictional."); *see also Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1161 (9th Cir. 2018); *San Luis Food Producers v. United States*, 709 F.3d 798, 801 (9th Cir. 2013).

A Rule 12(b)(1) jurisdictional attack may be facial or factual. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000). "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction." *Id.* In resolving a factual attack on jurisdiction, the district court may review evidence beyond the complaint


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

without converting the motion to dismiss into a motion for summary judgment. *Savage v. Glendale Union High Sch.,* 343 F.3d 1036, 1039 n.2 (9th Cir. 2003) (citing *White*, 227 F.3d at 1242). The court need not presume the truthfulness of the plaintiff's allegations. *White*, 227 F.3d at 1242. "Once the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence properly brought before the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction." *Savage*, 343 F.3d at 1039 n.2 (citation omitted).

With respect to Rule 12(b)(6), "[d]ismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to `state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 19 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## ARGUMENT

### I. There is No Final Agency Action Because NTIA Has Not Released Any Funds for Project Construction and the Middle Mile Project is Currently Under Environmental Review.

This Court lacks subject matter jurisdiction over Plaintiff's claims against Commerce because Plaintiff is not challenging any final agency action by Commerce. Under the APA, Plaintiff may only challenge "final agency action." *See Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 867 (9th Cir. 2022). "For an agency

action to be final, the action must (1) mark the consummation of the agency's decisionmaking process and (2) be one by which rights or obligations have been determined, or from which legal consequences will flow." *Tohono O'odham Nation v. U.S. Dep't of the Interior*, 138 F.4th 1189, 1200 (9th Cir. 2025) (citation modified). Neither of those prongs are satisfied here.

To begin, Plaintiff concedes that NTIA has released construction funds only for Whidbey Island, not Point Roberts. Compl. ¶¶ 40, 80. Plaintiff challenges NTIA's alleged failure to conduct NHPA and NEPA review of the Point Roberts project prior to funding Middle Mile, alleging that the Project will result in injury. *Id.* ¶¶ 215-220, 254-256. But under the APA, judicial review is limited to final agency action. Plaintiff's First Amended Complaint concedes that (1) NTIA approved only the Whidbey Island terrestrial segment in February 2025, Am. Compl. ("Am. Compl.") ¶40; (2) the Point Roberts subsea cable work has not been funded, *id.* ¶¶ 65-66; (3) NTIA has not approved construction on Point Roberts, *id.*; and (4) NTIA has not yet initiated Section 106 consultation under the NHPA for Point Roberts. *Id.* ¶ 132. These concessions are enough for the Court to dismiss the claims against Commerce because they show that Commerce has not yet finally acted as to Point Roberts, as both NHPA and NEPA reviews are forthcoming.

Plaintiff misunderstands both how the Middle Mile project was funded and the current status of the project. Although NTIA awarded a contract to Whidbey Telecom for the Middle Mile project in June 2023, that award was explicitly conditioned on the completion of both NEPA and NHPA reviews. Weinstock Decl. ¶¶ 8, 12; Dkt. No.

51-2 at 4. With respect to the portion of the project concerning Point Roberts, that review is ongoing. *Id.* ¶ 24. No funds for construction on Point Roberts have been released. *Id.* ¶ 26. Therefore, NTIA has not funded the Middle Mile project on Point Roberts and has not authorized any construction on Point Roberts.

The February 2025 decision memo Plaintiff cites involved Phase 1 of the Middle Mile project, which covers construction on Whidbey Island, not on Point Roberts. *Id.* ¶ 19; Dkt. No. 51-4. There is no decision memo with respect to Phase 2 of the Middle Mile project—covering construction on Point Roberts—because both NEPA and NHPA review of Phase 2 is ongoing. *Id.* ¶ 24.

The current status of Phase 2 of the Middle Mile project confirms that there is no final agency action. To wit, the Point Roberts construction portion of the grant is currently undergoing NEPA and NHPA review. Although Federal Defendants acknowledge that "*final* NEPA documents are final agency actions," here Commerce has not even issued *draft* NEPA documents." *Env't Def. Ctr.*, 36 F.4th at 868 (emphasis added). When NTIA completes the draft EA, it will be available for public comment for thirty days. Weinstock Decl. ¶ 25.

Further, no funds have been disbursed to Whidbey Telecom for construction work on Point Roberts. Under the APA, "the [government] does not take a final agency action until it completes its review of the grant application and decides to disburse the appropriated funds." *Rattlesnake Coal. v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007). This is because "[b]efore disbursal of the funds, the [agency] could decide to issue an EA and a FONSI or an EIS." *Id.* Here, no funds related to construction on

Point Roberts have been disbursed. Weinstock Decl. ¶26. To the contrary, that funding has been—and will be—withheld until the completion of both NEPA and NHPA review, which are ongoing. *See* Dkt. No. 51-2 at 4.

Plaintiff's allegations challenge only pre-decisional steps in NTIA's ongoing review. Plaintiff ties its alleged injury to (1) NTIA's alleged failure to meet internal consultation deadlines, Am. Compl. ¶¶ 61–64; (2) NTIA's communications, and alleged failures thereof, with tribes, *id.* ¶ 67; (3) NTIA's alleged failure to provide information, *id.* ¶¶ 126–32; and (4) NTIA's internal deliberations about segmentation, *id.* ¶¶ 40, 79–80. Such "preliminary, procedural, or intermediate agency action," as distinguished from final agency action, is "not directly reviewable" under the APA. 5 U.S.C. § 704; *see FTC v. Standard Oil Co.*, 449 U.S. 232, 244-45 (1980) (discussing APA's treatment of preliminary action); *see also, e.g.*, *Marsh v. Or. Nat. Res. Council*, 490 U.S. 360, 368, 375-78 (1989) (reviewing adequacy of environmental impact statement under NEPA and refusal to supplement it in context of APA challenge under Section 706(2) to "major Federal action" of decision to construct dam).

Likewise, because NTIA has not consummated its decision-making process, has not determined any rights or obligations concerning Point Roberts, and has taken no action with any legal consequences, such as authorizing construction on Point Roberts, Plaintiff's claims are also unripe. Under the NHPA, a "federal undertaking" is defined as a project undertaken by a federal agency through the use of federal funds, permits, or approvals. 36 C.F.R. § 800.16(y). Because the above decisional


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

processes are not complete, no funds have been released. And because no funds have been released, NTIA's actions do not mark the consummation of its decision-making process and produce no legal consequences. *Bennett v. Spear*, 520 U.S. 154, 177-78 (1997). Without funding, approval, permitting, or authorization, NTIA has not consummated its decision-making, and there is no final agency action. Therefore, this Court lacks subject matter jurisdiction over Plaintiff's claims against Commerce.

## II. NTIA's Independent Utility Determination Does Not Constitute Final Agency Action and Fails to State a Cognizable Claim

Plaintiff attempts to manufacture jurisdiction by asserting that NTIA's May 23, 2024 approval of Whidbey Telecom's proposal to subdivide the Middle Mile project into two phases constitutes "final agency action." It does not. An independent utility determination is an internal administrative step that merely organizes the order in which NTIA will conduct review of discrete components. It does not authorize construction, commit federal resources, determine rights, or produce legal consequences. NTIA approved Phase 1 for Whidbey Island only; it did not approve Phase 2 or any activity at Point Roberts and did not release any funds for Phase 2. Such intermediate administrative decisions—particularly those that expressly anticipate future NEPA and NHPA review—cannot be "final agency action." 5 U.S.C. § 704; *FTC*, 449 U.S. at 244-45 (1980). Indeed, NEPA "segmentation" challenges are levied at final NEPA decisions, alleging that an agency's NEPA review and resulting decision were arbitrary and capricious for improperly segmenting, and thus not reviewing, the impacts of actions that should have been considered collectively. *See, e.g.*, *Ctr. for Biological Diversity v. U.S. Bureau of Land Mgmt.*, 141 F.4th 976, 996


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

(9th Cir. 2025). Here, NTIA has not finished its NEPA review as to Point Roberts and has issued no decision, so any "segmentation" claim is still premature and does not provide this Court jurisdiction. NTIA must be allowed to finish its decision-making process before Plaintiff can sue and before this Court has jurisdiction.

Even if the Court determines that NTIA's subdividing of Whidbey Telecom's Middle Mile project into two phases constitutes final agency action, Plaintiff's NEPA segmentation argument fails to state a claim under Rule 12(b)(6) because NEPA prohibits subdivision only when project components are inseparable. Courts allow the subdivision of projects where each portion "has substantial independent utility"; where "each of two projects would have taken place with or without the other . . . [or] might reasonably have been completed without the existence of the other, the two projects have independent utility and are not connected for NEPA purposes." *Great Basin Mine Watch v. Hankins*, 456 F.3d 955, 969 (9th Cir. 2006) (citation modified). Plaintiff's segmentation theory improperly treats the anticipated subsea cable and Point Roberts work as if they were approved project components of the Whidbey Island work and are therefore inseparable, but they are not.

Plaintiff alleges that NTIA's May 23, 2024 decision to permit the subdivision of the Middle Mile project between the Whidbey Island terrestrial construction and the Point Roberts submarine cable are connected actions and therefore are reviewable by this Court. Am. Compl. ¶¶ 261-62. However, as Plaintiff ultimately concedes, an April 2, 2024 Federal Register notice by NTIA regarding its NEPA procedures acknowledges that subdividing projects under NEPA is permissible when proposed

projects can operate independently of one another. *Id.* ¶ 188. Plaintiff repeatedly declares that the Middle Mile project is "a single integrated broadband system." *Id.* ¶¶ 39, 259–65. But Plaintiff's bald assertions do not address the relevant legal question: whether distinct phases of the Middle Mile project can operate independently and thus may be subdivided for purposes of NEPA review. *See Thomas v. Peterson*, 753 F.2d 754, 759-60 (9th. Cir. 1985) ("'[I]ndependent utility' means utility such that the agency might reasonably consider constructing only the segment in question.").

Here, Plaintiff's First Amended Complaint, and the exhibits incorporated and reference therein, makes clear that (1) the Whidbey Island portion of the Middle Mile project, Phase 1, is fully functional on its own, Weinstock Decl., Dkt. No. 51-1 ¶¶ 15-19; Letter from Whidbey Telecom, Dkt. No. 51-3, Dkt. No. 51-3, at 2-4 (2) the Whidbey Island portion does not trigger or depend upon the Point Roberts portion, Phase 2, *id.*; (3) Phase 2 is technically distinct and currently unfunded and unapproved, *id.*; and (4) Lummi Nation had an opportunity to comment on Phase 1 of the project on December 23, 2024, but chose not to do so, Weinstock Decl., Dkt. No. 51-1 ¶¶ 20-21.

Instead, Plaintiff argues that the Whidbey Island and Point Roberts construction projects are connected actions that must be analyzed under NEPA together. *E.g.*, Am. Compl. ¶ 186 (citing Council on Environmental Quality (CEQ) regulations implementing NEPA that have been rescinded. *See generally* 91 Fed. Reg. 618 (Jan. 8, 2026)); *see also Friends of Animals v. U.S. Fish and Wildlife Serv.*, 28 F.4th 19, 34–35 (9th Cir 2022). Plaintiff's analysis fails because Phases 1 and 2 of the


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

Middle Mile project each have independent utility. Nothing about the Whidbey Island construction “automatically triggers” a review of Point Roberts (Phase 2), and Point Roberts will eventually be subject to its own NEPA and NHPA approval process. Weinstock Decl., Dkt. No. 51-1 ¶¶ 15-19; Letter from Whidbey Telecom, Dkt. No. 51-3, Dkt. No. 51-3. Plaintiff does not, and cannot, point to any component of the Whidbey Island system that depends on any Point Roberts component for operation, funding eligibility, or justification. Nor does Plaintiff include any factual support for their assertion that the two Projects are connected actions. When the Whidbey Island system is operational, it will provide benefits to those individuals on Whidbey Island. Weinstock Decl., Dkt. No. 51-1 ¶¶ 15-19; Letter from Whidbey Telecom, Dkt. No. 51-3, Dkt. No. 51-3.

NTIA’s internal approval of a request to divide the project into two phases—an intermediate administrative step with no environmental consequences—does not constitute the “final agency action” necessary for APA jurisdiction. Plaintiff’s theory misreads NEPA, misconstrues NTIA’s own guidance, and improperly seeks to convert an unfunded, unreviewed conceptual expansion into a connected federal action. Plaintiff has failed to plead any final agency action undertaken by NTIA. Thus, this Court lacks subject matter jurisdiction over Plaintiff’s claims against Commerce.

Moreover, NEPA’s connected-actions doctrine applies only when project components are interdependent, inseparable, or lack independent utility. Because NEPA permits segmentation when components have independent utility and no irreversible commitment of resources has occurred, and Plaintiff has not provided any


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

factual support for their bald assertion that the two Projects are connected actions, Plaintiff fails to state a claim under Count IV.

**CONCLUSION**

For the foregoing reasons, the Court should dismiss Plaintiff's claims against the Department of Commerce.

Respectfully submitted this 24th day of August, 2026.

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Gabriel Lopez*
GABRIEL LOPEZ
Trial Attorney
Natural Resources Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
(202) 598-3377
Gabriel.lopez2@usdoj.gov