UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LUMMI NATION,

Plaintiff,

vs.

WHIDBEY TELEPHONE COMPANY, et al.,

Defendants.

Case No. 2:26-cv-01435-KKE

**PLAINTIFF'S RESPONSE IN OPPOSITION TO FEDERAL DEFENDANTS' MOTION TO DISMISS**

## I. INTRODUCTION

In June 2023, the National Telecommunications and Information Administration ("NTIA") awarded $11,782,208.20 to Whidbey Telephone Company d/b/a Whidbey Telecom ("Whidbey Telecom") to develop the Middle Mile Infrastructure Project ("Middle Mile")—a single, integrated broadband system including 47.6 miles of terrestrial underground fiber cable and 63.1 miles of undersea fiber optic cable connecting Whidbey Island, San Juan Islands, and Point Roberts as a unified project. Dkt. #51-1 ¶ 7. NTIA attached binding conditions to that award, requiring the completion of National Historic Preservation Act ("NHPA") Section 106 consultation with Plaintiff Lummi Nation (or, the "Nation") before releasing any construction funds and within six months of the grant's date of execution, July 31, 2023. Dkt. #51-2 at 16–21. NTIA has never fulfilled these requirements, and it has also never fulfilled its responsibilities under the National Environmental Policy Act ("NEPA") with respect to Middle Mile. Without proper notice or advanced engagement with Lummi Nation, project activities for Middle Mile at Point Roberts have already resulted in the disturbance—and permanent loss—of a cranial fragment in close proximity to known Lummi burial grounds. Dkt. #56 ¶¶ 38, 113.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Federal Defendants[1] now move this Court to dismiss Plaintiff's claims against NTIA on grounds that the Court lacks subject matter jurisdiction. Their argument depends on two premises: 1) following NTIA's decision to segment Middle Mile, any agency action with respect to Point Roberts is not yet "final," because NTIA has not distributed funds for construction work to begin at this specific location; and 2) because subject matter jurisdiction only arises under the Administrative Procedure Act ("APA") following "final" agency action, the claims against NTIA should be dismissed. This argument mischaracterizes what counts as final agency action, the status of Middle Mile's review and consultation, and Lummi Nation's overall interests with respect to the project. The Motion to Dismiss ("Motion") should be denied.

The Motion, in fact, fails for five independent reasons. First, dismissal under Federal Rule of Civil Procedure ("Rule") 12(b)(1) is premature, because it would require the Court to resolve certain disputed facts that go to both jurisdictional and merits issues. "Where the jurisdictional issue and the substantive issue are so intertwined that the question of jurisdiction is dependent on factual issues going to the merits, the jurisdictional determination should await a determination of the relevant facts on either a motion going to the merits or at trial." *Young v. United States*, 769 F.3d 1047, 1052–53 (9th Cir. 2014). Here, the jurisdictional and substantive issues cannot be resolved without a resolution of disputed facts that go to the merits of the case. Dismissal under Rule 12(b)(1) is inappropriate.

---

[1] While the Motion to Dismiss is styled as a motion by "Federal Defendants," only the Department of Commerce seeks relief. Accordingly, Plaintiff anticipates the "Federal Defendants" will file an Answer to the First Amended Complaint as to the Department of Agriculture in due course. Plaintiff reserves the right to contest such filing on grounds including, but not limited to, its timeliness.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Second, NTIA's May 2024 decision approving Whidbey Telecom's proposal to segment Middle Mile is itself final agency action subject to this Court's jurisdiction. The decision satisfies both prongs of the finality test established in *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997): it consummated NTIA's decisionmaking about the structure of NEPA and NHPA review for the entire project and produced immediate, concrete legal consequences for Whidbey Telecom, Lummi Nation's Section 106 consultation rights, and the feasibility of ever conducting unified environmental review of Middle Mile as a whole.

Third, NTIA took at least four additional final agency actions that are independently reviewable by this Court: the February 2025 categorical exclusion, the release of construction funds for Middle Mile's purported first phase, the release of limited NHPA/NEPA review funds for the project's purported second phase, and the initial June 2023 multi-million-dollar grant award from NTIA to Whidbey Telecom. *See* Dkt. #56 ¶¶ 38–39, 66–67, 80; Weinstock Decl., Dkt. #-51-1 ¶ 8.

Fourth, NTIA's failure to complete Section 106 consultation within the six-month deadline its own grant conditions established is independently reviewable under 5 U.S.C. § 706(1) as agency action unreasonably withheld and unreasonably delayed—a theory Federal Defendants' Motion does not address at all.

Finally, dismissal of the Nation's claims before NTIA produces the administrative record would be premature, in part, because courts can only evaluate segmentation decisions on the basis of an administrative record. NTIA claims its approval followed an "independent utility analysis[,]" Dkt. #51-1 ¶ 16, but that analysis is not in the record before this Court. The Amended Complaint plausibly alleges Middle Mile's segments lack independent utility: NTIA awarded the grant for a unified broadband system, the project's terrestrial fiber physically



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

terminates at the submarine cable landing station at Point Roberts, and the Whidbey Island construction alone does not accomplish Middle Mile's stated purpose of bringing broadband service to Point Roberts and surrounding communities. Dkt. #56 ¶¶ 39, 64, 79.

The Court should, therefore, deny the Motion and, in the alternative, invoke its authority under 5 U.S.C. § 705 to stay any authorization of further ground-disturbing activities for Middle Mile pending resolution of this litigation.

## II. STATEMENT OF FACTS

In June 2023, NTIA granted Whidbey Telecom $11,782,208.20 to develop Middle Mile, a broadband project designed to reach the underserved communities of Point Roberts, Lummi Nation, and surrounding areas. Dkt. #56 ¶¶ 39, 64; Dkt. #51-1 ¶ 7. From Middle Mile's inception, project plans included a submarine cable running from nearby islands, including Whidbey Island, to a landing site at Point Roberts. Dkt. #56 ¶ 65. The entirety of the project route runs through Lummi Nation's ancestral territory—the very lands and waters where the Nation stewards its rights reserved for fishing, hunting, and gathering by the 1855 Treaty of Point Elliott, as well as significant cultural resources, landscapes, burial sites, and historic properties.[2] *Id.* ¶¶ 28–29.

Before Whidbey Telecom received this federal grant, the company trenched through approximately 3,100 feet (about twice the height of the Empire State Building) of recorded Lummi burial grounds at Point Roberts during the course of work for two other broadband

---

[2] Because of the trust relationship between the United States and Lummi Nation, the federal government has an obligation to consider the impact of any of its discretionary actions on these treaty-reserved rights. *See Seminole Nation v. United States*, 316 U.S. 286, 296–97 (1942); *Parravano v. Babbitt*, 70 F.3d 539, 546 (9th Cir. 1995); *Nw. Sea Farms, Inc. v. U.S. Army Corps of Eng'rs*, 931 F. Supp. 1515, 1520 (W.D. Wash. 1996) (holding that the Corps' fiduciary duty to Lummi Nation "mandates that the Corps take treaty rights into consideration" in its permitting decisions).



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

projects funded by the United States Department of Agriculture ("USDA"). *Id.* ¶¶ 30–38. In April 2023, after the intervention of a third party who saw Whidbey Telecom's trenching for one of these projects, the USDA-funded Community Connect project, the Washington State Historic Preservation Officer ("SHPO") imposed a stop-work order and alerted federal, state, local, and Tribal officials about Whidbey Telecom's disturbance of the known archaeological site. *Id.* ¶¶ 101, 118. While full project construction for Middle Mile has not begun at Point Roberts, survey activities for the project occurred in November 2025, displacing and permanently losing a cranial fragment in close proximity to another archaeological site and known Lummi burial ground damaged by Whidbey Telecom, this time for the USDA-funded ReConnect project. *Id.* ¶¶ 65, 113, 115. These Middle Mile project activities occurred without any prior engagement with Lummi Nation by NTIA—and after Whidbey Telecom's subconsultant provided the Nation with only three days' notice before prior to beginning work at Point Roberts. *Id.* ¶ 38.

Middle Mile's General Terms and Conditions withheld all construction funds until completion of Section 106 consultation with the SHPO and appropriate Native American Tribes. Dkt. #51-2 at 16–21. These obligations attached on July 31, 2023, the grant's execution date, and also required completion of Section 106 consultation within six months of that date. Dkt. #56 ¶¶ 39, 61. NTIA did not consult with Lummi Nation during this six-month period. *Id.* ¶ 62. Nearly one year after NTIA awarded the grant, Whidbey Telecom requested NTIA's approval of its proposal to segment Middle Mile: segment one covering terrestrial construction on Whidbey Island ("Segment 1") and segment two covering the submarine cable and Point Roberts landing infrastructure ("Segment 2"). *Id.* ¶ 79. NTIA approved that request on May 23, 2024, after only four business days, an impossibly brief period in which to undertake the



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

required analysis and deliberation. *Id.* Moreover, NTIA made this decision just one month after publicly stating in the Federal Register that it is "unlawful" for NTIA to "evade [its] responsibilities under NEPA by artificially dividing a major Federal action into smaller components[.]" National Environmental Policy Act Procedures and Categorical Exclusions, 89 Fed. Reg. 22,688, 22,691 (Apr. 2, 2024).

Following its improper segmentation, on February 18, 2025, NTIA issued a NEPA Decision Memorandum categorically excluding Segment 1 from further NEPA review. Dkt. #56 ¶ 80. Whidbey Telecom then began construction on Segment 1 in late November and early December 2025, triggering a release of construction funds before any consultation with Lummi Nation occurred. *Id.* ¶¶ 38, 80. Meanwhile, in November 2025, Whidbey Telecom's subcontractor began the Middle Mile project activities at Point Roberts that disturbed and led to the permanent loss of a human cranial fragment. *Id.* ¶¶ 38, 113, 115. NTIA has still not completed Section 106 consultation with Lummi Nation for either segment of the project. *Id.* ¶ 132.

## <u>III. STANDARD OF REVIEW</u>

To establish subject matter jurisdiction, "a plaintiff needs to provide only 'a short and plain statement of the grounds for the court's jurisdiction.'" *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). A complaint survives dismissal if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). All reasonable inferences must be drawn in the plaintiff's favor. *Twombly*, 550 U.S. at 555–56.

Dismissal under Rule 12(b)(6) is appropriate only where the complaint "lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v.*



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

*Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). Dismissal under Rule 12(b)(1) is appropriate where a court lacks subject matter jurisdiction. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94–95 (1998).

Under Rule 12(b)(1), Defendants can make either a facial or factual attack on jurisdiction. *White v. Lee*, 227 F.3d 1214, 1242 (9th Cir. 2000); *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004). A facial attack "accepts the truth of the plaintiff's allegations but asserts that they 'are insufficient on their face to invoke federal jurisdiction.'" *Leite*, 749 F.3d at 1121 (quoting *Safe Air*, 373 F.3d at 1039). A trial court "resolves a facial attack as it would a motion to dismiss under Rule 12(b)(6): Accepting the plaintiff's allegations as true and drawing all reasonable inferences in the plaintiff's favor, the court determines whether the allegations are sufficient as a legal matter to invoke the court's jurisdiction." *Leite*, 749 F.3d at 1121 (citing *Pride v. Correa*, 719 F.3d 1130, 1133 (9th Cir. 2013)). A factual attack "contests the truth of the plaintiff's factual allegations, usually by introducing evidence outside the pleadings." *Leite*, 749 F.3d at 1121. To resolve a factual attack, the court may consider evidence beyond the complaint, and the "plaintiff bears the burden of proving by a preponderance of the evidence that each of the requirements for subject-matter jurisdiction has been met." *Id.*; *see also White*, 227 F.3d at 1242; *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). Courts, however, should not convert facial Rule 12(b)(1) attacks to factual attacks and apply this heightened standard where the defendant's argument boils down to an attack merely on the sufficiency of the plaintiff's factual allegations.

Moreover, when the jurisdictional question depends on resolving factual issues that go to the merits of the action—in other words, when the jurisdictional facts and merits facts are intertwined—the Ninth Circuit has determined dismissal under Rule 12(b)(1) premature.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

*Augustine v. United States*, 704 F.2d 1074, 1077 (1983); *Mecinas v. Hobbs*, 30 F.4th 890, 896 (2022). Where intertwining exists, the court may not resolve genuinely disputed facts on a 12(b)(1) motion; instead, the jurisdictional determination must await a determination of the relevant facts on a motion going to the merits or at trial. *Augustine*, 704 F.2d at 1077; *Safe Air for Everyone*, 373 F.3d at 1039–40. When intertwined jurisdictional and merits issues are present, the court must apply "the standard applicable to a motion of summary judgment because resolution of those jurisdictional facts is akin to a decision on the merits." *Young*, 769 F.3d at 1052 (citation modified). Material factual disputes cannot be resolved against the plaintiff, and the motion may succeed only if the jurisdictional facts are undisputed, and the defendant is entitled to judgment as a matter of law. *Id*. Dismissal is warranted only where the plaintiff's allegations are "immaterial," "made solely for the purpose of obtaining jurisdiction," or "wholly insubstantial and frivolous." *Bell v. Hood*, 327 U.S. 678, 682–83 (1946).

## IV. ARGUMENT

### A. Federal Defendants' Factual Jurisdictional Challenge Is Intertwined with the Merits and Cannot Be Resolved on a Rule 12(b)(1) Motion.

Federal Defendants' 12(b)(1) Motion cannot succeed, because the jurisdictional issues they contest are dependent on—and therefore intertwined with—the merits of Lummi Nation's claims. The Ninth Circuit's test asks whether the court can decide jurisdiction without resolving factual issues that also determine the plaintiff's entitlement to relief. *Bowen v. Energizer Holdings, Inc.*, 118 F.4th 1134, 1143 (9th Cir. 2024). Here, the disputed facts include: 1) whether the Whidbey Island and Point Roberts portions of Middle Mile are connected actions, Dkt. #61 at 17; 2) whether NTIA coordinated with the Nation's Tribal Historic Preservation Officer ("THPO") for Segment 1 of the project, Dkt. #51-1 ¶ 21; 3) whether "Lummi Nation



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

had an opportunity to comment on [Segment 1] of [Middle Mile] on December 23, 2024," Dkt. #61 at 17; and 4) whether NTIA delayed or withheld NEPA or NHPA review, including required consultation with Lummi Nation, for Middle Mile, Exhibit 1, Second Decl. of Lena Tso ("Second Tso Decl.") ¶¶ 6–10. Each of these disputed facts bear on this Court's jurisdiction to review NTIA's final agency action and to questions concerning the merits of those actions under NEPA and NHPA. These questions remain fundamentally intertwined, and the Court's determination on jurisdiction, therefore, cannot proceed without a decision on the merits of Lummi Nation's claims. *Young*, 769 F.3d at 1052; *Augustine*, 704 F.2d at 1077.

Plainly stated, these disputed facts concern whether this Court has jurisdiction to review NTIA's segmentation approval as final agency action, as well whether the agency's subsequent actions with respect to Segment 1 of Middle Mile, including issuing a NEPA Decision Memo for this segment, are also final agency actions subject to this Court's judicial review. These are jurisdictional questions. Yet, these facts also go the merits, including whether segmentation of Middle Mile was lawful under NEPA. They also concern the question of whether, because of this decision, NTIA violated its own grant conditions by releasing construction funds for Segment 1 before completing NEPA and NHPA review for the entirety of the project. And they go to whether NTIA provided Lummi Nation with adequate notice and opportunity to consult on Segment 1, as well as whether NTIA has unlawfully withheld and unreasonably delayed consultation for Segment 2 of Middle Mile. Federal Defendants are using Rule 12(b)(1) to obtain a factual merits determination without the procedural protections governing merits adjudication; the intertwining doctrine exists precisely to prevent that outcome. *Bowen*, 118 F.4th at 1143; *Young*, 769 F.3d at 1052.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

### B. This Court Has Subject Matter Jurisdiction to Review NTIA's May 2024 Independent Utility Determination Approving Middle Mile's Segmentation, as well as its Multiple Other Final Agency Actions.

NTIA's May 2024 Independent Utility Determination ("IUD") to segment Middle Mile's NEPA review constitutes reviewable final agency action under 5 U.S.C. § 704. Dkt. #56 at ¶ 79. The IUD satisfies both prongs of the finality test established by the Supreme Court in *Bennett v. Spear.* "As a general matter, two conditions must be satisfied for agency action to be 'final': First, the action must mark the 'consummation' of the agency's decisionmaking process—it must not be of a merely tentative or interlocutory nature. And second, the action must be one by which 'rights or obligations have been determined,' or from which 'legal consequences will flow,'" 520 U.S. at 177–78 (internal citations omitted). Here, the IUD consummated NTIA's decisionmaking about the structure of permitting review for the entire project and produced immediate legal consequences for Whidbey Telecom, for the scope of Lummi Nation's consultation rights, and for the feasibility of conducting unified NEPA and NHPA review of the project as a whole.

This segmentation approval also led to multiple subsequent decisions subject to judicial review, all of which constitute final agency actions under 5 U.S.C. § 704. "At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we 'presume that general allegations embrace those specific facts that are necessary to support the claim.'" *Bennett*, 520 U.S. at 168 (internal citations omitted). These actions include: 1) the categorical exclusion of Middle Mile's Segment 1 from NEPA review, *see* Dkt. #56 ¶ 80; 2) the release of construction funds for Segment 1, *id.* ¶¶ 66–67; 3) the release of limited federal funds for NEPA and NHPA review of Segment 2, *id.* #56 ¶¶ 38–39, 80; Dkt. #51-1 ¶ 8; and 4) the initial award of $11,782,208.20 in federal dollars to Whidbey



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Telecom to undertake Middle Mile, Dkt. #51-1 ¶ 7. Each of these actions satisfy the *Bennett* test, providing the Court with multiple additional final agency actions subject to its jurisdiction and review. 520 U.S. at 177–78.

Federal Defendants rely on one case, *Rattlesnake Coalition v. Environmental Protection Agency*, 509 F.3d 1095, 1104 (9th Cir. 2007), for the proposition that an agency does not take final action "until it completes its review of the grant application and decides to disburse the appropriated funds," and that "[b]efore disbursal of the funds, the [agency] could decide to issue an EA and a FONSI or an EIS." Dkt. #61 at 13 (quoting *Rattlesnake Coal.,* 509 F.3d at 1104). But that case is readily distinguishable from Middle Mile's circumstances. In *Rattlesnake Coalition*, Congress appropriated $500,000 earmarked for the Rattlesnake Sewer Project, and while the project proponent submitted a grant application, the agency had not reviewed the application, selected a recipient, awarded any funds, or conducted any NEPA review. *Rattlesnake Coal.*, 509 F.3d at 1099, 1103–04. The court held that a congressional appropriation earmark alone—before the agency has taken any action to review or approve the application or award the federal funds—is not final agency action. *Id*. Here, NTIA reviewed Whidbey Telecom's competitive application; selected it from among applicants; awarded the $11,782,208.20 grant; executed the grant agreement; imposed binding legal obligations through Sections 11 and 12 of the General Terms and Conditions; released NHPA and NEPA review funds; and issued a final NEPA decision, released construction funds, and authorized active construction for Segment 1. Dkt. # 56 ¶¶ 39, 80, 128; Dkt. #51-1 ¶ 7. With its own actions, NTIA has advanced Middle Mile much further than the stage at which the court considered the project in *Rattlesnake Coalition*; the federal funds have been awarded to Whidbey Telecom for



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

a specific project, and that project—including its permitting review, funding, and construction—is well underway.

Federal Defendants' argument also misreads why the *Rattlesnake Coalition* court found no final action. The court reasoned that finality had not attached, because, before any disbursement, the agency could still "decide to issue an EA and a FONSI or an EIS." 509 F.3d at 1104. That reasoning applied, because the agency had not taken any NEPA action at all, and its decisionmaking was genuinely open. Here, NTIA's NEPA decisionmaking for Middle Mile is closed. NTIA issued a NEPA Decision Memo for Middle Mile's Segment 1 in February 2025. Dkt. #61 at 9. Under Federal Defendants' reading, NTIA could approve an unlawful segmentation, issue a categorical exclusion, begin construction on one segment of the project, authorize project activities near known Lummi burial grounds with three days' notice to the Nation, permanently lose a human cranial fragment, and still face no APA review, because it has not disbursed construction funds for Segment 2. *Rattlesnake Coalition* does not require that result, and this Court should not impose it.

<u>1. NTIA's segmentation approval constitutes final agency action.</u>

For nearly a year—from June 2023, when NTIA awarded $11,782,208.20 to Whidbey Telecom, to May, 23, 2024, when NTIA segmented the project—NTIA and Whidbey Telecom planned Middle Mile as a single, integrated undertaking requiring comprehensive NEPA and NHPA review before any construction funds could be released. Dkt. #56 ¶¶ 39–40, 79–80; Dkt. #51-1 ¶ 7. But after NTIA approved segmentation on May 23, 2024, NTIA and Whidbey Telecom began treating Middle Mile as two discrete projects with separate NEPA and NHPA review pathways and subject to different timelines. Dkt. #56 ¶¶ 79–80; *see id.* ¶ 66. Federal Defendants characterize this decision as "an internal administrative step." Dkt. #61 at 15. But



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

the *Bennett* test does not concern whether an agency decision is merely administrative or internal; it weighs the decision's finality and the legal consequences, rights, and obligations that flow from that decision. 520 U.S. 154 at 177–78. NTIA's decision to segment Middle Mile satisfies both prongs of this test for determining final agency action. *Id.*

First, the decision to segment the project concluded the agency's internal review. *Id.* Federal Defendants concede that NTIA made an IUD. Dkt. #61 at 6, 17–18; Dkt. #51-1 ¶ 16. This decision, which NTIA did not revisit or reverse, occurred only four business days after Whidbey Telecom requested segmentation. Dkt. #56 ¶ 79. This approval consummated the agency's decisionmaking process, dictating how both Whidbey Telecom and NTIA proceeded in the development of Middle Mile from that point forward. Neither "tentative [nor] interlocutory," this approval concluded the agency's deliberation over how the project would undergo permitting review. *Bennett*, 520 U.S. at 178.

As to *Bennett*'s second prong, Middle Mile's segmentation dictated the way NTIA and Whidbey Telecom proceeded with review, consultation, construction timelines, funding, and other decisions for each of the project's segments. Multiple legal consequences flowed from NTIA's May 2024 approval. 520 U.S. at 177–78. These legal consequences include, but are not limited to: 1) the decision authorized Whidbey Telecom to begin construction on Segment 1 of Middle Mile; 2) the approval irreversibly committed federal resources to the project, as NTIA began releasing construction funds to begin that construction on Segment 1 and to proceed with other project activities; 3) segmentation split NEPA review into two separate processes, proceeding on different timelines, and with different potential outcomes (categorical exclusion, finding of no significant effects, or proceeding with an environmental assessment or environmental impact statement); and 4) the decision to segment Middle Mile bifurcated



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Section 106 consultation for the project into two separate processes, delaying and withholding consultation with Lummi Nation when the Nation had a right to consult on the full, unified project. Dkt. #56 ¶ 80.

The consequences of NTIA's segmenting decision further reinforce its finality. For example, once Whidbey Telecom began constructing 25.6 miles of terrestrial fiber on Whidbey Island, the feasibility of requiring a unified NEPA review of the whole project diminished substantially. *See* Dkt. #61 at 8. This irreversible—and ultimately, reductive—approach to project review constitutes precisely the agency action that the anti-segmentation doctrine exists to prevent. *See Thomas v. Peterson*, 753 F.2d 754, 758 (9th Cir. 1985) (finding "connected actions" under NEPA must be considered in a single EIS). Similarly, the approval established the framework for NTIA's enforcement of Lummi Nation's Section 106 rights. Before segmentation, Lummi Nation was entitled to Section 106 consultation on the full, unified project's Area of Potential Effects ("APE"). *See* Dkt. #56 ¶¶ 61, 63, 80. Yet, segmentation altered and significantly reduced the definition of that APE, thereby reducing the Nation's access to information about Middle Mile's impacts from end to end. *See* 36 C.F.R. § 800.16(d).[3]

Segmentation also obscured what the project plans themselves reflected: Middle Mile's route ran straight through the Nation's treaty-protected waters to land either directly within or in close proximity to either 45WH560 or 45WH525, both archaeological sites Whidbey Telecom had already disturbed for other federally-funded projects. Dkt. #56 ¶¶ 30, 65, 147. Rather than

---

[3] The Advisory Council on Historic Preservation's regulations define APE for purposes of Section 106 consultation as "the geographic area or areas within which an undertaking may directly or indirectly cause alterations in the character or use of historic properties…The area of potential effects is influenced by the scale and nature of an undertaking and may be different for different kinds of effects caused by the undertaking." 36 C.F.R. § 800.16(d). The definition of the APE should, therefore match the scale and nature of the undertaking as a whole, and it should capture all potential direct or indirect effects posed by a project.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

provide the Nation with the opportunity for good faith consultation by providing up-front information about the entirety of the project route, the Nation instead received only three days' notice about Middle Mile's project activities in close proximity to 45WH525. *Id.* ¶ 38. That notice came from Whidbey Telecom's subcontractor, not from NTIA. Decl. of L. Tso, Dkt. #12-2 ¶ 23. Predictably, those project activities resulted in the disturbance and loss of a cranial fragment. Dkt. #56 ¶ 113. Even still, NTIA has yet to complete Section 106 consultation with the Nation for *any* aspect of Middle Mile. *Id.* ¶ 132. In short, because of the finality of segmentation and its consequences for how NTIA treated its obligations to Lummi Nation in the project's review process going forward, the segmentation approval is final agency action subject to this Court's judicial review.

Moreover, Federal Defendants identify no authority for the proposition that a written decision approving project segmentation, such as what NTIA issued on May 23, 2024, does not constitute reviewable final agency action. The only case they cite discussing a challenge to segmentation, Dkt. #61 at 15, is *Center for Biological Diversity v. U.S. Bureau of Land Management*, 141 F.4th 976, 996 (9th Cir. 2025), in which the plaintiffs challenging an environmental impact statement ("EIS") concurrently challenge an earlier segmentation decision. Dkt. #61 at 15–16. However, in that case, the Ninth Circuit did not hold that BLM's segmentation decision *could not* have been challenged prior to issuance of the final EIS. Indeed, Federal Defendants do not cite any authority for the proposition that segmentation decisions do not constitute final agency action in their own right, nor is the Nation aware of any such authority. The 2024 segmentation decision constitutes final agency action under the test set forth in *Bennett v. Spear*, which is sufficient for the Court to deny the Motion and consider, on an administrative record, whether the segmentation decision was proper.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Even if the Court agrees with Federal Defendants that a segmentation decision on its own may not be final agency action, the government here has issued what is unquestionably a "final NEPA decision," *see* Dkt. #61 at 15, rendering immediate judicial review of the segmentation decision appropriate even under the government's own theory. *Env't Def. Ctr. v. Bureau of Ocean Energy Mgmt.*, 36 F.4th 850, 868 (9th Cir. 2025). Namely, as the government acknowledges, Dkt. #61 at 8, NTIA issued a categorical exclusion for Segment 1 on February 18, 2025. Categorical exclusions are final NEPA decisions. *Id.* (citing *Friedman Bros. Inv. Co. v. Lewis*, 676 F.2d 1317, 1318 (9th Cir. 1982) (holding that an agency's decision that a project qualified for a categorical exclusion "is 'final' in that it is the culmination of the agency's administrative procedures and will not be reconsidered at any later date"); *see also Ctr. for Sierra Nevada Conservation v. Berry*, No. S-02-325 LKK/JFM, 2005 U.S. Dist. LEXIS 55330, at *31 (E.D. Cal. Feb. 15, 2005) (explaining that "the Ninth Circuit routinely reviews Categorical Exclusion decisions as final agency decisions under the APA" and citing relevant Ninth Circuit case law). Therefore, the 2025 categorical exclusion provides exactly the "final NEPA decision" the government maintains is necessary for the Court to review the segmentation decision. This Court need not, and should not, wait.

2. <u>This Court Has Jurisdiction to Review Four Additional Final Agency Actions NTIA Completed for Middle Mile.</u>

As an important consequence of NTIA's decision to segment Middle Mile, NTIA has made and implemented at least four additional final agency actions that are independently reviewable by this Court. Federal Defendants attempt to elude review of these subsequent actions by arguing that none of the actions it has taken with respect to Segment 1 have any bearing on Segment 2—or, by extension, Lummi Nation. Dkt. #61 at 12–14. This premise



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

cannot hold, in part, because it perpetuates a fiction that permitting, construction, and funding of one segment does not then dictate—or even relate to—the permitting, construction, and funding of another segment of the project. 89 Fed. Reg. at 22,691 (stating that "until an agency issues a NEPA determination for the single project, any action taken for component parts would limit the choice of reasonable alternatives and could prejudice the ultimate NEPA decision"). Further, this premise falsely assumes that Lummi Nation did not have any interest in consultation concerning any aspects of the project other than those operating directly at Point Roberts. Yet, because of the segmentation decision, NTIA failed to provide Lummi Nation with any opportunity to consult regarding the entirety of the project as a unified whole and as the June 2023 grant award to Whidbey Telecom described the project. That original project description "proposed construction on a single integrated broadband system connecting Whidbey Island, the San Juan Islands, and Point Roberts." Dkt. #56 ¶ 39. Lummi Nation's ancestral territory and treaty-protected usual and accustomed fishing places run between exactly these locations and across their surrounding waters. *Id.* ¶¶ 20, 28–29. Each one of the decisions related to Segment 1 of Middle Mile impacted Lummi Nation's interests, if only for their domino effect on later actions related to Segment 2, including timing of construction, funding, and consultation.

Finally, Federal Defendants conflate the absence of construction funding for Segment 2 with the absence of final agency action. Dkt. #61 at 12. As the Nation argues *infra*, because NTIA improperly segmented Middle Mile, NTIA never should have separated components of the project for purposes of funding in the first place, particularly to avoid triggering review obligations under NEPA or NHPA for certain segments of the project. And NTIA's own Middle Mile grant conditions tie the release of construction funds to a requirement to complete all Section 106 consultation for the project, not to final agency action. In short, NTIA could take—



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

and did take—final agency action that violated NHPA and NEPA without ever releasing funds for Middle Mile's construction at Point Roberts. This Court has jurisdiction to review each of those actions.

*a. NTIA's February 2025 categorical exclusion of Middle Mile's Segment 1 from NEPA review is a final NEPA document and a final agency action.*

NEPA Decision Memoranda constitute final agency actions, because they provide final approval from the agency for projects that qualify for a categorical exclusion from NEPA review. The Decision Memorandum, in short, determines the agency requires no further analysis of the project's environmental impacts under federal law, and it authorizes the developer to proceed with the project's development. NTIA, in fact, concedes that "final NEPA documents are final agency actions." Dkt. #61 at 13 (quoting *Env't Def. Ctr*., 36 F.4th at 868). NTIA issued a NEPA Decision Memo for Segment 1 on February 18, 2025. Dkt. #61 at 8. This Court has jurisdiction to review this action.

The categorical exclusion decision also satisfies *Bennett*'s two-prong test. 520 U.S. at 177–78. It consummates NTIA's decisionmaking with respect to NEPA review for a significant portion of the project, and it determined the agency's obligations with respect to further NEPA review, as well as requirements Whidbey Telecom had to satisfy before it could begin construction. *See* Dkt. #56 ¶ 40. Legal consequences also flowed from this decision; because Whidbey Telecom violated the pre-construction requirements, NTIA imposed a stop-work order on Segment 1 of Middle Mile.[4] Because it paused construction, that stop-work order impacted the subsequent sequencing and timeline of permitting, construction, and consultation with

---

[4] WHIDBEY TEL. CO., MIDDLE MILE GRANT PROGRAM BI-ANNUAL PERFORMANCE REPORT 7, 9 (May 27, 2026), *available at* https://broadbandusa.ntia.gov/sites/default/files/2026-06/WHIDBEY_TELEPHONE_COMPANY_MM_BAR_Y3P2_Summary_2026-05-27.pdf.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

federally recognized Tribes for *both* segments of the project. Indeed, the categorical exclusion for Segment 1 cannot be separated from Segment 2 for jurisdictional purposes. NTIA issued the categorial exclusion premised on an improper segmentation decision that is itself arbitrary and capricious. A categorical exclusion premised on an already improper segmentation decision also fails, because it did not consider impacts to Point Roberts.

*b. NTIA's release of construction funds for Middle Mile's Segment 1 is final agency action.*

NTIA's release of construction funds for Segment 1 effectively greenlit construction to begin on Middle Mile and provides yet another final agency action subject to judicial review that satisfies both *Bennett* prongs. 520 U.S. at 177–78. NTIA concedes construction for this segment is underway, and the agency has released construction funds. Dkt. #61 at 9, 12. This release of construction funds consummated the agency's decision to permit Segment 1 to proceed, and legal consequences flowed from this decision and the release of funds. The terms of Middle Mile's grant, in fact, tied completion of Section 106 review and consultation to release of construction funds, requiring its completion of project review under NHPA in advance. Dkt. #56 ¶ 63. Release of construction funds, therefore, signals fulfillment of all consultation requirements. Finally, the release of these funds, the beginning of construction, and the conclusion of the permitting process for this segment of Middle Mile dictated the timeline and subsequent decisions related to permitting, consultation with Lummi Nation, and the beginning of project activities and construction at Point Roberts. Despite Federal Defendants' protests, decisions regarding one segment of the project remain inextricably linked to decisions regarding the other segment. This Court, therefore, has jurisdiction to review NTIA's release of construction funds as final agency action under 5 U.S.C. § 704.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

*c. NTIA released limited funds for NEPA and NHPA review for Segment 2 of Middle Mile.*

Section 12 of NTIA's Middle Mile grant permits expenditure of funds for NHPA and NEPA review work prior to completion of that review. Dkt. #51-2 at 16–19. NTIA released such funds to support review work for Segment 2, including the fieldwork that occurred at Point Roberts in November 2025. Dkt. #56 ¶ 38, 66. The release of those funds is a discrete agency decision that consummated NTIA's choice to authorize review activities for Segment 2 and produced legal consequences and obligations that flowed from that decision. *Bennett*, 520 U.S. at 177–78. First, it required notice to Lummi Nation about the project, the proposed activities, and their location; Whidbey Telecom's subcontractors provided this notice, but only three days in advance of the activities. Dkt. #56 ¶ 38. Second, just as Middle Mile's original grant conditions governed Segment 1 of the project, they governed project review activities for Segment 2. Sections 11 and 12 of those conditions required the presence of a qualified archaeologist to monitor all ground-disturbing activities. Dkt. #51-2 at 19, 21. And the requirement to complete Section 106 review within six months of the grant's award date still applied, although these project activities occurred more than two years after the grant award and more than one year after NTIA approved the project's segmentation. Dkt. #56 ¶¶ 38–40. Ultimately, the release of these funds authorized the project activities that disturbed and permanently lost a cranial fragment in close proximity to known Lummi burial grounds. *Id.* ¶¶ 38, 113. This disbursement is final agency action reviewable by this Court.

*d. NTIA's June 2023 award of the Middle Mile grant to Whidbey Telecom is final agency action that imposed binding legal obligations Defendants have failed to fulfill.*

On June 15, 2023, NTIA granted $11,782,208.20 to Whidbey Telecom to develop Middle Mile—a single, unified broadband project—and this award itself satisfies the definition



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

of final agency action. *Bennett*, 520 U.S. at 177–78; Dkt. #51-1 ¶ 7. *See also Mt. Adams Veneer Co. v. United States*, 896 F.2d 339, 343 (9th Cir. 1990). An agency action is final when the action is "a definitive statement of an agency's position;…[has] a direct and immediate effect on the day-to-day business of the complaining parties;…[has] the status of law; immediate compliance with the terms [is] expected; and the question [is] a legal one." *Id.* (citing *Fed. Trade Comm'n v. Standard Oil Co.,* 449 U.S. 232, 239–40 (1980)). NTIA's grant award provided a definitive statement of the agency's position and satisfies the first prong of *Bennett* as the consummation of the agency's decision in a competitive grant selection process. In awarding the multi-million-dollar grant, NTIA selected Whidbey Telecom from among competing applicants, determined the award amount, and defined the project scope. Satisfying *Bennett*'s second prong, Sections 11 and 12 of the General Terms and Conditions imposed binding legal obligations related to NEPA and NHPA review beginning July 1, 2023, the grant's effective date. Section 12 expressly withheld all construction funds until the completion of required consultations with the SHPO and appropriate federally recognized Tribes under Section 106 of NHPA. Dkt. #51-2 at 19. Section 11 required an archaeologist meeting the Secretary of the Interior's professional qualification standards to monitor all ground-disturbing activities near known archaeological sites. *Id.* It also required Whidbey Telecom to cease construction immediately and notify NTIA, SHPOs, THPOs, and Tribes upon discovery of human remains. *Id.* at 19. These obligations are only a few of those included in the grant conditions that fixed a legal relationship between NTIA and Whidbey Telecom and attached from the date of the award.

Federal Defendants rely on *Rattlesnake Coalition*, for the proposition that an agency's action is not final until it disburses funds. As already discussed, that case is inapposite. The



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

grant award represents the point at which NTIA completed its review, selected a recipient, and committed the funds subject to the grant conditions, among others. The grant award itself, therefore, provides independent grounds for this Court's jurisdiction. NTIA's Section 12 obligation to complete Section 106 consultation with Lummi Nation attached on July 1, 2023. NTIA's failure to complete this consultation is not a future injury—it is an ongoing failure traceable to final agency action that has already occurred.

### C. Federal Defendants' 12(b)(6) Motion to Dismiss Count IV Also Fails, Because NTIA Improperly Segmented Middle Mile, and Dismissal before Production of An Administrative Record to Review That Decision Is Premature.

The Court should reject—on both procedural and substantive grounds—NTIA's argument that Lummi Nation fails to state a claim under Rule 12(b)(6) in Count IV. Procedurally, courts evaluate segmentation challenges on the administrative record. *See, e.g.*, *Ctr. for Biological Diversity*, 141 F.4th at 1024 (Sanchez, J., concurring in part, dissenting in part). The Court cannot determine whether to find the segmentation decision arbitrary and capricious—or whether NTIA conducted a genuine independent utility analysis—without that record. NTIA offers only the Weinstock Declaration's conclusory statement that NTIA approved the split following "an independent utility analysis." Dkt. #51-1 ¶ 16. NTIA has not produced the administrative record containing that analysis, and while NTIA has provided Whidbey Telecom's segmentation request, Dkt. #51-3, on the record, the agency has not provided any other evidence supporting NTIA's four-business-day response granting that request.

Substantively, the Amended Complaint plausibly alleges that Segments 1 and 2 of Middle Mile lack independent utility. To determine independent utility, the Ninth Circuit asks whether "one of the projects might reasonably have been completed without the existence of the



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

other." *Great Basin Mine Watch*, 456 F.3d at 969. And according to the NEPA regulations in place when NTIA made its segmentation decision in May 2024, actions are "connected if they cannot or will not proceed" without "other actions…taken previously or simultaneously" or if they are "independent parts of a larger action and depend upon the larger action for their justification." *Friends of Animals*, 28 F.4th at 34 (cleaned up) (quoting 40 C.F.R. § 1501.9(e)(1), which was rescinded in April 2025, nearly one year after NTIA approved Middle Mile's segmentation). NTIA awarded the Middle Mile grant to Whidbey Telecom for one project: a unified broadband system including 47.6 miles of terrestrial underground fiber cable and 63.1 miles of undersea fiber optic cable connecting Whidbey Island, Decatur Island, and Point Roberts. Dkt. #56 ¶ 79. The terrestrial fiber on Whidbey Island physically terminates at the submarine cable landing station at Point Roberts. *See* Dkt. #51-3 at 2–3; Dkt. #61 at 8. Without the submarine cable, the Whidbey Island fiber extends to a landing station connected to nothing. *See* Dkt. #51-3 at 2–3; Dkt. #61 at 8. Moreover, the stated purpose of the project—as described on NTIA's own website—is to "provide funding for the construction, improvement, and acquisition of middle mile infrastructure for the underserved community of Point Roberts, Washington, and surrounding areas" and to "impact the communities of Point Roberts, the tribal people of the Lummi Nation, and the Naval Air Station Whidbey Island." Dkt. #56 ¶ 64; Dkt. #51-1 ¶ 7. The Whidbey Island terrestrial construction, standing alone, does not accomplish that purpose.

Finally, NTIA's own April 2024 NEPA Procedures remain the operative agency guidance and expressly warn against improper segmentation. 89 Fed. Reg. at 22,691. *See also* Dkt. #56 ¶ 188. Indeed, NTIA's own April 2, 2024, Federal Register notice, published one month before NTIA approved Middle Mile's segmentation, publicly stated that it is "unlawful"



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

for NTIA to "evade [its] responsibilities under NEPA by artificially dividing a major Federal action into smaller components[.]" 89 Fed. Reg. at 22,691. A four-business-day approval without a documented analysis in the record does not justify segmenting Middle Mile, which defies NTIA's own stated policy. Therefore, at the 12(b)(6) stage, when the Court must take the Amended Complaint's allegations as true, Count IV plausibly states a claim.

### D. NTIA's NHPA and NEPA Violations Are Independently Reviewable Under 5 U.S.C. § 706(1) as Agency Action Unreasonably Withheld and Unreasonably Delayed.

Separately, Lummi Nation plausibly pleads relief for agency action unlawfully withheld and unreasonably delayed under Counts I and III. 5 U.S.C. § 706(1); Dkt. #56 ¶¶ 190, 228, 255. Federal Defendants' Motion to Dismiss does not address the Nation's § 706(1) allegations at all. The Administrative Procedure Act authorizes courts to compel agency action "unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1). The standard requires a discrete, legally required duty the agency has failed to perform. *Norton v. S. Utah Wilderness All.*, 542 U.S. 55, 63–64 (2004). Section 706(1) review is not subject to the same final agency action requirement as § 706(2) review; it applies precisely when the agency has failed to take the action required of it. *Id.* at 62–63. The Middle Mile grant conditions established a discrete, legally required duty: Section 12 withheld construction funds pending completion of required Section 106 consultations with the SHPO and the appropriate federally recognized Tribes. Dkt. #51-2 at 19. That duty attached on July 31, 2023, the grant's execution date. Dkt. #56 ¶¶ 39, 61. NTIA's grant conditions further required that consultation be completed within six months of the award date, by January 1, 2024. *Id.* ¶ 61. NTIA let this deadline pass, failing to consult with Lummi Nation regarding Middle Mile. Instead, five months after failing to meet this deadline for Section 106 consultation, NTIA then improperly segmented the project in May 2024, further



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

delaying NHPA and NEPA review of Segment 2 and failing entirely to conduct review of the entire project as a unified whole, as required by NEPA. NTIA still has yet to complete Section 106 consultation for any aspect of the project with Lummi Nation.

Indeed, NTIA's outreach to Lummi Nation regarding consultation or comments related to either segment of Middle Mile failed to constitute good faith notification. This failure violates, among other requirements, the regulatory mandate for agencies to "ensure that consultation in the section 106 process provides [Tribal consulting parties] a reasonable opportunity" to participate in 106 consultation. 36 C.F.R. § 800.2(c)(2)(ii)(A). Section 106 regulations also specify that "[i]t is the responsibility of the agency official to make a reasonable and good faith effort to identify [the Tribal Nations] that shall be consulted in the section 106 process" and that this "[c]onsultation should commence early in the planning process[.]" *Id.* NTIA fulfilled none of these responsibilities.

First, Lummi Nation has no record of NTIA's December 23, 2024, notice to comment on Segment 1, which Federal Defendants claim the Nation declined. Dkt. #61 at 17. In their Motion to Dismiss, Federal Defendants cite to the Weinstock Declaration as support of this assertion, but the Declaration does not provide any information about communication or coordination with Lummi Nation on this December date. Dkt. #51-1 ¶ 20. Weinstock claims that "NTIA also coordinated under Section 106…with the Lummi Nation THPO for this Phase 1 or southern portion of the project; however, the THPO did not comment on the proposed project." *Id.* ¶ 21. The Nation's THPO, however, does not have record of any outreach from NTIA in December 2024 and only has record of three notifications from NTIA related to Segment 1 of the project. Second Tso Decl. ¶¶ 4, 6–7. Those notifications all pertain to a meeting invitation to multiple Tribal Nations concerning a single site located on Whidbey



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Island; they also did not name Middle Mile or provide clear indication that Middle Mile was the relevant project to the outreach. Dkt. #56 ¶ 67; Second Tso Decl. ¶¶ 4, 6–7, 9–10. After the November 2025 loss of the cranial fragment due to Middle Mile's activities at Point Roberts, in the spring of 2026, nearly three years after the initial grant award, the Nation received three emails about Segment 2 from NTIA. These emails all used generic subject lines and failed to signal clear invitations to consult or comment on Middle Mile. None of these communications constitute good faith consultation or coordination for Section 106 purposes.

Finally, Federal Defendants' ripeness argument, tied to the NHPA definition of a "federal undertaking," also fails. Under 36 C.F.R. § 800.16(y), an undertaking is "a project, activity, or program funded in whole or in part under the direct or indirect jurisdiction of a Federal agency, including…those carried out with Federal financial assistance; and those requiring a Federal permit, license or approval." The language of Section 106 itself attaches the agency's obligation to conduct review and consultation "prior to the approval of the expenditure of *any* Federal funds on the undertaking or prior to the issuance of any license," not when it releases construction funds for one segment of a project. 54 U.S.C. § 306108 (emphasis added). The requirements of the Middle Mile grant itself underscore this obligatory timing. The grant conditions required completion of Section 106 consultation *before* NTIA could release construction funds, and it required completion of that consultation within six months of NTIA's initial grant award to Whidbey Telecom. Dkt. #51-2 at 19; Dkt. #56 ¶ 61. NTIA's failure to complete Section 106 consultation within its own mandatory timeline is an ongoing, reviewable failure under § 706(1).



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

**E. In the Alternative, the Court Should Stay Agency Action Under 5 U.S.C. § 705 Pending Judicial Review.**

The Court possesses independent authority under 5 U.S.C. § 705 to "postpone the effective date of an agency action" or "preserve status or rights pending conclusion of the review proceedings." Section 705 requires only that the Court find that such relief is necessary to "prevent irreparable injury" while the action is under review. The irreparable injury to Lummi Nation, resulting from NTIA's failure to properly review Middle Mile under NEPA and NHPA, is not speculative. Construction at Point Roberts, potentially landing an undersea cable at the same Lummi burial ground sites already disturbed by Whidbey Telecom's Community Connect and Reconnect projects, could commence immediately upon completion of an Environmental Assessment for this segment of Middle Mile. In the meantime, fieldwork for Middle Mile at Point Roberts already disturbed and caused the permanent loss of a cranial fragment in November 2025. The loss of additional Lummi ancestral remains constitutes irreparable injury of the most profound kind: once disturbed, the harm to Lummi Nation cannot be undone. Yet, § 705 provides a mechanism to preserve the status quo while it resolves questions related to finality of NTIA's agency actions. Lummi Nation respectfully requests that the Court invoke its § 705 authority to stay any NTIA authorization of ground-disturbing activities for Middle Mile pending resolution of this litigation.

## V. CONCLUSION

This Court has subject matter jurisdiction to review NTIA's segmentation approval and at least four additional final agency actions. NTIA's May 2024 decision to divide Middle Mile into two segments satisfies both prongs of the *Bennett v. Spear* finality test: it consummated NTIA's decisionmaking about the structure of project review, and it produced immediate legal



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

consequences for Whidbey Telecom, the scope of Lummi Nation's Section 106 rights, and the feasibility of unified NEPA review. The administrative record for that decision has not yet been produced. Dismissal of Count IV at the pleading stage—before the Court can evaluate whether a genuine independent utility analysis occurred—would be premature error.

The Amended Complaint plausibly alleges that Middle Mile's two segments lack independent utility. NTIA awarded the multi-million-dollar grant for the project as a unified broadband system, the Whidbey Island fiber terminates at the submarine cable landing station, connecting to nothing without the cable, and the Whidbey Island construction alone does not accomplish Middle Mile's stated project purpose. NTIA's own April 2024 Federal Register notice, published one month before it approved the segmentation, confirms that dividing a major federal action to avoid NEPA review is unlawful under NTIA's own policy.

Separately, NTIA's failure to complete Section 106 consultation with Lummi Nation within the six-month deadline its own grant conditions established is independently reviewable under 5 U.S.C. § 706(1) as agency action unreasonably withheld and unreasonably delayed. Federal Defendants' Motion to Dismiss does not address this theory at all. In the alternative, Lummi Nation respectfully requests that this Court invoke its authority under 5 U.S.C. § 705 to stay any NTIA authorization of ground-disturbing activities for Middle Mile pending resolution of this litigation. Construction at Point Roberts—landing a submarine cable within or in close proximity to Lummi burial grounds already disturbed by two prior Whidbey Telecom projects—could commence at any time upon completion of the Environmental Assessment for this segment of Middle Mile. The permanent loss of a Lummi cranial fragment in November 2025 demonstrates that this injury is not speculative. Once additional ancestral remains are disturbed, the harm to Lummi Nation cannot be undone.



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110

Lummi Nation respectfully requests that this Court deny Federal Defendants' Motion to Dismiss in its entirety.

Respectfully submitted,

Dated: September 14, 2026

/s/ Gabriel D. Cantu, Bar No. 52733
OFFICE OF THE RESERVATION ATTORNEY,
LUMMI NATION
2665 Kwina Road
Bellingham, WA 98226
Tel: (360) 384-7110
Email: GabrielC@lummi-nsn.gov

/s/ Gregory Alan Werkheiser, Virginia Bar No. 45986
Marion Forsyth Werkheiser, Virginia Bar No. 65454
Katherine Lee Sorrell, Texas Bar No. 24129460
Lydia Dexter, Oregon Bar No. 233151
Jessie Barrington, Virginia Bar No. 100685
CULTURAL HERITAGE PARTNERS, PLLC
1811 East Grace Street, Suite A
Richmond, Virginia 23223
Tel: (202) 567-7594
Emails: greg@culturalheritagepartners.com
marion@culturalheritgepartners.com
katherine@culturalheritagepartners.com
lydia@culturalheritagepartners.com
jessie@culturalheritagepartners.com
*Pro Hac Vice*

/s/ Charles N. Curlett, Jr., D.C. Bar No. 497920
CULTURAL HERITAGE PARTNERS, PLLC
1717 Pennsylvania Avenue NW, Suite 1025
Washington, D.C. 20006
Tel: (202) 567-7594
Email: charles@culturalheritagepartners.com
*Pro Hac Vice*

*Counsel for Plaintiff*

I certify that this memorandum contains 8,334 words, in compliance with the Local Civil Rules.

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing document was served on Defendants via CM/ECF electronic notice.

s/ Gabriel D. Cantu
Counsel for the Lummi Nation
GabrielC@lummi-nsn.gov

*Counsel for Plaintiff*



LUMMI NATION
Office of the Reservation Attorney
2665 Kwina Road
Bellingham, WA 98226 | Tel: (360) 384-7110