ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General
Gabriel Lopez (FL Bar # 1017629)
Trial Attorney
Kyle Lyons-Burke (D.C. Bar # 1655452)
Senior Trial Attorney
U.S. Department of Justice
Energy and Natural Resources Division
P.O. Box 7611
Washington, D.C. 20044-7611
Tel: (202) 598-3377
Fax: (202) 305-0275
Gabriel.lopez@usdoj.gov
kyle.lyons-burke@usdoj.gov
*Attorneys for Federal Defendants*

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| LUMMI NATION,<br><br>Plaintiff,<br><br>v.<br><br>WHIDBEY TELEPHONE COMPANY, et al.,<br><br>Defendants. | No. 2:26-cv-01435-KKE<br><br>**FEDERAL DEFENDANTS' REPLY IN SUPPORT OF FEDERAL DEFENDANTS' MOTION TO DISMISS**<br><br>**NOTE ON MOTION CALENDAR: September 28, 2026** |

Federal Defendants moved this Court to dismiss the claims in Plaintiff's First Amended Complaint against the Department of Commerce acting through the National Telecommunications and Information Administration (hereafter "NTIA"), on the basis that Plaintiff challenges no final agency action concerning Point Roberts because their claims rest entirely on nonfinal, pre-decisional agency steps relating to the Middle Mile project, and that NTIA has not approved, funded, or authorized any construction at Point Roberts. Federal Defendants also argued that Plaintiff fails to plead a cognizable segmentation claim as Plaintiff

fails to demonstrate that the two portions of the Middle Mile Project are inseparable parts of a connected action. Plaintiff's response does not seriously engage with Defendants' arguments. Dkt. No. 65.[1]

Plaintiff's claims in Counts I, III, and IV depend entirely on the existence of a final agency action tied specifically to Point Roberts. Plaintiff cannot identify one. Their attempt to rely on segmentation, the Whidbey Island categorical exclusion ("CE"), grant award conditions, and release of limited review funds does not satisfy the APA's finality requirement. None of the actions identified in Plaintiff's response constitute "final agency action" under the APA with respect to Point Roberts, and its attempts to recharacterize procedural grant administration and preliminary review steps as "final" fail as a matter of law. Plaintiff's segmentation arguments likewise cannot cure the jurisdictional defect. Counts I, III, and IV must be dismissed against Commerce.

## I. Plaintiff's "Intertwined Jurisdictional and Merits Issues" Argument Misconstrues APA Finality.

At the outset, Plaintiff argues that NTIA's jurisdictional challenge raises factual issues "intertwined with the merits" such that dismissal under Rule 12(b)(1) would be premature. Pl.'s

[1] Plaintiff also argues that Defendants' Motion seeks relief only on the part of the Department of Commerce, and thus a responsive pleading was due on the part of the United States Department of Agriculture ("USDA"). As noted in the underlying motion, however, the responsive pleading is on behalf of all Federal Defendants and, if granted, would materially affect the claims against the USDA, as Plaintiff's counts are pleaded jointly against both agencies, and dismissal would thus narrow the factual predicates common to Counts I–III. Moreover, as Plaintiff's claims are brought under the APA, judicial review is limited to the Administrative Record that was before the federal agency at the time it made the challenged decision. *See, e.g.*, *Lands Council v. Powell*, 395 F.3d 1019, 1029–30 (9th Cir. 2005). This review is processed as an appeal, and thus traditional fact-finding procedures, such as Answers to Complaints, are not appropriate. *See Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1579–80 (10th Cir. 1994).


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

Resp. at 2–3 (citing *Young v. United States*, 769 F.3d 1047 (9th Cir. 2014); *Augustine v. United States*, 704 F.2d 1074 (9th Cir. 1983)). But this argument misstates the governing standard. The Ninth Circuit's intertwining doctrine applies only when jurisdiction hinges on merits-dependent factual disputes. *Bowen v. Energizer Holdings*, 118 F.4th 1134, 1143 (9th Cir. 2024).

Courts need not reach the merits to determine whether an agency has taken final action, however. As the court laid out in *Bowen*, jurisdictional and substantive issues may be intertwined when a district court cannot resolve disputed factual issues necessary to determine jurisdiction without addressing questions of fact inherent to an element of a plaintiff's claim. *Id.* That does not apply here. First, the dispositive facts for purposes of subject matter jurisdiction are undisputed:

- NTIA approved construction only for Phase 1 (Whidbey Island) on February 18, 2025. Weinstock Decl., Dkt. No. 51-1 ¶¶ 19, 23; Pl.'s Resp. at 12.
- NTIA "is currently preparing a draft environmental assessment" for Phase 2 (Point Roberts). Weinstock Decl., Dkt. No. 51-1 ¶ 25; Pl.'s Resp. at 5.
- "No funds relating to construction on Point Roberts have been released." Weinstock Decl., Dkt. No. 51-1 ¶ 26; Pl.'s Resp. at 5.

Second, as referenced above, there is no merits factfinding in an APA case. Rather, the court reviews the Administrative Record before the agency at the time it acted and decides whether that decision was reasonable. 5 U.S.C. § 706; *see also Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 743–44 (1985). So there are no factual disputes relevant to subject matter jurisdiction for the Court to resolve and there will be no merits factfinding at all. Thus, as to whether NTIA has taken final agency action with respect to Point Roberts under *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997), the answer remains unequivocally "no."

## II. NTIA's May 23, 2024 Separation of the Whidbey Island Project and the Point Roberts Project Is Not Final Agency Action.

Plaintiff's central theory to establish subject matter jurisdiction is that NTIA's approval of Whidbey Telecom's request to separate the Whidbey Island portion of work (Phase 1) from the Point Roberts portion (Phase 2) constitutes final agency action. Pl.'s Resp. at 10-16. They claim this separation "produced immediate legal consequences," including authorizing construction on Phase 1 and altering consultation rights. Pl.'s Resp. at 3–4, 12–16.

Judicial review of an agency's NEPA compliance occurs via the Administrative Procedure Act. *See Seven Cnty. Infrastructure Coal. v. Eagle Cnty.*, 605 U.S. 168, 180 (2025). In the Ninth Circuit, NEPA review for all agency actions —whatever form that review may take—must be completed "'before any irreversible and irretrievable commitment of resources.'" *Native Ecosystems Council v. Dombeck*, 304 F.3d 886, 892 (9th Cir. 2002) (quoting *Metcalf v. Daley*, 214 F.3d 1135, 1143 (9th Cir 2000)).

A segmentation analysis functions "to weed out projects which are pretextually segmented, *and* for which there is no independent reason to exist. When the segmentation project has *no* independent jurisdiction, no life of its own, or is simply illogical when viewed in isolation, the segmentation will be held invalid." *Macht v. Skinner,* 715 F. Supp. 1131, 1135 (D.D.C. 1989) (emphasis in original), *aff'd*, 889 F.2d 291 (D.C. Cir. 1989).

Plaintiff repeatedly claims segmentation "authorized Whidbey Telecom to begin construction." *E.g.*, Pl.'s Resp. at 13. This assertion is false. And, as Plaintiff concedes, (1) construction authorization occurred only when NTIA issued the February 18, 2025, categorical exclusion for Phase 1, Dkt. No. 56 ¶ 80; Dkt. No. 61 at 8; (2) the separation of the two projects preceded the categorical exclusion by nine months and did not include any NEPA


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

determination; and (3) NTIA did not approve any construction at Point Roberts in its letter approving the separation of the two projects. Dkt. No. 51-3; Dkt. No. 51-1 ¶ 16.

The separation of the Whidbey Island project from the Point Roberts project is thus quintessential preliminary, procedural agency action that the APA excludes from judicial review. *FTC v. Standard Oil Co.*, 449 U.S. 232, 244–45 (1980). The separation of these two projects merely organized the sequence in which NTIA would conduct NEPA and NHPA review. That description does not meet the legal standard for a final agency action, and is the very definition of a nonfinal, procedural step under *Standard Oil*, 449 U.S. at 244–45. To be clear, Plaintiff is free to challenge the separation of the two projects, but such a challenge under NEPA ripens when NTIA completes its NEPA review and issues a final NEPA decision on the Port Roberts portion of the project.

Plaintiff is incorrect that NTIA's decision to separate and serially address these two projects satisfies the test for final agency action in *Bennett v. Spear*, 520 U.S. 154 (1997). NTIA's decision is not one from which "rights or obligations have been determined" or from which "legal consequences will flow." *Id.* at 177–78. The separation decision imposed no legal obligations on NTIA or Whidbey Telecom; did not resolve any NEPA review requirements, NHPA consultation, or any permit decisions; did not modify grant conditions; did not release funds; and did not restrict alternatives in any legally binding sense. Moreover, Plaintiff does not cite any authority for the proposition that a decision to serially address two separate projects, as done by NTIA here, is a final agency action, beyond parroting the test in *Bennett*.

The only effect of this separation was the order in which NTIA would conduct environmental and historic-preservation review. Plaintiff argues the separation authorized construction for Phase 1, release of construction funds, the issuance of a categorical exclusion,


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

and delay of consultation. Pl.'s Resp. at 10-16. But each occurred months later and involved separate agency decisions. The categorical exclusion for Phase 1 was issued on February 18, 2025. Dkt. No. 51-4, at 1. Construction funds for Phase 1 were released in late 2025. Dkt. No. 51-4, ¶¶ 22-23. Construction on Phase 1 began in November/December 2025. Dkt. No. 51-4, ¶ 23. None of these decisions occurred because of separation, and each required independent NTIA review and approval. But more importantly, these actions have no relation to the Point Roberts portion of the project with which Plaintiff takes issue. Separation of the Whidbey Island and Point Roberts projects merely designated the order of upcoming review of two independent actions. Nothing about this separation and serial ordering satisfied either prong of the *Bennett* finality test. And NTIA has yet to take any final action as to the Point Roberts project.

Moreover, Plaintiff has not, and cannot, claim the Whidbey Island and Point Roberts portions of the Middle Mile project have no independent utility. Plaintiff's Amended Complaint makes no credible claim of improper segmentation by NTIA; rather, it claims that NTIA has not released its independent utility determination for the project. Dkt. No. 65, at 79. But Plaintiff cites no authority directing NTIA to release its independent utility determination. In addition, Plaintiff, for the first time in its Response, points to a segmentation theory as a jurisdictional hook. This also fails to establish subject matter jurisdiction under Rule 12(b)(1) for its segmentation claim, as Plaintiffcannot now seek to amend its pleading by way of its response brief. In any event, as explained below, Plaintiff fails to state a segmentation claim under Rule 12(b)(6).

In addition, although its mischaracterization is irrelevant for the Court's adjudication of the instant Motion to Dismiss because Plaintiff has already failed to state a segmentation claim,


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

Plaintiff mischaracterizes the project. Whidbey Island fiber does not "terminate at the submarine cable landing station at Point Roberts," Pl.'s Resp. at 23; rather, it terminates where Phase 1 ends—on Whidbey Island. NTIA's website description of the project's "purpose" has no bearing on whether the two portions of the Middle Mile project have independent utility or are connected actions for purposes of NEPA. Dkt. No. 56 ¶ 64. The independent utility test is satisfied when one project serves a standalone purpose. *Great Basin Mine Watch v. Haskins*, 456 F.3d 995, 969 (9th Cir. 2006). Here, the Whidbey Island construction is a standalone upgrade benefiting Whidbey Island and Naval Air Station operations. In addition, the Phase 2 submarine cable is unfunded and still under NEPA review.

Plaintiff's opposition brief ignores the reality that the decision to separate the two independent Middle Mile projects was a preliminary, organizational decision by NTIA. It allowed localized construction phases, a matter of logical construction sequencing for two distinctly different ecological environments: terrestrial trenching and horizontal directional drilling (HDD) on Whidbey Island and a massive underwater cable crossing through marine habitats. They are two separate projects with independent utility that each serve an entire 110-mile interconnected network. Plaintiff's segmentation merits arguments, which were not credibly alleged, only underscore that NTIA has not yet performed the full environmental review for Point Roberts. Absent such a full environmental review or the release of federal funds, there is no final agency action to review. Dismissal is appropriate.

### III. Phase 1 Actions Cannot Create Jurisdiction For Phase 2, the Subject of Plaintiff's Amended Complaint.

Plaintiff argues that four actions by NTIA with respect to Phase 1 of the Middle Mile project are "final agency actions" sufficient to establish subject matter jurisdiction over Phase 2 of the project: (1) a categorical exclusion for Whidbey Island, (2) release of construction funds

for Phase 1, (3) release of limited review funds for Phase 2, and (4) the grant award for Phase 1. Pl.'s Resp. at 16–22. Not so. Plaintiff gestures to actions taken for Phase 1 of the project, including horizontal directional drilling techniques, cultural monitors, construction funding, and stop-work orders to establish APA jurisdiction over the Point Roberts Phase of the project. But Plaintiff's attempt to bootstrap jurisdiction over Phase 2 is untenable because actions approving Whidbey Island construction create review rights only about Whidbey Island, not the Point Roberts Phase of the project.

Plaintiff concedes NTIA's categorical exclusion under NEPA covered only Whidbey Island. Dkt. No. 56 ¶ 40; Dkt. No. 65 at 12–13. And categorical exclusions are final only as to the geographic scope they cover. *See, e.g., Lujan v. National Wildlife Federation*, 497 U.S. 871 (1990) (an APA challenge is only permitted when the agency takes a discrete, site-specific action that directly affects a specific geographic area). Because the categorical exclusion excluded the Point Roberts phase of the project, it does not provide the Court with subject matter jurisdiction to review Plaintiff's claims focusing exclusively on Point Roberts.

It seems that Plaintiff has pleaded NHPA violations in the context of NEPA, and NTIA has already shown that there is no NTIA final agency action for purposes of NEPA. However, out of an abundance of caution, NTIA also addresses the potential that Plaintiff's Amended Complaint could be construed as raising NHPA violations independent of NEPA. Even if the First Amended Complaint can be construed as alleging some separate NHPA violations apart from the NEPA claims, the court lacks jurisdiction over those too. NHPA claims arise under the APA, which requires final agency action for the court to have subject matter jurisdiction, which does not exist here. The Court lacks subject matter jurisdiction because there is no NHPA "undertaking" for the Point Roberts phase of the project. NHPA obligations attach to


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

undertakings, defined to include "projects… requiring a Federal permit, license or approval." 36 C.F.R. § 800.16(y). The Ninth Circuit has explained that "the NHPA requires consultation pursuant to section 106 prior to any 'undertaking[.]'" *Havasupai Tribe v. Provencio*, 906 F.3d 1155, 1163 (9th Cir 2018) (quoting 54 U.S.C. § 306108). "[T]he head of any Federal department or independent agency having authority to license any undertaking, *prior to the approval of the expenditure of any Federal funds on the undertaking or prior to the issuance of any license*, shall take into account the effect of the undertaking on any historic property. *Id.* (emphasis added).

Plaintiff concedes NTIA has not approved or funded the Point Roberts undertaking. Dkt. No. 51-1 ¶ 26. Plaintiff admits NTIA released construction funds only for Whidbey Island. Pl.'s Resp. at 13 (citing Dkt. No. 61 at 12). Under *Rattlesnake Coalition v. EPA*, 509 F.3d 1095, 1104 (9th Cir. 2007), the operative question is whether NTIA disbursed funds for the undertaking at issue. *Rattlesnake Coal.*, 509 F.3d at 1104 (9th Cir. 2007) ("[T]he [government] does not take a final agency action until it completes its review of the grant application and decides to disburse the appropriated funds.") Without a release of construction funds for Phase 2 at Point Roberts there is no federal undertaking. Without a federal undertaking at Point Roberts, there is no reviewable action under NHPA.

Plaintiff asserts NTIA's release of limited review funds is a final agency action because it "authorized review activities" at Point Roberts. Pl.'s Resp. at 20. But Section 12 of the General Terms and Conditions of the grant agreement permits limited pre-construction expenditures; it does not authorize construction. Dkt. No. 51-2 at 16–19. The limited review funds were released by NTIA to cover such pre-construction expenditures. Plaintiff ignores the

fact that review funds do not commit federal resources or determine rights. In addition, no legal consequences flowed from the release because NEPA and NHPA review remain ongoing.

Lastly, Plaintiff argues the grant award itself was a final agency action. Pl.'s Resp. at 20–2. However, the grant award explicitly withholds all construction funds until NEPA and NHPA reviews are finished and Section 106 consultations are completed. Dkt. No. 51-2 at 16–21. Moreover, the grant award itself is an agreement between NTIA and Whidbey Telecom, to which Plaintiff is not a party. Plaintiff cannot use the contractual terms of a grant award to which they are not a party to assert that their legal rights were affected by the award of the grant to another party or the conditions therein.

In addition, at the very least the Court lacks subject matter jurisdiction over what appear to be alleged procurement violations relating to the contract between the NTIA and Whidbey Telecom because the United States Court of Federal Claims has exclusive jurisdiction over procurement claims. *See* 28 U.S.C. § 1491(b). While the district courts once had concurrent jurisdiction, that jurisdiction was subject to a sunset provision and expired on January 1, 2001. Administrative Dispute Resolution Act of 1996, Pub. L. No. 104-320, § 12(d), 110 Stat. 3870, 3874–75; *Emery Worldwide Airlines, Inc. v. United States*, 264 F.3d 1071, 1079–80 (Fed. Cir. 2001); *MD Helicopters Inc. v. United States*, 435 F. Supp. 3d 1003, 1010–12 (D. Ariz. 2020). "Congress sought to channel the entirety of judicial government contractor procurement protest jurisdiction to the Court of Federal Claims." *See Emery Worldwide Airlines, Inc.*, 264 F.3d at 1079; *see also id.* at 1083 ("[T]he language of § 1491 . . . indicates that the Court of Federal Claims has jurisdiction over all government procurement protest cases . . . ."). As a result, "if an action falls within the terms of 28 U.S.C. § 1491(b)(1), the Court of Federal Claims has exclusive jurisdiction even when the plaintiff invokes the APA." *MD Helicopters Inc.*, 435 F.


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

Supp. 3d at 1011. Plaintiff's conclusory assertions of violations of grant terms and procurement violations are thus outside this Court's jurisdiction regardless of their attempt to invoke the APA.

### IV. Plaintiff's § 706(1) Theory Fails Because the Six-Month Deadline Is Not A Mandatory Duty.

Plaintiff asserts NTIA violated a mandatory duty to complete Section 106 consultation within six months, and that the Court may compel its completion as "agency action unlawfully withheld or unreasonably delayed" under 5 U.S.C. § 706(1). Pl.'s Resp. at 24–26. This argument is not grounded in any statute or regulation and fails for multiple reasons.

*First*, Section 106 itself requires consultation prior to approval of the expenditure of any federal funds on the undertaking, not within a fixed number of months. 54 U.S.C. § 306108. As Plaintiff argues, the purported deadline originates solely from NTIA's grant conditions, which are contractual obligations on the grantee (here, Whidbey), not statutory duties that bind the agency. Grant conditions do not create reviewable Section 706(1) duties, particularly when the party seeking to compel the action pursuant to the grant terms is not a party to the underlying grant agreement. *Norton v. SUWA*, 542 U.S. 55, 62–64 (2004).

*Second*, § 706(1) requires a mandatory duty imposed by statute or regulation, not grant conditions, as here. *Id*. Plaintiff cites internal agency schedule language but identifies no authority converting those conditions into judicially enforceable duties.

*Third*, consultation duties under Section 106 attach only upon initiation of a federal undertaking, which has not occurred at Point Roberts.

At bottom, Plaintiff does not, and cannot, cite any authority holding that internal timelines in grant documents to which it is not a party create judicially enforceable mandatory duties under Section 706(1). Its arguments therefore must fail.


United States Department of Justice
P.O. Box 7611, Washington D.C. 20044
(202) 598-3377

## CONCLUSION

Plaintiff has identified no final agency action concerning Point Roberts; allegations of segmentation alone without final agency action as to the project challenged does not satisfy *Bennett;* Phase 1 approvals cannot establish jurisdiction over Phase 2; and Plaintiff's § 706(1) argument fails as a matter of law. Because Plaintiff challenges only preliminary, procedural steps in NTIA's ongoing NEPA/NHPA review, the Court lacks jurisdiction over Counts I,III, and IV as to Commerce acting through NTIA. The Motion to Dismiss should be granted.

Respectfully submitted September 28, 2026,

ADAM R.F. GUSTAFSON
Principal Deputy Assistant Attorney General

*/s/ Gabriel Lopez*
Gabriel Lopez
Trial Attorney
P.O. Box 7611
Washington, DC 20044-7611
Tel: (202) 598-0881
Email: Gabriel.lopez2@usdoj.gov